**3361: 40-5-05        Conduct, rights and responsibilities: Student code of conduct.**

(A)    Introduction

    (1)    Preamble

        (a)    Bearcat bond

In pursuit of its mission to develop educated and engaged citizens to enrich the global community, the university of Cincinnati ("university") aspires for its students to demonstrate high standards of integrity and conduct. As a guide to community members to obtain this objective, in spring of 2012, the bearcat bond was endorsed by faculty senate, graduate student governance association, and student government. The bearcat bond identifies community values essential to fostering a safe and scholarly environment. The bearcat bond states the following:

"As a member of the university of Cincinnati, I will uphold the principles of a just community and the values of respect, responsibility, and inclusiveness. I will promote the highest levels of personal and academic honesty and aspire continuously to better myself, the bearcat community, and the world."

Although there is no policy that expressly states that students are bound to the bearcat bond, the spirit of the bearcat bond is incorporated in university policy, and most especially, in the student code of conduct (S.C.O.C.).

        (b)    The university of Cincinnati serves the people of Ohio, the nation, and the world as a premier, public, urban research university dedicated to undergraduate, graduate, and professional education, experience-based learning and research. We are committed to excellence and diversity in our students, faculty, staff, and all of our activities. We provide an inclusive environment where innovation and freedom of intellectual inquiry flourish. Through scholarship, service, partnerships, and leadership, we create opportunity, develop educated and engaged citizens, enhance the economy and enrich our university, city, state and global community.

When students are admitted to and attend the university, they accept the rights and responsibilities of membership in the university's academic and social community. Just as the university has set high standards for membership, the university has established high standards for acceptable and unacceptable behavior for the bearcat community and its members; thus, university standards of conduct, while falling within the limits of the law, may exceed local, state, or federal requirements.

The purpose of the S.C.O.C. is to inform students of their rights and responsibilities, identify procedures to address student behavior that conflicts with community values reflected in university policies, and recommend potential sanctions, interventions, and measures designed to educate and safeguard the bearcat community and its members.

(c)     The authority for the S.C.O.C. is found in section 3345.21 of the Revised Code. The university disciplinary system is separate and independent of any criminal or civil proceeding. If a student is undergoing civil or criminal action for the same behavior which forms the basis of disciplinary action at the university, the university may still continue the disciplinary process as outlined in the S.C.O.C.

(d)     Students are responsible for knowing and honoring the university's S.C.O.C. and other rules and policies of the university of Cincinnati. The S.C.O.C. is not a contract between the university and the student. The university reserves the right to change the S.C.O.C. at any time during the student's term of enrollment.

(e)     The university has a duty to take reasonable efforts to make the S.C.O.C. available for students. The division of student affairs will regularly circulate the S.C.O.C. along with other rules, regulations, and policies, which directly affect students at the university of Cincinnati. The university will also provide notice to students when changes are made to the S.C.O.C. The S.C.O.C. will be available for review in the following locations: the office of the university ombuds, the office of student conduct and community standards, and the university's student conduct and community standards web page.

(f)     To assure compliance with federal, state, and local laws, orders of the court or other governmental authority, and university rules and policies, the university board of trustees may revise the S.C.O.C. in consultation with the office of general counsel without regard to rule 3361:40-05-03 of the Administrative Code.

(2)     Student rights and responsibilities

(a)     The S.C.O.C. is applied consistently with rule 3361:40-5-01 of the Administrative Code. The S.C.O.C. will not be interpreted or applied in any way that infringes upon constitutionally protected rights and privileges, such as those under the First, Fourth, Fifth, and Fourteenth amendments of the United States Constitution.

(b)     Students are responsible for maintaining established standards of scholarship and conduct essential to the educational mission and community life of the university.

(c)     The S.C.O.C. is administered in accordance with applicable federal, state,

and local laws, court and other governmental authority orders, and university rules and policies.

(3)     Jurisdiction

The university of Cincinnati reserves the right to respond to conduct that undermines, interferes with, or obstructs the safety and security of the university community or that adversely affects the integrity or interests of the educational mission or functions of the university.

(a)     Students

(i)     The term "student" as used in the S.C.O.C. means an individual who has been accepted for admission to the university, registered for classes, enrolled at the university, or otherwise entered into any other relationship with the university to take or audit classes. Student status lasts until an individual graduates, withdraws from the university, is dismissed, or is not in attendance for two complete fifteen week consecutive semesters.

(ii)    Students who violate the S.C.O.C. are subject to appropriate disciplinary action. In addition, students enrolled in the university's college of law or college of medicine are subject to their respective honor codes. Conduct not covered by an honor code will fall under the jurisdiction of the S.C.O.C. All other colleges with licensure or professional codes governing conduct are subject to the procedural requirements of the S.C.O.C.

(b)     Student organizations

(i)     The term "student organization" refers to any number of students who have completed the necessary requirements to be registered and recognized by the university.

(ii)    Student organizations that violate the S.C.O.C. are subject to appropriate disciplinary action. Groups of students who are not registered or recognized as an organization, or who are actively seeking registration and recognition from the university, may be charged as individuals or as a group under the S.C.O.C.

(c)     On- and off-campus behavior

(i)     The S.C.O.C. applies to student conduct that occurs on any university campus or on university owned, leased, or controlled premises and conduct that occurs during remote or online learning or other University related events or activities.

(ii)    The S.C.O.C. also applies to off-campus conduct when the

behavior or the presence of a student or student organization, in the university's sole judgment, impairs, obstructs, or interferes with the mission or process or functions of the university. Factors considered by the university include, but are not limited to, the following:

    (a)    Whether the student was acting as a representative of the university;

    (b)  The seriousness of the offense that occurred;

    (c)  Injuries to students or others;

    (d)  The extent of danger posed to the community;

    (e)  Whether a student organization was involved;

    (f)  Whether the incident could result in a felony charge; or

    (g)  Whether weapons, drugs, or alcohol were involved.

(iii)    The university reserves the right to take disciplinary action for conduct when the student or student organization–in the university's sole judgment–poses an obvious threat of serious harm to any member of the university community or when such conduct has continuing effects that effectively deny community members access to resources and opportunities, unreasonably interfere with community working and living environment, or deprive community members of protected rights, in a university program or activity. This action may be taken to address behaviors that occur before, between, during or after academic periods.

(d)    Riotous behavior

    (i)    Section 3333.38 of the Revised Code focuses on the riotous behavior of students on and around university campuses. The law has two separate penalty provisions—denial of financial aid and expulsion.

    (ii)    Regarding financial aid, division (B) of section 3333.38 of the Revised Code generally provides that an individual who is convicted of, pleads guilty to, or is adjudicated a delinquent child for committing aggravated riot, riot, failure to disperse, or misconduct at an emergency, shall be ineligible to receive any

             student financial assistance supported by state funds for two years from the time the individual applies for financial assistance.

    (iii)    Regarding expulsion, division (C) of section 3333.38 of the Revised Code generally provides that a student who is convicted of, pleads guilty to, or is adjudicated a delinquent child for committing aggravated riot or riot, shall immediately be dismissed from the university. Moreover, no Ohio public university or college shall admit an individual who has been convicted of either aggravated riot or riot for one academic year after the individual applies for admission.

    (iv)    Action taken as a result of section 3333.38 of the Revised Code does not limit the university of Cincinnati's ability to otherwise discipline students under the S.C.O.C.

(e)    Reporting misconduct

    (i)    To determine whether student behavior in question is academic or nonacademic misconduct, the dean of the student's home college (or designee) and the dean of students (or designee) must consult to determine whether the matter shall be handled as academic or nonacademic misconduct, and shall notify the appropriate administrator and all parties.

    (ii)    With the exception of student behavior that potentially violates Title IX, reports of nonacademic misconduct concerning a student or student organization must be reported to the office of student conduct and community standards ("S.C.C.S.") in person, by telephone, email, or U.S. mail. Reports or inquiries can also be submitted by using the online reporting form accessible on S.C.C.S.'s webpage.

    (iii)    All reports or inquiries involving potential violation of Title IX must be reported to the Title IX coordinator by telephone, email, U.S. mail, or in person. Reports or inquiries can also be submitted by using the online reporting form accessible on the university's Title IX webpage.

    (iv)    Instances of academic misconduct must be reported to the college conduct administrator as well as to S.C.C.S.

(f)    Title IX

    (i)    The university president has authority to create and implement policies to bring the university in compliance with Title IX regulations and applicable laws. The president may delegate this

authority to the proper university department, who must work in consultation with the office of general counsel and in coordination and collaboration with other appropriate university offices.

(ii) Students should refer to university Title IX policies for information on jurisdiction, definitions, hearings, and other related procedures.

(4) Definitions

(a) Timelines

Listed timelines exclude weekends, holidays, term breaks, and anytime when the university is closed or classes are not in session. Timelines may also be extended for other extenuating circumstances.

(b) Notification

All written notices to students are considered received upon delivery to a student's current local or permanent address on record with the university by United States or campus mail, by bearcat online electronic messaging (university email) with delivery notification, or to the student in person. Notice is deemed adequate unless the student demonstrates that the notice substantially impaired their ability to prepare for any review or hearing. Students are responsible for ensuring that their local and permanent addresses on record with the university are current and that they regularly check their university email.

(c) Standard of proof

The standard of proof used to determine whether a student has violated the S.C.O.C. is based on a preponderance of evidence, meaning more likely than not. Upon receipt of a complaint, all students are considered not responsible unless this standard is met.

(d) Adviser

Students and student organizations may elect to have an adviser of their choice. An adviser may consult with a student verbally or in writing in a quiet, non-disruptive manner, but the adviser may not participate as a spokesperson or vocal advocate in meetings or hearings. Students are required to notify S.C.C.S. or the college conduct administrator (C.C.A.) seventy-two hours prior to any meetings or hearings if the adviser is an attorney. The conduct process will not be delayed to accommodate an adviser's schedule. Therefore, a student should select an adviser whose schedule permits attendance at the scheduled date and time. Advisers may not be present for any party who does not attend the meeting or hearing.

(e) Diminished capacity

Being under the influence of drugs or alcohol will not diminish or excuse a violation of the S.C.O.C.

(f)     Sanctions for violations

A student found responsible for violating the S.C.O.C. will be subject to sanctions, up to and including dismissal. More than one sanction may be imposed for a single violation. A single act may constitute a violation of more than one regulation.

(g)     Disciplinary records file

All disciplinary records and files, including those resulting in a finding of "responsible," are maintained in S.C.C.S. for a period of at least seven years from the date of resolution. Disciplinary records relating to academic misconduct are maintained by the director of S.C.C.S. Discipline records are educational records as defined by the Family Educational Rights and Privacy Act of 1974 (F.E.R.P.A.) and subject to the protections and release provisions found within.

(h)     Educational conferences

The university reserves the right to schedule an educational conference to discuss the behavior of students and its impact on the mission of the university of Cincinnati. Conferences may result in an action plan agreed on by all parties to address the behavior. If the student fails to attend the education conference or if the action plan is not honored, the university reserves the right to initiate a formal review under the S.C.O.C.

(i)     Home college

The home college is the college in which the student is matriculated at the time of the alleged misconduct. The vice provost for undergraduate affairs (or designee) will serve as the home college for non-matriculating undergraduate students, and the dean of the graduate school (or designee) will act as the home college for non-matriculating graduate students. In matters involving students enrolled in multiple colleges, the vice provost for undergraduate affairs will act as the home college.

(j)     Withdrawal

If a student withdraws from the university before a disciplinary process has been completed, the process may continue or a hold may be placed on the student's account to prevent future registration until the disciplinary action has been resolved.

(k)     Refund

The regular refund schedule outlined in university publications will apply in the event of a suspension or dismissal from university housing or the university.

(l)     Policy on amnesty

        (i)     The university's primary concern is the health, safety, and welfare of its members. To maintain a safe and scholarly community, the university encourages students to report code of conduct violations and crimes involving a victim, including sexual misconduct.

        (i)     To encourage reporting, the university of Cincinnati has the discretion not to pursue certain non-violent code violations such as use of alcoholic beverages or drugs related to the incident. Amnesty may be applied to parties, bystanders, witnesses, students, or student organizations who participate in the conduct process, or students who seek assistance for themselves or other students experiencing an alcohol and/or other drug- related emergency. Amnesty will be determined on a case-by-case basis, in an equitable manner so as not to interfere with the rights of the parties, at the discretion of the director of S.C.C.S. (or designee).

        (ii)    Students receiving amnesty may still be required to participate in an educational conference.

(m)     Educational response

        The university may administer an educational response(s) to address student behavior. Educational responses are intended to incorporate values of the university community and allow an opportunity for students to grow as responsible members of the university community. While educational responses are not sanctions, they may be administered as a result of a student's behavior even if the behavior does not warrant a procedural review. In such cases where behavior does not warrant a procedural review, the conversation may be documented and kept on file in S.C.C.S. but is not considered disciplinary.

(B)     Academic misconduct

    (1)     Academic integrity and honor pledge

        (a)     In pursuit of its teaching, learning and research goals, the university of Cincinnati aspires for its students, faculty, and administrators to reflect the highest ethical standards defined by the center for academic integrity as "a commitment, even in the face of adversity, to six fundamental values: honesty, trust, fairness, respect, responsibility, and courage."

Although not all students are subject to a college honor code or pledge, every student is bound by the academic misconduct provisions of this code which are enforced, in part, to ensure academic integrity.

(b)     Some faculty members and academic units may require students to sign a pledge before taking tests or when submitting assignments. Honor pledges serve primarily as a teaching tool; unless a college has a mandatory honor code, pledges are used at the discretion of the instructor without imposition of a disciplinary sanction for students who honestly do passing work but object to a signed affirmation.

(2)     Jurisdiction

(a)     Each college dean appoints a college conduct administrator ("C.C.A.") who is responsible for the administration of undergraduate academic misconduct procedures. The head of each graduate program or C.C.A. (or designee) oversees the administration of academic misconduct procedures for graduate students in that graduate program. Undergraduate program directors may have departmental responsibility for advising instructors and students with misconduct issues.

(b)     Complaints of academic misconduct shall be initiated by the instructor in whose course the alleged misconduct occurred or in the absence of an instructor, with the academic unit head or the dean (or designee). Supervisors or authorized staff involved in the testing or evaluation process, including testing center personnel and testing proctors, may also initiate complaints of academic misconduct.

(c)     When academic misconduct triggers rule 3361:10-17-05 of the Administrative Code, the academic misconduct process described herein will not commence until after the completion of the research misconduct investigation conducted pursuant to rule 3361:10-17-5 of the Administrative Code.

(3)     Academic misconduct definitions

(a)     Aiding and abetting academic misconduct

Knowingly helping, procuring or encouraging another person to engage in academic misconduct.

(b)     Cheating

Any dishonesty or deception in fulfilling an academic requirement such as:

(i)     Use or possession of unauthorized material or technological devices.

(ii)     Obtaining unauthorized assistance or accessing, reviewing, or obtaining answers from another person or source.

(iii)    Furnishing unauthorized assistance or answers to another person.

(iv)    Possessing, using, distributing, or selling unauthorized copies of academic materials.

(v)    Representing academic work by another person as one's own.

(vi)    Doing academic work in place of another person.

(vii)    Obtaining unauthorized access to the computer files of another person or agency or altering or destroying those files.

(c)    Fabrication

The falsification of any information, research statistics, lab data, or citation in an academic exercise.

(d)    Plagiarism

(i)    Submitting another's published or unpublished work in whole, in part, or in paraphrase, as one's own without fully and properly crediting the author with footnotes, quotation marks, citations, or bibliographic references.

(ii)    Submitting as one's own original work, material obtained from an individual, agency, or the internet without reference to the person, agency, or webpage as the source of the material.

(iii)    Submitting as one's own original work material that has been produced through unacknowledged collaboration with others without release in writing from collaborators.

(iv)    Submitting one's own previously written, oral, or creative work without modification and instructor permission.

(e)    Violating ethical or professional standards

Violations of any ethical or professional standards as outlined by the academic college.

(4)    Procedures for academic misconduct

Students suspected of academic misconduct, whether acknowledging involvement

or not, will be allowed to continue in the course without prejudice pending completion of the disciplinary process. If a student chooses to withdraw from a course during their academic misconduct process, the process will continue and the student is responsible for meeting all deadlines and processes below. If the misconduct occurs at the end of an academic semester or break, the process will continue following the timeline once classes are in session, unless otherwise agreed to by all parties involved. The student is responsible for honoring all deadlines and processes listed in this paragraph. All dates listed are in business days when classes are in session, as outlined in paragraph (A)(4)(a) of this rule. If the resolution impacts a grade or status of a class, the C.C.A. will notify the registrar as applicable.

(a)     Faculty-student resolution

   (i)     Notice of allegation

      *(a)* First notice: notification form

         *(i)* Within ten days of discovering the alleged misconduct, the instructor will provide the student with notice of their alleged violation via the notification form. The notification form will include the alleged violation, a description of the alleged misconduct, the instructor's recommended sanctions, and the student's options for resolution.

         *(ii)* On this form, the instructor has the option to request a review meeting, which is a meeting between the instructor and student to discuss the allegation. The student may have an adviser at that meeting. This meeting must be scheduled within five days of receiving the notification form.

            After the review meeting, the instructor has five days to:
               *(a)* Dismiss the allegation and the case will be considered resolved.

               *(b)* Move forward with the allegation and provide a resolution form (final notice) to the student outlining the alleged misconduct and proposed sanctions.

      *(iii)* Student response to notification form

         The student has five days to return the notification form to the instructor and in writing choose to do one of the following:

(A) Accept responsibility and the proposed sanction(s). If a student accepts responsibility and sanctions, the instructor will notify the C.C.A. of the resolution within five days of receiving it from the student and the sanctions will be imposed.

(B) Challenge the finding or sanctions and request a review meeting, if one has not already been held pursuant to paragraph (B)(4)(a)(i)*(a)(ii)* of this rule. If the instructor does not respond to this request within five days, the allegation(s) will be dismissed. After a review meeting, the instructor has five days to:

(1) Dismiss the allegation and the case will be considered resolved.

(2) Move forward with the allegation and provide a resolution form (final notice) to the student outlining the alleged misconduct and proposed sanctions.

(C) If the student fails to respond within five days of receiving the notification form, the instructor will provide a resolution form (final notice), to the C.C.A. and to the student.

(b) Final notice: resolution form

(i) The student has five days to respond in writing to the instructor. The student may choose to:

(A) Accept responsibility for the violation(s) and agree to the sanctions.

(1) The instructor will notify the C.C.A. of the college in which the misconduct occurred and the sanction(s) will be imposed.

(2) The C.C.A. will record the resolution and provide a copy to the director of S.C.C.S. and

the C.C.A. of the student's home college.

*(B)* Accept responsibility but challenge a sanction and request a college hearing panel (C.H.P.).

*(C)* Deny responsibility and request a C.H.P.

If the student denies responsibility or challenges the sanction, the instructor will ask the C.C.A. of the college in which the misconduct occurred to convene a C.H.P.

*(ii)* If the student fails to respond to the resolution form within five days then the academic sanction(s) is final.

(b)     Resolution by college hearing panel

(i)     College hearing panel members

*(a)* When a faculty-student resolution is not achieved, the C.C.A., as soon as reasonably possible, convenes a C.H.P. of the college in which the alleged misconduct occurred. The C.H.P. will conduct a hearing on the alleged misconduct, issue a factual determination, and determine appropriate sanctions, if applicable.

*(b)* The C.H.P. consists of: the hearing chair, one representative selected by the college faculty, and one representative selected either by the college tribunal or student government for undergraduates or by the graduate college tribunals or graduate student governance association for graduate students. The hearing is chaired by the C.C.A. (or designee). The hearing chair only votes in the event of a tie.

*(c)* Either the respondent or the instructor alleging misconduct may challenge participation of any panel member on the grounds of conflict of interest. Challenges must be submitted in writing to the hearing chair within three days after the parties have been notified of the panel composition. The challenge must specify reasons that would prevent the individual from being unbiased with respect to the hearing proceedings. The hearing chair decides whether the challenge has merit. If the challenge is granted, a substitute will be appointed and the same option to challenge exists. If the hearing chair is challenged, the dean of the college (or designee) determines the validity of the challenge and either replaces or retains the hearing chair.

(ii)    Hearing participants

(a) Hearings are closed to the public.

(b) Presence at hearings is restricted to those individuals involved, except as otherwise noted.

(c) Faculty or staff alleging misconduct must participate in the hearing in-person or via video conference. If the respondent chooses not to attend the hearing, the respondent's written statements will be reviewed and evaluated based on the information available.

(d) The respondent may elect to have an adviser of their choice with them at the hearing. An adviser may consult with the student in writing, or verbally in a quiet, non-disruptive manner. The adviser may not actively participate as a spokesperson or vocal advocate in the hearing. Students are required to notify the hearing chair seventy-two hours prior to the hearing if the adviser is an attorney. Delays in the hearing process will not be allowed due to the scheduling conflicts of an adviser, therefore a student should select an adviser whose schedule permits attendance at the scheduled date and time for the C.H.P. Advisers may not be present for any party who does not attend the hearing.

(e) The university ombuds may be present as an observer.

(f) All parties will be afforded the opportunity to have witnesses participate in the hearing. Witnesses must participate in-person or via video conference. Both parties must disclose to the hearing officer the identity of the witnesses, a summary of what each witness will speak to, and submit any other evidence five days after receiving a notice of hearing letter. The hearing chair will provide a list of the witnesses and any other submitted evidence to the parties generally five days prior to the hearing. The hearing chair, in consultation with the C.H.P., reserves the right to limit the number of witnesses. During the hearing, witnesses are present only when giving testimony.

(iii)   Hearing procedures

(a) During the hearing only relevant information will be considered. The hearing chair and the C.H.P. have the right to determine if testimony and other evidence is relevant and may place time limitations on testimony and on opening and closing statements.

The parties have the right to submit written questions to be asked of each party and witnesses who participate in the hearing. The hearing chair, in consultation with the C.H.P., has the right to review and determine which written questions will be asked.

*(b)* When more than one student is involved in the same allegation of misconduct, they have the right to separate hearings. Students may have their cases consolidated and heard at the same time. Such requests must be made to the hearing chair at least forty-eight hours prior to the scheduled hearing. The C.H.P. has the right to maintain separate hearings. If the C.H.P. wishes to consolidate the hearings, the C.H.P. must ask each student if they are comfortable consolidating the hearing or if they wish to be heard separately. All parties and the C.C.A. (or designee) must agree to the hearing consolidation.

*(c)* C.H.P. hearings, but not deliberations, are recorded by the university. Any record of the hearing will be subject to F.E.R.P.A. All respondents will have post-hearing access to inspect the recorded hearing. To maintain confidentiality, parties are not permitted to retain a copy of the recorded hearing.

(iv)   Post-hearing procedures

*(a)* The C.H.P. will seek to reach a consensus in adjudicating cases. In the event there is no consensus, a majority vote will determine the outcome. In the event of tie votes, the hearing chair will vote.

*(b)* Within three days, the hearing chair of the C.H.P. will notify the student of the C.H.P.'s decision and appeal procedures. If the student does not appeal within the specified appeal time, the decision is final and the sanctions imposed take effect. When a student is involved in an academic misconduct case outside their home college, the C.C.A. will forward a copy of the final resolution to the student, the student's home college C.C.A., and S.C.C.S. within ten days after the resolution. If a student has no home college, the C.C.A. will forward a copy of the final resolution to the vice provost for undergraduate affairs (or designee) for undergraduate students, or the dean of the graduate school (or designee) for graduate students.

(5)   Disciplinary sanctions for academic misconduct

Sanctions will be determined based on the severity of the misconduct. Multiple sanctions may be imposed should the behavior warrant it. Examples of disciplinary sanctions include the following:

(a)     Academic disciplinary action

Includes altering a grade or assigning a failing grade for the assignment, examination, or course.

(b)     Academic disciplinary reprimand

Written notification to students informing them that their behavior is unacceptable and that this incident may be taken into consideration if misconduct reoccurs.

(c)     Academic disciplinary probation

Imposes specific restrictions or places extra requirements on the student for a specified period. These may vary with each case and may include action not academically restrictive in nature, such as restriction from participation in college activities or other requirements. Disciplinary action should be consistent with the philosophy of providing constructive learning experiences as a part of the probation. A student may be required to meet periodically with designated persons. Any further misconduct on the student's part during the period of probation may result in additional sanctions, including disciplinary suspension or dismissal.

(d)     Academic disciplinary college suspension

Prohibits the student from attending and/or enrolling in courses within a particular academic college for a specified period of time. The student may enroll in courses offered by other academic colleges. The sanctioning administrator shall determine the effective beginning and ending date of the suspension.

(e)     Academic disciplinary university suspension

University suspension prohibits the student from being present on specified university owned, leased, or controlled property without permission of the sanctioning administrator or their designee, and the student is prohibited from enrolling or participating in remote or online classes or other remote or online university events or activities, for a specified period of time. The sanctioning administrator shall determine the effective beginning and ending date of the suspension. Students placed on university disciplinary suspension must comply with all suspension requirements. A student seeking to attend the university after the conclusion of a suspension shall first request permission to re-enroll from S.C.C.S. and then apply for readmission to their college.

(f)     Academic disciplinary college dismissal

Permanently prohibits the student from attending and/or enrolling in classes in a particular academic college. The student may continue attending classes in other academic colleges.

(g)     Academic disciplinary university dismissal

Permanently prohibits the student from attending class at the university and from re-enrolling at the university.

(h)     Academic disciplinary educational sanctions or responses

Sanctions designed to develop the student's behavior by incorporating values of the university community and allowing an opportunity for students to grow as responsible members of the university community. This may include service to the college and restrictions on the right of access to the college or university. Students should review their colleges' specific policies regarding possible sanctions for academic misconduct.

(C)     Nonacademic misconduct

(1)     Nonacademic misconduct definitions

(a)     Aiding and abetting

Helping, procuring, or encouraging another person to engage in nonacademic misconduct.

(b)     Alcohol

Possesses, consumes, or distributes alcoholic beverages on campus in unlicensed facilities, except during events or in circumstances authorized by university officials; failing to comply with state law or university policy regarding use, transportation, or sale of alcoholic beverages. Possession of containers designed for alcohol beverages in unauthorized locations and/or while underage. Containers include, but are not limited to: alcohol boxes, flasks, empty alcohol bottles/cans. Behavior that evidences public intoxication.

(c)     Bullying

Bullying is conduct (whether written, verbal, electronic, or physical act) that is unwelcome and so severe, pervasive, and objectively offensive that it effectively denies an individual equal access to the individual's education program or activity.  Notwithstanding anything herein to the contrary, bullying does not include participating in constitutionally protected

activities.

(d)      Destruction of property

Damages, destroys, defaces, or alters the property of the university or the
property of another person or entity.

(e)      Dishonesty and misrepresentation

Provides false information, written or oral, including, but not limited to,
possessing or presenting false identification, forgery, alteration, or
misuse of university documents or records.

(f)      Disruption or obstruction

Disrupts, obstructs, or interferes with university functions, activities, or
the pursuit of the university mission, including, teaching, research,
administration, or disciplinary proceedings.

(g)      Disturbing the peace

Disturbs the peace, including but not limited to: disorderly conduct, failure
to comply with an order to disperse, or fighting.

(h)      Drugs or narcotics

Uses, manufactures, distributes, buys, sells, offers for sale, or possesses
illegal drugs, narcotics, drug paraphernalia, or unauthorized use or
unauthorized possession of prescription medication.

(i)      Failure to comply or identify

Failure to comply with the directions of university officials or law
enforcement officers acting within the scope of their duties or posted or
written rules; this includes, but is not limited to, failure to evacuate during
an emergency and/or failing to identify oneself to any of these persons
when requested to do so.

(j)      Failure to comply with sanctions

Failure to comply with sanctions imposed as a result of disciplinary
action outlined in the S.C.O.C.

(k)      False charges or statements

Intentionally making false charges or allegations of misconduct, including,
but not limited to making or providing false statements as a part of an
investigation or at university hearings.

(l)     False report of emergency

        Causes, makes, or circulates a false report or warning of a fire, explosion, crime or other catastrophe or emergency; including, but not limited to, activating a false fire alarm.

(m)     Harassment or discrimination

        (i)     Discriminatory harassment is unwelcome conduct based on the targeted individual's perceived or actual race, color, religion, national origin, ancestry, disability, genetic information, sex, age, sexual orientation, military status (including veteran status), parental status (including status as a foster parent), pregnancy, gender identity or expression, or any other status protected by law that:

                *(a)* explicitly or implicitly becomes a term or condition of employment or participation in a university course, program, or activity; or

                *(b)* is sufficiently severe, pervasive, or persistent to interfere with an individual's work, academic, or university course, program or activity participation, or the benefits derived therefrom, or creates an environment that a reasonable person would consider intimidating, hostile, or offensive. The determination of whether an environment is "intimidating, hostile, or offensive" is based on a totality of the circumstances, though a single or isolated incident may be severe enough on its own. Discriminatory harassment does not include participating in constitutionally protected activities. Allegations of sexual harassment as defined by title IX are subject to university title IX policies and procedures established under paragraph (A)(3)(f) of this rule.

        (ii)    Discrimination takes place when an individual receives adverse treatment based on perceived or actual race, color, religion, national origin, ancestry, disability, genetic information, sex, age, sexual orientation, military status (including veteran status), parental status (including status as a foster parent), pregnancy, gender identity or expression, or any other status protected by law that is sufficiently serious as to deny or limit the individual's ability to obtain the benefits of university's programs or activities. Allegations of sex discrimination are subject to university title IX policies and procedures established under paragraph (A)(3)(f) of this rule.

(n)     Hazing

Hazing includes participating in, allowing, or coercing another, including the victim, to do any act that creates a substantial risk of causing mental or physical harm to any person. A forced or coerced activity shall also be considered hazing when the initiation or admission into, or continued affiliation with, a group or organization is directly or indirectly conditional upon performing that activity. In no event shall the willingness of an individual to participate in such activity serve as a defense in cases of hazing.

(o)     Misuse of identification documents

        Unauthorized transferring, lending, using, or altering a university identification card or any other record or instrument of identification.

(p)     Misuse of safety equipment

        Unauthorized use or alteration of firefighting equipment, safety devices, fire alarms, fire extinguishers, or other emergency safety equipment.

(q)     Misuse of university information technology

        Theft, misuse, or illegal use of university information technology resources such as computer hardware or software, electronic mail or information, podcasts, voice mail, telephone, fax, including but not limited to:

        (i)     Unauthorized entry into a file to use, read or change the contents, or for any other purpose.

        (ii)    Unauthorized transfer or distribution of a file.

        (iii)   Unauthorized access to or use of another individual's identification and/or password.

        (iv)    Use of information technology to interfere with the work of another student, faculty member, or university official or with normal operations of the university.

        (v)     Use of information technology for unauthorized posting of copyrighted materials or obscenities as defined in division (F) of section 2907.01 of the Revised Code.

(r)     Passive participation

        Knowingly being in the presence of any form of misconduct identified in the S.C.O.C. after one has had a reasonable opportunity to remove themselves.

(s)     Physical abuse or harm, or threat of physical abuse or harm

Acts which cause or reasonably could cause physical harm to any person are prohibited. Actions that specifically threaten or cause a person to reasonably believe that the offender may cause physical harm are also prohibited. Examples of prohibited behavior include, but are not limited to, assault, battery, stalking, telephone harassment, sex or gender-based violence, threats, intimidation, physical abuse of another, dating violence, domestic violence, and any other speech or conduct not protected under the first amendment that threatens the health or safety of any person.

(t)     Public endangerment

Actions that endanger others including, but not limited to: dropping objects from buildings, activating a false fire alarm, or tampering with safety equipment.

(u)     Residence hall rules and regulations

Violating the terms and conditions of the university housing agreement, university lease agreement, or of published rules and regulations of the office of resident education and development (RED), office of housing, or university dining facilities.

(v)     Retaliation, intimidation

Threats or acts of retaliation or intimidation made to another person in response to the implementation of the S.C.O.C. or university rules and policies.

(w)     Smoking rule

Violating rule 3361:10-17-06 of the Administrative Code on tobacco and smoke free environment.

(x)     Theft or receipt of stolen property

Theft of property or services of the university, any person, or entity. Unauthorized possession of property known to be stolen or that may be identified as property of the university, any person, or entity.

(y)     Trespass and unauthorized access

Unauthorized access into or onto any university or other entity's property, building, room, structure or facility.

(z)     Unauthorized use of property or services

Unauthorized use or possession of property or resources of the university, any person, or entity.

(aa)    Unauthorized use of university keys

Unauthorized use, distribution, duplication, or possession of any keys issued for any university building, laboratory, facility, room, or vehicles. Keys are defined as any mechanism used to access locked areas.

(bb)    University policies or rules

Any violation of published university rules or policies.

(cc)    Violation of federal, state, or local law

Violation of any federal, state, or local law where the effect is interference with university activities or an identifiable individual's university work or academic activities.

(dd)    Violation of probation

Violating the S.C.O.C. while on university disciplinary probation or violating the specific terms of that probation.

(ee)    Weapons

With the exception of provisions identified in section 2923.1210 of the Revised Code, use, storage, or possession of a firearm, explosive device of any description, ammunition, or anything used to threaten, harm, or disrupt the university community including, but not limited to: firecrackers, compressed air or spring activated guns, pellet guns, BB guns, paintball guns, water guns, nerf guns, knives of any type, or any other items which would reasonably be deemed threatening by a reasonable person.

(2)    Hearing procedures for nonacademic misconduct

(a)    Complaint and notice

(i)    Complaint

Any person, department, organization, or entity may file a complaint alleging a violation of the S.C.O.C. by a student or student organization.    Both the complainant, when applicable, and the respondent shall receive concurrent notice of the complaint.

The director of S.C.C.S. may assign a complaint to an appropriate university office to conduct an investigation prior to the initiation of the S.C.C.S. adjudication process.

(ii)     Notice

After reviewing a complaint, if the director of S.C.C.S. (or designee) determines there is jurisdiction under the S.C.O.C. to adjudicate the complaint, the director of S.C.C.S. (or designee) will initiate the disciplinary process by giving the student or student organization written notice of the alleged violations. The written notice describes the date, time, and location of the alleged violation(s) and inform the student or student organization about the reported circumstances underlying the alleged violation(s). The notice will state the date, time, and location of the procedural review and the name of the review administrator.

(iii)    Procedural review

*(a)* The purpose of the procedural review is to review the alleged violations, give the complainant and respondent an opportunity to be heard and provide a statement, provide an explanation of the disciplinary process, discuss the student's or student organization's options for resolution, receive the range of sanctions if responsible, determine responsibility if further investigation is not necessary, and advise the student or student organization of recommended sanctions for the alleged violations if found responsible.

*(b)* Students or student organizations may elect to have an adviser present who may consult with the student in writing or verbally in a quiet, non-disruptive manner but the adviser may not actively participate as a spokesperson or vocal advocate in the proceeding. Students or student organizations are required to notify the S.C.C.S. seventy-two hours prior to the procedural review if the adviser is an attorney.

*(c)* Procedural reviews may be rescheduled at the discretion of S.C.C.S.

*(d)* If a student or student organization fails to attend a procedural review, S.C.C.S. may schedule an administrative review committee (A.R.C.) hearing.

(iv)     Options for resolution through procedural review

(a) A student or student organization may be found not responsible following a procedural review. If a student or student organization is found not responsible, their case will be considered resolved and closed.

(b) If a student or student organization is found responsible following a procedural review, then no later than three days from receipt of the finding, the student or student organization shall notify the S.C.C.S. in writing whether the student or student organization:

    (i) Accepts responsibility for the violation(s) and agrees to accept the sanction(s) imposed by the review administrator.

    (ii) Accepts responsibility but disputes the proposed sanction(s) and requests that the sanction(s) be determined by an A.R.C.

    (iii) Does not accept responsibility and requests a hearing before an A.R.C.

(c) If the respondent fails to notify the S.C.C.S. of the option selected within three days of the procedural review, an A.R.C. hearing will be scheduled.

(d) For certain matters, S.C.C.S. encourages students or student organizations charged in the same incident and who choose to have an A.R.C. hearing, to have their cases consolidated. S.C.C.S. reserves the right to request consolidation of hearings if all parties and S.C.C.S. agree for all cases to be heard together.

(e) Alternative resolution process: Based on the nature of the incident and the willingness of the members involved, S.C.C.S. may recommend to the parties that the matter be addressed through an educational conference or mediation. Such mediation sessions shall be conducted by a person chosen by S.C.C.S. who has been trained in mediation. No such resolution shall be conducted unless the respondent and the person(s) harmed by the student's misconduct consent to the mediation and/or alternate resolution process.

(b) Resolution by administrative review committee hearing

(i)  Administrative review committee members

    *(a)* A pool of members will be available to serve on the A.R.C. This pool will consist of no fewer than five faculty and staff selected by the director of S.C.C.S. in consultation with academic colleges, no fewer than ten student representatives selected by S.C.C.S. in consultation with student government association, and no fewer than four graduate or professional students selected by S.C.C.S. in consultation with the graduate student governance association.

    The A.R.C. is composed of the hearing chair, two faculty or staff selected from the A.R.C. pool, and four undergraduate student representatives selected from the A.R.C. student pool for undergraduate cases or two graduate students selected from the A.R.C. student graduate pool for graduate cases.

    For cases of non-title IX sexual harassment, the A.R.C. shall consist of the hearing chair and three faculty or staff selected from the A.R.C. pool.

    *(b)* The hearing chair shall be the director of the S.C.C.S. (or designee).

    *(c)* A quorum is present for undergraduate cases when the hearing chair, one faculty or staff, and three student representatives are present. A quorum is present for graduate cases when the hearing chair, one faculty or staff, and two student representatives are present. A quorum is present for non-title IX cases of sexual harassment and discrimination when the hearing chair and two faculty or staff are present. The hearing chair will only vote in the case of a tie by the committee.

    *(d)* The complainant or respondent may challenge participation of any committee member on the grounds of conflict of interest. Challenges must be submitted in writing to the hearing chair within three days of notice of the committee composition. The challenge must specify reasons that would prevent the individual from being unbiased with respect to the hearing proceedings. The hearing chair decides whether the challenge has merit. If the challenge is granted, a substitute will be appointed and the same option to challenge shall exist. If the hearing chair is challenged, the dean of students (or designee) shall determine the validity of the challenge

and either replace or retain the hearing chair.

(ii)   Hearing participants

*(a)* Hearings are closed to the public.

*(b)* Presence at hearings shall be restricted to the parties involved (complainants and respondents) except as otherwise noted.

*(c)* Complainants, when applicable, alleging violations of the S.C.O.C. are strongly encouraged to participate in the hearing in-person or via video conference. In matters requiring credibility assessments, complainants are required to participate in the hearing in-person or via video conference. If the respondent chooses not to attend the hearing, the respondent's written statement will be reviewed and evaluated based on the information available.

*(d)* The complainant and respondent may elect to have an adviser present who may consult with the student in writing or verbally in a quiet, non-disruptive manner but the adviser may not actively participate as a spokesperson or vocal advocate in the hearing. The complainant and the respondent are required to notify the hearing committee chair seventy-two hours prior to the hearing if the adviser is an attorney. A student or student organization should select an adviser whose schedule allows attendance at the scheduled date and time for the A.R.C. hearing, delays due to scheduling conflicts of advisers will not be considered. Advisers may not be present for any party who does not attend the hearing.

*(e)* The university ombuds may be present as an observer.

*(f)* Both parties will be afforded the same opportunities to have witnesses present for hearings. Only statements from witnesses who participate in the hearing in-person or via video conference will be considered by the A.R.C. Both parties must disclose to the hearing officer the identity of the witnesses, a summary of what each witness will speak to, and submit any other evidence five days after receiving a notice of hearing letter. The hearing chair will provide a list of the witnesses and any other submitted evidence to the parties generally five days prior to the hearing. The hearing chair, in consultation with the A.R.C., reserves the right to limit the number of witnesses. Witnesses are present only when giving testimony.

*(g)* The hearing chair reserves the right to make appropriate

and/or reasonable accommodations as required under law and/or to secure the safety and comfort of all parties and witnesses during a conduct proceeding.

(iii)    Hearing procedures

*(a)* Committee hearings are recorded by the university. Committee deliberations will not be recorded. Any record of the hearing will be subject to F.E.R.P.A. All parties may have post-hearing access to inspect the recorded hearing. To maintain confidentiality, parties are not permitted a copy of the recorded hearing.

*(b)* During the hearing only relevant information will be considered. The hearing chair, in consultation with the A.R.C., determines if testimony and other evidence is relevant and may place time limitations on testimony and opening and closing statements.

*(c)* The respondent and the complainant will have the right to submit written questions to be asked of all witnesses who participate in the hearing. The hearing chair, in consultation with the A.R.C., has the right to review and determine which written questions will be asked. Only relevant questions will be considered.

*(d)* Complainants and respondents will be given an opportunity to present a closing statement. At the close of the hearing, the A.R.C. will deliberate privately to determine if the respondent violated the S.C.O.C.

(iv)    Post-hearing procedures

*(a)* The A.R.C. will seek to reach consensus in adjudicating cases. In the event there is no consensus, a majority vote will determine the outcome. In the event of tie votes, the hearing chair will render a vote. Within three days, the hearing chair will notify the student of the A.R.C. decision and appeal procedures.

*(b)* If the student does not appeal within the specified appeal time, the outcome and sanctions imposed take effect.

*(c)* Victims of crimes of violence, including violent crimes as defined in the section 2901.01 of the Revised Code will receive concurrent notification of results of the campus disciplinary proceedings.

(3)     Sanctions and interim measures for nonacademic misconduct

    (a)     The university may impose interim measures to protect the rights, ensure the safety, or address the concerns of students, staff, faculty, and the university community.

    (b)     Students and student organizations found responsible for violating the S.C.O.C. will be subject to sanctions. Sanctions are designed to promote the university's educational mission, maintain safety, and deter behavior that violates the S.C.O.C. Behavior that is harmful to the university community or so deleterious to the educational process may require more stringent sanctions such as removal from activities, courses, residence hall, or the university. Remedies also may be provided to the parties or the campus community, as appropriate.

    (c)     Implementation of sanctions is immediate or as defined.

    (d)     Disclosures

        (i)     The university of Cincinnati may notify the parents or guardians of any student who is under the age of twenty-one and who has been found to be in violation of the S.C.O.C. with respect to any federal, state, or local law or university policy governing the use or possession of alcohol or a controlled substance.

        (ii)     Students will receive notice of notification letters sent to their parents or guardians.

        (iii)     The university also reserves the right to make any disclosures as permitted by F.E.R.P.A.

        (iv)     In complaints involving crimes of violence, the complainant will receive written notification of sanctions that the respondent may receive, consistent with federal and state law.

    (e)     Disciplinary sanctions for nonacademic misconduct

        (i)     University disciplinary reprimand

        Written notification to students or student organizations indicating that their behavior is unacceptable and that any other violation may warrant further sanctions.

        (ii)     University disciplinary probation

        Disciplinary probation is in effect for a specified period of time. A violation(s) of any university policy, rule, or agreement during the period of probation will be viewed as a violation of probation, and

will result in further action being imposed, which may include suspension or dismissal. Disciplinary probation may impose specific restrictions or place extra requirements on the student or student organization for a specified period. Restrictions may vary with each case and may include but are not limited to restrictions related to participation in intercollegiate athletics, representing the university, student leadership, and extracurricular and/or residence life activities. A student or student organization may be required to meet periodically with designated persons. Students or student organizations on university disciplinary probation are not considered to be in good disciplinary standing with the university.

(iii)    University disciplinary suspension

Prohibits the student from attending, or student organization being recognized by, the university and from being present without permission of the director of the S.C.C.S. (or designee) on any university owned, leased, or controlled property, and prohibits the student from enrolling or participating in remote or online classes or other remote or online university events or activities, for a specified period of time. University disciplinary suspensions shall have effective beginning and ending dates. Students or student organizations placed on university disciplinary suspension must comply with all suspension requirements. A student seeking to attend the university, or student organization seeking recognition, after the conclusion of the suspension shall first request permission to re-enroll, or re-register, from S.C.C.S.

(iv)    University disciplinary dismissal

Permanently prohibits the student, or student organization, from enrolling, attending, or being recognized by, the university and from being present, without permission, at any university event or on any university owned, leased, or controlled property.

(v)    University educational sanctions

Sanctions designed to address the student's, or student organization's, behavior may include, but are not limited to, the following: educational conferences and/or discussions, reflection papers, educational workshops, service to the university or university community, restrictions on the right of access to campus facilities or events and participation in student organizations or events, restitution for damage or expenses caused by the misconduct, or other educational or developmental programs.

(vi)    Interim suspension

(a)     An interim suspension is an interim action, effective immediately, designed to evaluate the student, or student organization, status, prohibit the presence of the student, or student organization, on campus and/or  from participating in any university-related activities, registered student organization activities, and academic coursework until the student's, or student organization's, disciplinary case can be resolved in accordance with prescribed disciplinary procedures. Such action shall be taken when the dean of students (or designee) has reasonable cause to believe that the student's or student organization's operation or presence on university owned, leased, or controlled property or at a university-related activity, or registered organization related activity, or remote or online classes or other remote or online university events or activities, poses a substantial threat to the health, welfare, or safety of others or the university. An interim suspension begins immediately upon written notice by the dean of students (or designee).

(b)     Interim suspension may be imposed pending the application of the disciplinary process. A disciplinary hearing shall be scheduled by the university without undue delay. The student or student organization may, within three days of the imposition of the suspension, petition the vice president for student affairs for reinstatement prior to the hearing. The petition must be in writing and must include supporting documentation or evidence that the student or student organization does not pose, or no longer poses, a significant risk of substantial harm to the health or safety of others or to property. A meeting on such petition will be conducted as soon as possible by the vice president for student affairs (or designee). The purpose of this meeting will be to determine if the interim suspension shall remain in effect, be modified, or be revoked pending a disciplinary hearing.

(f)     Sanctioning of student organizations

In addition to sanctions identified in paragraph (C)(3) of this rule, the following sanctions may be imposed on student organizations found responsible for violating the S.C.O.C.:

(i)     Loss of student organization privileges

Restricts or removes an organization's privileges on and off campus for a specified period of time. Restrictions may vary with each case and may include, but are not limited to, the following: use of university facilities or services; ability to sponsor, co-sponsor, host, or co-host activities or events; and ability to participate in activities or events such as, but not limited to, intercollegiate athletics, social events, representing the university, student leadership, extracurricular and/or residence life activities.

(ii)     Loss of university funds

Loss of university funds includes ineligibility to receive funds from any university entity for student organization purposes for a specified period of time, including but not limited to: university funding board, undergraduate student government, graduate student government, student activities and leadership development, and/or fraternity and sorority life.

(iii)    Restitution for damage

Restitution may include a student organization being required to repair all damages related to the misconduct, which may include, but is not limited to, assessment of reasonable expenses, such as repair or replacement cost for any damage to property, or any related expenses incurred by the affected parties.

(iv)     Termination of university registration / revocation of university recognition

Prohibits a student organization from being registered or recognized by the university for a specified period of time. During this time, the student organization is prohibited from functioning as a student organization in any capacity both on and off campus. This includes, but is not limited to, the following: alumni events; hosting, sponsoring, co-hosting or co-sponsoring charitable and philanthropic events and social events; participating as an organization in charitable or philanthropic events and social events; meeting as an organization; and, participating in tournaments or other sporting events, trainings, or recruitment. Unregistered and/or unrecognized student organizations are not allowed to re-activate as a student organization without prior written permission from S.C.C.S., student activities and leadership development, and/or fraternity and sorority life. An unregistered or unrecognized student organization must apply for reinstatement following the

term of the suspension by submitting a letter to S.C.C.S., student activities and leadership development; and/or fraternity and sorority life, if applicable.

(D) Appeal process

(1) The vice president for student affairs (or designee) will appoint no less than two and no more than five university faculty or staff to serve as university appeals administrators (U.A.A.).    An appeal administrator will not have played a role in any investigation or hearing relating to the appeal.

(2) Filing an appeal

(a) A student or student organization found responsible for either an academic or nonacademic violation of the S.C.O.C. has the right to appeal. An appeal must be submitted in writing to the director of S.C.C.S. within five days of receipt of the outcome letter unless S.C.C.S. specifies a longer period of time in writing based on a party's written request for additional time not to exceed ten days. The written appeal must include a permissible ground for appeal and information to support the appeal. Upon receipt of the appeal, the director of the S.C.C.S. will forward the appeal along with the student or student organization file to a U.A.A. for review.

(b) In non-title IX sexual harassment matters adjudicated under the S.C.O.C., both the complainant and the respondent have the right to appeal on all permissible grounds.

(c) A student or student organization may challenge participation of a U.A.A. on the grounds of conflict of interest. Challenges must be submitted in writing to the director of the S.C.C.S. (or designee) along with the appeal within five days. The challenge must specify reasons that would prevent the individual from being unbiased with respect to the hearing proceedings. The director of S.C.C.S. (or designee), in consultation with the dean of students, will decide whether the challenge has merit. If the challenge is granted, a substitute will be appointed by the director of S.C.C.S. (or designee) and the same option to challenge shall exist.

(d) In appeals involving non-title IX sexual harassment, both the complainant and respondent may challenge the participation of a U.A.A. on the grounds of conflict of interest as per the process outlined in this paragraph.

(3)    Permissible grounds for appeal: Grounds for appeals will be limited to the following:

(a)    New information: new information was discovered, which was not available at the time of the hearing, and such evidence could affect the decision in the case.

(b)     Procedural error: a substantial procedural error occurred in the process which affected the decision in the case.

(c)     Sanction of suspension or dismissal: a sanction of suspension or dismissal from the university was imposed and is not commensurate with the violation.

(d)     Non-title IX sexual harassment appeal of sanctions: In appeals involving crimes of violence or non-title IX sexual harassment, any sanction may be appealed by either the complainant or respondent on the grounds that the sanction is not commensurate with the violation.

(4)     Procedure

(a)     U.A.A.s review all appeals. All steps in the appeal process will occur as soon as reasonably possible.

(b)     U.A.A.s review for permissible grounds:

(i)     If the U.A.A.s determine that an appeal was submitted that does not fall within one of the four permissible grounds then the U.A.A.s will reject and return the appeal to the student and include a brief written explanation of the reason the appeal was rejected. That decision is final.

(ii)     In appeals involving non-title IX sexual harassment, both the complainant and respondent will be notified of an appeal that is deemed groundless.

(c)     U.A.A.s. review for new information or substantial procedural error:

(i)     If the U.A.A.s determine that the new information described in the appeal was not available earlier and could affect the decision or that a substantial procedural error occurred in the process which could have affected the decision in the case, the U.A.A.s will charge the A.R.C. or C.H.P. to hold a limited hearing for the sole purpose of reviewing the new information or to correct the procedural error.

(ii)     The new hearing will be limited in scope. It will not include any review of evidence or testimony or modification of factual conclusions reached in the original hearing, unless they are affected by the new information or by the procedural error. The appeal and complete hearing file will be provided to the A.R.C. or C.H.P.

(iii)     If members of the A.R.C. or C.H.P., which initially heard the complaint, are unavailable for continued service, substitute

members will be selected by the director of S.C.C.S. (or designee) from the original pool or by the C.C.A. U.A.A.s are not members of the A.R.C. or C.H.P. and do not participate in the review process.

(iv)  Following this limited hearing, the A.R.C. or C.H.P. will submit a report, and possibly a revised outcome, to the U.A.A.s. The U.A.A.s shall review the file and outcome. If it is the opinion of the U.A.A.s that the new evidence was considered or the procedural error corrected, the U.A.A.s shall forward the recommendation to the appropriate designee. If the U.A.A.s determine the A.R.C. or C.H.P. failed to correct the procedural error or failed to consider the new evidence, the U.A.A.s shall return the matter to the A.R.C. or C.H.P. with instructions to reconsider.

(d)  U.A.A.s review of sanction of suspension or dismissal:

For appeals of suspension or dismissal based on a claim that suspension or dismissal is not commensurate to the violation, the U.A.A.s will review the file and issue a recommendation to concur with or modify the sanction, then send the file to the appropriate party designated in paragraph (D)(5)(a) of this rule.

(e)  U.A.A.s review of non-title IX sexual harassment sanctions:

For appeals of non-title IX sexual harassment sanction(s) based on a claim that the sanction is not commensurate with the offense, the U.A.A.s will review the file and issue a recommendation to concur with or modify the sanction(s), then send the file to the appropriate party designated in paragraph (D)(5)(a) of this rule.

(f)  The student may continue in their courses without prejudice or interruption until the appeal is final except in matters where an interim suspension was already in effect.

(5)  Final decision

(a) The final decision to accept, reject, or modify the recommended sanction and to notify all parties in writing of the final decision rests with: the dean of students (or designee) for nonacademic misconduct sanctions other than dismissals; the vice president for student affairs (or designee) for nonacademic misconduct sanctions of dismissal; the home college deans (or designee), if no home college, the vice provost (or designee) for academic misconduct sanctions other than dismissal; and, the provost (or designee) for academic misconduct sanctions of dismissal.

(b) In appeals involving non-title IX sexual harassment, the complainant and respondent will receive concurrent notification in writing of the final decision.

Effective:          September 17, 2021

Certification:      Nicole S. Blount
                    Nicole S. Blount
                    Executive Director of Board Relations

Date:               September 1, 2021

|                        |                        |
|------------------------|------------------------|
| Promulgated under:     | R.C. Section 111.15    |
| Statutory authority:   | R.C. 3361.             |
| Rule amplifies:        | R.C. 3361.03           |
|                        | R.C. 3345.21-25        |

Prior effective dates:          July 31, 1989
                                September 18, 1989
                                January 8, 1990
                                February 26, 1992
                                August 21, 1995
                                February 9, 1998
                                July 15, 2004
                                October 15, 2007
                                April 7, 2008
                                October 7, 2010
                                July 15, 2012
                                September 25, 2015
                                August 8, 2016
                                July 20, 2018
                                September 25, 2020