| | Policy Title:<br><br>**Title IX Sexual Harassment Policy** | Policy Number:<br><br>**10.1.1** |
|---|---|---|
| **Category:**<br>Equity & Inclusion | **Effective Date:**<br>08/14/2020<br><br>**Prior Effective Date:**<br>N/A | **Policy Owner:**<br>Vice President for Equity, Inclusion & Community Impact |
| **Policy applicable for:**<br>Faculty/Staff /Students/Third Parties | **Enabling Acts:**<br><br>University Rule 10-13-01<br><br>Title IX of the Education Amendments of 1972 | **Responsible Office/Unit(s):**<br>Office of Gender Equity and Inclusion, Student Affairs, Human Resources, and Office of the Provost |

## POLICY

The University of Cincinnati ("UC" or the "University") is committed to providing a living, learning, and working environment that is equitable, inclusive, and free from discrimination, harassment, and retaliation. Title IX of the Education Amendments of 1972 is a federal law that prohibits discrimination on the basis of sex in education programs or activities that receive federal financial assistance. Consistent with federal, state, and local laws and regulations, the University prohibits discrimination and harassment on the basis of sex, in its academic, admissions, education and employment programs and activities. *See also,* University Notice of Non-Discrimination.

## SCOPE

This Policy applies to University employees, students, volunteers, applicants, and other third parties as defined herein. This Policy serves to provide notice and information regarding the University's policies and procedures related to sexual harassment and retaliation.

## JURISDICTION AND RESPONSE TO SEXUAL HARASSMENT

When the University has actual knowledge of sexual harassment in its education program or activity, against a person in the United States, it must respond promptly in a manner that is not deliberately indifferent. The University is deliberately indifferent only if its response to sexual harassment is clearly unreasonable in light of the known circumstances. Complaints of sexual harassment, as defined in this Policy, will be addressed using the procedures set forth in this Policy.

Alleged misconduct that falls outside the scope of this Policy may be addressed through other University policies and rules, including the Student Code of Conduct, collective bargaining agreements, and Human

Resources policies.

This Policy applies to sexual harassment that occurs on or after August 14, 2020.

This Policy is designed to comply with applicable laws and regulations. The University reserves the right to modify or deviate from this Policy, when, in its sole discretion, the University determines it is necessary to protect the rights of the parties or to comply with the University's legal obligations.

## DEFINITIONS

**Actual knowledge**: Notice of sexual harassment or allegations of sexual harassment to the University's Title IX Coordinator or any official of the University who has authority to institute corrective measures on behalf of the University. Imputation of knowledge based solely on vicarious liability or constructive notice is insufficient to constitute actual knowledge. This standard is not met when the only official of the University with actual knowledge is the respondent in a matter. The mere ability or obligation to report sexual harassment or to inform an individual student about how to report sexual harassment, or having been trained to do so, does not qualify an individual as one who has authority to institute corrective measures on behalf of the University. "Notice" as used in definition includes, but is not limited to, a report of sexual harassment to the Title IX Coordinator as described in this Policy.

**Applicant**: An individual who has applied for admission to, participation in, or employment with the University who meets the minimum qualifications for the position.

**Business Day:** Any day in which normal University business operations are conducted, which are Monday through Friday from 9 a.m. to 5 p.m. local time and excludes weekends, holidays, and other office closures recognized by the University. Although the University continues business operations during exam periods and breaks between terms, hearings may not be held during these times.

**Complainant**: An individual who is alleged to be the victim of conduct that could constitute sexual harassment.

**Consent**: An affirmative agreement through clear actions or words to engage in intimate and/or sexual activity. Individuals giving the consent must act freely, voluntarily, and with understanding of their actions. Consent can be withdrawn at any time. A person cannot give consent if the person is mentally or physically incapacitated such that the person cannot understand the fact, nature or extent of the sexual situation. Similarly, a person cannot give consent if force (expressed or implied) duress, intimidation, threats or deception are used on the person. Silence or the absence of resistance does not necessarily imply consent. Consent to some sexual acts does not imply consent to other acts, nor does prior consent to sexual activities imply ongoing future consent with that person or consent to that same sexual activity with another person. Consent does not exist when one knew or should have known of the other's incapacitation. A factor in determining consent is whether an individual has taken advantage of a position of influence or authority. Proof of consent or non-consent is not a burden placed on either party involved in an incident. Instead, the burden remains on the University to determine whether this Policy has been violated.

**Dating violence**: Violence, on the basis of sex, committed by a person who is or has been in a social relationship of a romantic or intimate nature with the complainant. The existence of such a relationship shall be determined based on the complainant's statement, and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in

the relationship. For the purposes of this definition, dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse. Dating violence does not include acts covered under the definition of domestic violence

**Domestic violence:** Violence, on the basis of sex, committed by a current or former spouse or intimate partner of the complainant, by a person with whom the complainant shares a child in common, or by a person who is cohabitating with or has cohabited with the complainant as a spouse or intimate partner, or by a person similarly situated to a spouse of the complainant under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred; or by any other person against an adult or youth complainant who is protected from that person's acts under the domestic or family violence laws of Ohio.

**Education program or activity:** Includes locations, events, or circumstances over which the University exercises substantial control over both the respondent and the context in which the sexual harassment occurs, and also includes any building owned or controlled by a student organization that is officially recognized by the University.

**Formal complaint:** A document filed by a complainant or signed by the Title IX Coordinator alleging conduct in violation of this Policy against a respondent and requesting that the University investigate the allegation(s) of sexual harassment. At the time of filing a formal complaint, a complainant must be participating in or attempting to participate in an education program or activity of the University with which the formal complaint is filed. A formal complaint may be filed with the Title IX Coordinator in person, by mail, by electronic mail, or online through the Office of Gender Equity & Inclusion website. See Formal Complaint and Resolution, Section II below where contact information and details about how to report are provided.

As used in this definition, the phrase "document filed by a complainant" means a document or electronic submission (such as by electronic mail or through an online portal provided for this purpose by the University) that contains the complainant's physical or digital signature, or otherwise indicates that the complainant is the person filing the formal complaint. Where the Title IX Coordinator signs a formal complaint, the Title IX Coordinator is not a complainant or otherwise a party.

**Incapacitated or incapacitation:** A state in which rational decision-making or the ability to consent is rendered impossible because of a person's temporary or permanent physical or mental impairment including, but not limited to, physical or mental impairment resulting from drugs or alcohol, disability, sleep, unconsciousness, or illness. Incapacitation is determined based on the totality of the circumstances. Incapacitation is more than intoxication, but intoxication can cause incapacitation.

Factors to consider in determining incapacitation include, but are not limited to, the following:

- Lack of awareness of circumstances or surroundings (e.g., an inability to understand, either temporarily or permanently, the who, what, where, how and/or why of the circumstances; blackout state);

- Inability to physically or verbally communicate coherently, particularly with regard to consent (e.g., slurred or incoherent speech);

- Lack of full control over physical movements (e.g., difficulty walking or standing without stumbling or assistance); and/or

- Physical symptoms (e.g., vomiting or incontinence).

**Parties:** A complainant and a respondent may be referred to as "party" or "parties."

**Report:** A verbal or written account of alleged sexual harassment by any person pursuant to the Reporting section, subpart III. A report is not a formal complaint and does not initiate the grievance process.

**Reporting party**: The individual or entity who notifies the University of conduct alleged to violate this Policy.

**Respondent**: An individual who has been reported to be the perpetrator of conduct that could constitute sexual harassment.

**Retaliation**: An adverse action taken against an individual because of an individual's good faith complaint of harassment, good faith participation in an investigation of such complaint, or good faith opposition to harassment in the educational or workplace setting. Many factors, including but not limited to past performance evaluations/reviews, temporal proximity, and comments made by others, should be considered when evaluating whether an adverse action was taken against an individual because of the individual's good faith complaint of harassment, good faith participation in an investigation of such complaint, or good faith opposition to harassment in the educational or workplace setting.

**Sanction:** Discipline or corrective action made for the purpose of enforcing this Policy and applied to a respondent following the determination of responsibility for violating this Policy.

**Sexual Assault:** Sexual assault is defined as:

- Sex Offenses, Forcible: Any sexual act directed against another person, without the consent of the complainant, including instances in which the complainant is incapable of giving consent because of incapacitation.

- Forcible Rape: Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the complainant.

- Forcible Sodomy: Oral or anal sexual intercourse with another person, forcibly, and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances in which the complainant is incapable of giving consent because of incapacitation.

- Sexual Assault with an Object: The use of an object or instrument to penetrate, however slightly, the genital or anal opening of the body of another person, forcibly, and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances in which the complainant is incapable of giving consent because of incapacitation.

- Forcible Fondling: The touching of the private body parts of another person (buttocks, groin, breasts), for the purpose of sexual gratification, forcibly, and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances in which the complainant is incapable of giving consent because of incapacitation.

- Sex Offenses, Non-forcible:

  o Incest: Non-forcible sexual intercourse, between persons who are related to each other, within the degrees wherein marriage is prohibited by Ohio law.

  o Statutory Rape: Non-forcible sexual intercourse, with a person who is under the statutory age of consent of 16.

**Sexual harassment:** Conduct on the basis of sex, occurring in the United States, that satisfies one or more of the following:

- An employee of the University conditioning the provision of an aid, benefit, or service of the University on an individual's participation in unwelcome sexual conduct;

- Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the University's education program or activity; or

- Sexual assault, dating violence, domestic violence, or stalking. (See definitions for Sexual Assault, Dating Violence, Domestic Violence, and Stalking.)

**Stalking**: Engaging in a course of conduct, on the basis of sex, directed at a specific person, that (i) would cause a reasonable person to fear for the person's safety, or (ii) the safety of others; or (iii) suffer substantial emotional distress. For purposes of this definition, course of conduct means two or more acts, including, but not limited to, acts in which the respondent directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property. Reasonable person means a reasonable person under similar circumstances and with similar identities to the complainant. Substantial emotional distress means significant mental suffering or anguish that may but does not necessarily require medical or other professional treatment or counseling.

**Supportive measures:** Non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the complainant or the respondent, before or after the filing of a formal complaint or where no formal complaint has been filed. Such measures are designed to restore or preserve equal access to the University's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the University's educational environment, or deter sexual harassment.

**Third party**: A guest, visitor, program participant/attendee, vendor, contractor, subcontractor, or other person contracted to provide service or conduct business with the University.

**University community**: Employees, students, volunteers, applicants, and other third parties as defined herein.

## REPORTING

I. **Reporting Obligations for Allegations of Conduct in Violation of this Policy**

   A. **All Individuals:** All individuals who are directly involved in, who observe, or who receive reliable information that a violation of this Policy may have occurred may report such allegations and are strongly encouraged to do so.

   B. **University Employees/University Community:** All University employees and any member of the University community who supervises faculty, staff, students, or volunteers, except those exempt from reporting as set forth in this Policy or expressly identified as a confidential reporter, have an obligation to report incidents that may be a violation of this Policy. Any such individual who receives a disclosure of allegations of conduct in violation of this Policy or becomes aware of information that would lead a

reasonable person to believe that a violation may have occurred involving anyone covered under this Policy, must report all known information immediately.

## II. <u>Reporting Exemptions</u>

The following categories of individuals are exempt from the duty to report allegations of conduct in violation of this Policy when such information is shared with them while acting in their professional, confidential capacity:

**A. Professional and Pastoral Counselors:**

    i. A professional counselor is a person whose official responsibilities include providing mental health counseling to members of the University community and who is functioning within the scope of that license or certification and their University employment. This definition applies to professional counselors who are not employees of the University but are under contract to provide counseling at the University. This also includes an individual who is not yet licensed or certified (e.g., a Ph.D. counselor-trainee acting under the supervision of a professional counselor at the University).

    ii. A pastoral counselor is a person who is associated with a religious order or denomination, is recognized by the religious order or denomination as someone who provides confidential counseling and is functioning within the scope of that recognition and their role at the University. In this context, a pastor or priest who is functioning as an athletic director or as a student advocate would not be exempt from the reporting obligation.

**B. Other Employees with a Professional License:** Other employees with a professional license requiring confidentiality who are functioning within the scope of the license or certification and their University employment. For example, a physician with dual appointments (clinician and professor) would be required to report alleged violations of the Policy of which they became aware of in the scope of their employment as a professor, but while operating as a clinician must keep such information confidential and privileged by the physician-patient relationship unless there is a mandatory reporting requirement under state law.

**C. Employees Supervised or Performing Duties:** Employees who are functioning within the scope of their University employment and who are supervised by or performing duties for University employees identified in parts A and B of this section requiring confidentiality. For example, student health services and medical center employees cannot disclose confidential information but must follow reporting requirements for any non-confidential information.

**D. Specific Events/Activities/Scope:** Employees and members of the University community, including those who supervise faculty, staff, students, or volunteers, are not required to report alleged violations of this Policy that are disclosed:

    i. At public awareness events (e.g., "Take Back the Night," candlelight vigils, survivor "speak outs," etc.);

    ii. During an individual's participation as a subject in an Institutional Review Board (IRB)-approved human subjects research protocol; or

    iii. If they receive the information regarding sexual harassment outside the scope or course of their employment and/or engagement with University.

    **C.  Minors:**  For conduct involving the abuse of minors, see Section V(D), *infra.*

**III.**    <u>**Where to Report Allegations of Conduct in Violation of this Policy**</u>

    **A.  Reports:** Any person may report allegations of conduct in violation of this Policy (whether or not the person reporting is the person alleged to be the victim of conduct that could constitute conduct in violation of this Policy) in person, by mail, by telephone, by electronic email, or by electronic submission, or by any other means that results in the Title IX Coordinator receiving the verbal or written report.  A report may be made at any time (including during non-business hours) by using the telephone number, electronic mail address, electronic submission, or by mail to the office address.  Reports may be made anonymously, but to initiate the grievance process, a formal complaint must be filed pursuant to the process outlined in this policy.

    **B.  Formal Complaints:** In order to initiate the grievance process, a complainant must file a formal complaint with the Title IX Coordinator.  A formal complaint requires the complainant's physical or digital signature, or other indicia that the complainant is the person filing the formal complaint.  A formal complaint may be filed in person, by mail, by electronic email, or by electronic submission.  A complainant may receive supportive measures without filing a formal complaint.  Formal complaints may not be filed anonymously

    **C.  Contact Information:**

        i.  *Primary Contact:*

            Title IX Coordinator
            225 Calhoun St., USquare 308
            PO Box 210158
            Cincinnati, OH  45221-0158
            Phone: (513) 556-3349 Email:
            <u>titleix@ucmail.uc.edu</u>
            <u>Electronic Submission Form</u>

        ii.  *Deputy Title IX Coordinators on the regional campuses are available to assist with reporting Title IX matters to the Title IX Coordinator:*

            UC Blue Ash College
            Deputy Title IX Coordinator
            Muntz Hall, Room 140Q
            9555 Plainfield Drive
            Blue Ash, OH 45236-0086
            Phone: (513) 936-1641

            UC Clermont
            Deputy Title IX Coordinator
            Clermont Student Services, Room 140C
            4200 Clermont College Drive
            Batavia, OH 45103-0162
            Phone: (513) 732-8964

iii. *EthicsPoint Anonymous Reporting Hotline:*

(800) 889-1547 (800) 889-1547
Anonymous Reporting Hotline

The University will review and take appropriate action on anonymous reports. Note that the grievance process may not be initiated by filing an anonymous report via EthicsPoint.

**D. Outside Agencies:** Filing a complaint with the University does not preclude an individual from filing a complaint with an external agency nor does it extend time limits with those agencies.

**E. Notifying Law Enforcement:** The University retains the right to notify law enforcement authorities and may engage in appropriate investigatory processes when concerns exist for conduct threatening the personal safety of an individual or well-being of the University community, with or without the complainant's participation. Depending on the nature of the report or allegation, investigations may be conducted by the University and law enforcement. These processes are separate and distinct from one another but can run concurrently. At times, the University may determine that law enforcement's involvement in the investigation or remediation of the complaint is necessary to ensure the safety of the University community. If this determination by the University is in conflict with an individual's request for confidentiality, the University will notify the individual of its decision to involve law enforcement authorities or pursue criminal proceedings.

## IV. Receipt of Allegations

Upon receipt of information indicating that a complainant may have a complaint or concern regarding conduct in violation of this Policy, the Office of Gender Equity & Inclusion shall promptly contact the complainant to provide information on supportive measures and the grievance process.

Complainants may choose whether or not to initiate the grievance process by filing a formal complaint, and/or whether or not to receive supportive measures. A complainant's choice to participate in the grievance process and/or to receive supportive measures can be revoked, altered, or otherwise changed by providing notice to the Office of Gender Equity & Inclusion at any time prior to adjudication of the complaint.

A complainant may elect to receive supportive measures, whether or not they elect to file a formal complaint or participate in complaint resolution processes.

## V. Reports to Law Enforcement

**A. Emergencies:** In the event of an emergency, an immediate threat, or if a crime is in progress, call 911 immediately.

**B. Crimes:** When the alleged conduct is potentially of a criminal nature, individuals are encouraged to also make a report to the University of Cincinnati Police Division at (513) 556-1111, 51 West Corry Blvd, on Public Safety's website, or to local law enforcement.

**C. Felonies:** Ohio law requires any person knowing that a felony has been or is being committed to report the crime to the police. In the event University employees, in the course and scope of their employment, become aware of a felony that has been or is being committed on University property or during a University event, they must report it to the University of Cincinnati Police Division (exceptions to this requirement are persons employed by the University who are exempted by law from reporting under R.C. 2921.22 or other applicable statute(s)).

**D. Minors:** All University community members who receive information, suspect, or know that a minor is being or has been abused or neglected must advise their supervisor, the Office of Human Resources, and the University of Cincinnati Division of Public Safety promptly. If the report is about a supervisor or administrator, the next level of management should be contacted. Reports can be made to: Chief Human Resources Officer or Senior Director of Labor Relations & Policy Development at (513) 556-6372; University of Cincinnati Department of Public Safety: Non-Emergency (513) 556-1111.

## VI. <u>Confidentiality</u>

The University recognizes the importance of confidentiality. To the extent possible, all information received in connection with the filing, investigation, and resolution of allegations will be treated as confidential except when necessary to conduct an appropriate investigation, to provide assistance and resources to University community members, to perform other appropriate University functions, or when the University is compelled to produce information in accordance with applicable law and/or other controlling authority. Confidentiality is not the equivalent of anonymity, and confidentiality will be limited in the formal complaint grievance process.

## VII. <u>Amnesty</u>

To maintain a safe and scholarly community, the University encourages the reporting of Student Code of Conduct and policy violations, crimes involving an alleged victim, and/or violations of this Policy. To encourage reporting, the University has the discretion to not pursue certain Student Code of Conduct and/or other policy violations. Such amnesty may be granted as set forth in the Student Code of Conduct or other policy provisions.

## VIII. <u>False Reporting</u>

False reporting is making an intentional inaccurate report or accusation in relation to this Policy as opposed to a report or accusation, which, even if erroneous, is made in good faith. False reporting is a serious offense subject to appropriate disciplinary action up to and including dismissal or termination.

## IX. <u>Failure to Report</u>

An employee, or any member of the University community who supervises faculty, staff, students, or volunteers, who is required to report under this Policy and fails to do so is subject to disciplinary action up to and including termination or removal.

# SUPPORTIVE MEASURES

## I. <u>What are Supportive Measures</u>

Supportive measures are non-disciplinary, non-punitive individualized services designed to restore or preserve equal access to the University's education program or activity, without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the University's educational environment, or deter sexual harassment.  Supportive measures include, but are not limited to: counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties and/or other parties ("no contact orders"), changes in work or housing arrangements, leaves of absence, increased security and monitoring of certain areas of campus, and other similar measures.

II.  **Availability of Supportive Measures**

Supportive measures are available upon receipt of a report of sexual harassment as appropriate. Individuals who would like to request supportive measures or who experience difficulty obtaining supportive measures that have been approved should contact the Title IX Coordinator.

III.  **Confidentiality of Supportive Measures**

Subject to other confidentiality provisions of this Policy, the University shall maintain as confidential any supportive measures provided to the complainant or respondent, to the extent that maintaining such confidentiality would not impair the ability of the University to provide the supportive measures.

IV.  **Complying with Supportive Measures**

Failure to abide by supportive measures may constitute a violation of this Policy, and/or other University policies, including the Student Code of Conduct.

V.  **Length of Supportive Measures**

Supportive measures may continue to be available to complainant, respondent, and the University community following the resolution of a report or complaint.

## FORMAL COMPLAINT PROCESSING AND RESOLUTION

I.  **Formal Complaint**

In order to initiate the grievance process, a complainant must file a formal complaint with the Title IX Coordinator.  A formal complaint requires the complainant's physical or digital signature, or other indicia that the complainant is the person filing the formal complaint.  A formal complaint may be filed in person, by mail, by electronic email, or by electronic submission.  A complainant may receive supportive measures without filing a formal complaint.  Formal complaints may not be filed anonymously.

The Title IX Coordinator may sign a formal complaint when concerns exist for conduct threatening the safety of the University community.  The Title IX Coordinator is not a complainant or a party in the grievance process.

II.  **Where to File a Formal Complaint**

*Primary Contact:*

Title IX Coordinator
225 Calhoun St., USquare 308
PO Box 210158
Cincinnati, OH 45221-0158
Phone: (513) 556-3349
Email: titleix@ucmail.uc.edu
Electronic Submission Form

*Deputy Title IX Coordinators on the regional campuses are available to assist with filing formal complaints:*

UC Blue Ash College
Deputy Title IX Coordinator
Muntz Hall, Room 140Q
9555 Plainfield Drive
Blue Ash, OH 45236-0086
Phone: (513) 936-1641

UC Clermont
Deputy Title IX Coordinator
Clermont Student Services, Room 140C
4200 Clermont College Drive
Batavia, OH 45103-0162
Phone: (513) 732-8964

**III.**     **Timeframe for Filing a Formal Complaint**

Notice of conduct alleged to violate this Policy may be reported at any time. However, at the time of filing a formal complaint, a complainant must be participating in or attempting to participate in a University education program or activity. While there is no strict deadline for filing a formal complaint, and timeliness may vary according to the specific circumstances, prompt reporting is important to facilitate a thorough investigation. It is expected that reports and formal complaints about sexual harassment will be reported within a proximate time of the occurrence of the alleged conduct or the date upon which the alleged conduct became known to the reporting party. Delayed reporting or filing of a formal complaint may limit the University's ability to gather relevant evidence, to effectively address the conduct at issue, and to initiate the grievance process. Complainants and other University community members with knowledge of sexual harassment are encouraged to report to the Title IX Coordinator within 24 hours.

**IV.**     **Presumption of Not Responsible**

Throughout the process, there is a presumption that the respondent is not responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process. Disciplinary sanctions or other actions that are not supportive measures will be imposed against a respondent only after completion of a grievance process that complies with this Policy.

**V.**   <u>**Equal Treatment**</u>

Complainants and respondents shall be treated equitably throughout the grievance process.

**VI.**   <u>**Standard of Evidence**</u>

The standard of evidence to be used to determine responsibility for a violation of this Policy is the preponderance of the evidence. In determining whether alleged conduct constitutes a violation of this Policy, the University will look at the totality of the circumstances, including the nature of the alleged offense as well as the location of and the context in which the alleged incident(s) occurred. The determination as to whether a particular action constitutes a violation of this Policy will be a factual determination made on a case-by-case basis, based on relevant evidence. In the grievance process, an objective evaluation of all relevant evidence is required, including both inculpatory and exculpatory evidence.

**VII.**   <u>**Credibility**</u>

Credibility determinations may not be based on a person's status as a complainant, respondent, or witness.

**VIII.**   <u>**No Conflict of Interest or Bias**</u>

No individual designated by the University as a Title IX Coordinator, investigator, decision-maker, or any person designated by the University to facilitate the grievance process, may have a conflict of interest or bias for or against complainants or respondents generally or an individual complainant or respondent.

**IX.**   <u>**Timeframe to Resolve a Matter**</u>

**A. Reasonably Prompt:** Reasonably prompt timeframes for conclusion of the grievance process, including reasonably prompt timeframes for filing and resolving appeals and informal resolution processes have been established by the University. These timeframes are estimations of the duration of time necessary to complete a reasonably prompt, thorough and appropriate grievance process.

**B. Delays:** Temporary delay of the grievance process or the limited extension of timeframes for good cause, with written notice to the complainant and the respondent of the delay or extension and the reasons for the action, are permissible. Good cause may include, but is not limited to, considerations such as the absence of a party, a party's advisor, or a witness; concurrent law enforcement activity; or the need for language assistance or accommodation of disabilities.

**C. Timeframes:**

i. *Grievance Process:* The University shall make appropriate efforts to ensure that from the date of its receipt of a formal complaint, the investigation, hearing, and issuance of the adjudicating body's report shall be concluded in ninety (90) business days.

ii. *Appeals:* Appeals are expected to be resolved within twenty (20) business days after the parties' submission of their statements.

    iii.  *Informal Resolution:* The University shall make appropriate efforts to ensure, except where otherwise agreed to by the parties, that from the date of its receipt of a formal complaint, informal resolution processes shall be concluded within ninety (90) business days.

## EMERGENCY REMOVAL/ADMINISTRATIVE LEAVE

The University may remove a respondent from the University's program, activity, property, or place the respondent on administrative leave on an emergency basis, after conducting an individualized safety and risk analysis and determining that an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment justifies removal. Emergency removal/administrative leave determinations and appeals shall be conducted in accordance with established University policies, procedures, and agreements. For more information see, Student Code of Conduct, Human Resource policies and procedures, and/or applicable collective bargaining agreements. The University will provide the respondent with notice and an opportunity to challenge the decision immediately following the removal or administrative leave.

## GRIEVANCE PROCEDURES

    **I.**   **Conflicts of Interest**

If either party asserts that an actual or apparent conflict of interest may adversely impact the investigation, the complaint should be submitted to the Vice President of Equity, & Inclusion & Community Impact, or designee. If the Vice President of Equity, & Inclusion & Community Impact or designee determines there is no actual or apparent conflict of interest, the investigation will proceed according to this procedure. If a determination is made that a conflict of interest exists, the Vice President of Equity & Inclusion, or designee, shall appoint an independent individual with appropriate experience and training to conduct the investigation into the complaint.

    **II.**   **Formal Complaint**

A formal complaint is received when the complainant and/or Title IX Coordinator files the complaint with the Office of Gender Equity & Inclusion.

Upon receipt of a formal complaint, the Title IX Coordinator, or designee, will provide written notice to the known parties with the following information:

- A description of the University's grievance process, including any applicable informal resolution process.

- Notice of the allegations of sexual harassment. The notice will provide sufficient details known at the time, which include the identities of the parties involved in the incident, if known, the conduct allegedly constituting sexual harassment, and the date and location of the alleged incident, if known. The parties will be provided sufficient time to prepare a response before any initial interview.

- A statement that the respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the grievance process.

- Notice that the parties may have an advisor of their choice, who may be, but is not required to be, an attorney, and may inspect and review evidence.

- Notice that University policy prohibits knowingly making false statements or knowingly submitting false information during the grievance process.

- Information regarding resources available to provide academic and personal support on and off campus, including counseling services, academic advising, and resources for pursuing complaint resolution.

If, in the course of an investigation, the University decides to investigate allegations about the complainant or respondent that are not included in the initial written notice of a formal complaint, or additional allegations which are outside the scope of the Office of Gender Equity & Inclusion's jurisdiction, the Office of Gender Equity & Inclusion and/or another appropriate University office shall provide notice of the additional allegations to the parties whose identities are known.

If the formal complaint contains allegations that fall outside the scope of this Policy, but are covered under the University's sex- and/or gender-based misconduct policy, the Office of Gender Equity & Inclusion may consolidate the allegations into one investigation and a single hearing may be held pursuant to this Policy, if a hearing is applicable.

### III.    Dismissal of a Formal Complaint

The University must investigate the allegations in a formal complaint.  The University shall dismiss the formal complaint with regard to conduct under this Policy if during the investigation the University determines the conduct alleged in the formal complaint: does not constitute sexual harassment  even if proved; did not occur in the University's  education program or activity; or, did not occur against a person in the United States.  Such a dismissal does not preclude action under another University policy or code of conduct.

The University may dismiss a formal complaint or any allegations therein, if at any time during the investigation or hearing: a complainant notifies the Title IX Coordinator in writing that the complainant would like to withdraw the formal complaint or any allegations therein; the respondent is no longer enrolled or employed by the University; or, specific circumstances prevent the investigator from gathering evidence sufficient to reach a determination as to the formal complaint or allegations therein.

Upon a dismissal, the University shall promptly send written notice of the dismissal and the reason(s) for the dismissal simultaneously to the parties.  The decision to dismiss a formal complaint or any of its allegations may be appealed.  See Section X, subpart (A). for appeal procedures.

### IV.    Consolidation of Formal Complaints

The University may consolidate formal complaints as to allegations against more than one

respondent, or by more than one complainant against one or more respondents, or by one party against the other party, where the allegations arise out of the same facts or circumstances.

**V.**    **Advisors**

Parties may elect to have up to two advisors of their choice.  An advisor may consult with a party verbally or in writing in a quiet, non-disruptive manner, and an advisor may not participate as a spokesperson or vocal advocate in meetings, interviews, or hearings, other than as described below, and must comply with all rules of decorum established for the particular proceeding.  Should the matter proceed to a hearing, one advisor will be responsible for conducting cross-examination of witnesses.  If a party does not have an advisor for a hearing, the University will provide one free of charge to the party for the purpose of conducting cross-examination of witnesses on behalf of the party.  Parties are not permitted to conduct cross-examination of witnesses directly.  Cross-examination may be conducted only through an advisor.

Parties are required to notify the relevant office three (3) business days prior to any meeting, call, interview, hearing, or other event if the advisor is an attorney.

**VI.**    **Informal Resolution Process**

**A.**   **About:** Informal resolution is a voluntary process through which parties consensually work toward resolution of a matter.  The informal resolution process provides a remedies-based approach specific to the circumstances of the incident, without making a determination as to whether a policy has been violated. This approach allows the parties and University to tailor responses to the unique facts and circumstances of an incident, particularly in cases where there is not a broader threat to individual or campus safety.

The informal resolution process may only be pursued in matters where a formal complaint has been filed.  Parties may agree to engage in informal resolution any time prior to the grievance process reaching a determination of responsibility for a Policy violation.

**B.**   **Limitations:** The University may not offer or facilitate an informal resolution process to resolve allegations that an employee sexually harassed a student.

**C.**   **Notice & Consent:** Informal resolution processes are facilitated by the Office of Gender Equity & Inclusion ("OGEI") and/or its designee. To participate in informal resolution, the University must:

　　　　i.    Provide the parties with a written notice disclosing: the allegations, the requirements of the informal resolution process including the circumstances under which it precludes the parties from resuming a formal complaint arising from the same allegations, provided, however, that at any time prior to agreeing to a resolution, any party has the right to withdraw from the informal resolution process and resume the grievance process with respect to the formal complaint, and any consequences resulting from participating in the informal resolution process, including the records that will be maintained or could be shared, and

     ii.    Obtain the parties' voluntary, written consent acknowledging their desire to participate in the informal resolution process.

**D. Possible Outcomes:** OGEI and/or its designee may do one or more of the following, as appropriate:

     i.    Identify, develop, and/or support the administration of interim or long-term supportive measures available to the parties.

     ii.    Provide targeted or broad-based educational programs or training.

     iii.    Meet with the parties, discussing the behavior as alleged, providing opportunity for a response, reviewing institutional policies, and/or mediating agreed upon resolutions.

     iv.    Facilitate the development of strategies, plans, and/or other agreements to assure discontinuance of identified conduct, prevention of recurrence/furtherance, and/or avoidance of retaliation.

     v.    If the respondent is an employee, OGEI may notify the respondent's supervisor of the allegations, informal resolution process, outcomes, and/or subsequent expectations.

     vi.    If the respondent is a student, OGEI may notify the Office of Student Conduct and Community Standards and/or other appropriate University employees of the allegations, informal resolution process, outcomes, and/or subsequent expectations.

**E. No Waiver of Rights:** The University may not require as a condition of enrollment or continuing enrollment, or employment or continuing employment, or enjoyment of any other right, waiver of the right to an investigation and adjudication of formal complaints of sexual harassment. The University may not require the parties to participate in an informal resolution process.

**F. Withdrawing Consent:** Where the parties have agreed to pursue informal resolution, neither party nor the University shall be precluded from withdrawing their consent to participate in the informal resolution process and/or pursuing a formal resolution process arising from the same allegations at any time prior to reaching the agreed upon informal resolution.

**G. Deferring Investigation:** In appropriate situations, misconduct investigations may be deferred while parties pursue informal resolution. When an investigation is deferred, the University refrains from taking any action on a case for a designated period of time, during which a party may be given the opportunity to satisfy certain conditions or obligations as a means of avoiding further investigation and/or other University proceedings. In such cases, failure to fulfill informal resolution agreements may result in subsequent formal resolution processes. The University reserves the right to end an informal resolution process if, in its discretion, there is not substantial progress toward resolution.

**H. Confidentiality of Records:** Informal resolution processes shall be conducted confidentially to the extent permitted by law. Informal resolution process may result in the creation of

records and/or other materials subject to institutional record retention policies, as permitted by the Family Education Rights and Privacy Act, or as required by law.

**I. Timeline:** Generally, informal resolution processes shall be concluded within ninety (90) business days of the filing of the formal complaint. Following the conclusion of an informal resolution process, written notice of the outcome and closure of the formal complaint will be provided to the parties within thirty (30) business days.

**VII.** <u>**Formal Complaint Resolution**</u>

**A. About:** The formal resolution process consists of an investigation and a hearing. As used in this Policy, the term "investigation" refers to the process that the University uses to review allegations and gather relevant evidence. Unless a respondent accepts responsibility, at the conclusion of the investigation, a hearing will be held to determine: (1) whether or not conduct in violation of this Policy occurred; and (2) if the conduct occurred, what actions the University will take to respond, remediate, eliminate, and prevent recurrence of the prohibited conduct within the University community, which may include imposing disciplinary or corrective action and/or the provision of remedies to affected parties and/or the University community.

**B. Burden of Proof:** The University has the burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility.

**C. Investigation:**

i. *Gathering of Evidence:* The investigator shall interview individuals involved, witnesses, and any other persons determined to have relevant knowledge of the circumstances and/or deemed necessary for the completion of a thorough and accurate investigation. Investigations of allegations may include review of related physical evidence and/or materials, review of electronic transmissions, records, and/or other documentation, interviews, and other fact-finding activities. Each party shall have an equal opportunity to present witnesses, including fact and expert witnesses, as well as other inculpatory or exculpatory evidence. The University shall not restrict the ability of either party to discuss the allegations under investigation or to gather and present relevant evidence.

Parties interviewed by the investigator shall be invited to provide written statements and/or other relevant documentation for consideration of the investigator. The University will respect determinations made by the complainant(s) and respondent(s) regarding their level of participation in an investigation.

ii. *Consent to Use Certain Records:* The University will not access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the University obtains that party's voluntary, written consent to do so.

iii. *Inspection of Evidence:* Both parties shall have an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the formal complaint, including the evidence upon which the University does not intend to rely on in reaching a determination regarding responsibility and inculpatory or exculpatory evidence whether obtained from a party or other source, so that each party can meaningfully respond to the evidence prior to conclusion of the investigation. The University shall make all such evidence subject to the parties' inspection and review available at any hearing or give each party equal opportunity to refer to such evidence during the hearing, including for purposes of cross-examination.

Prior to the completion of the investigative report, the University shall send to each party and the party's advisor, if any, the evidence subject to inspection and review in an electronic format or a hard copy, and the parties will have at least ten (10) business days to submit a written response, which the investigator will consider prior to completion of the investigative report.

iv. *Cooperation:* University community members are expected to comply with reasonable investigator requests for records, documentation, and/or other materials and to cooperate in the investigatory process, including the timely arrangement of meetings, evidence production, and following of investigator directives. A factual finding and/or appropriate corrective or disciplinary action may be taken against University community members who disrupt, obstruct, and/or otherwise fail to cooperate, in University investigatory processes.

v. *Notice:* The University will provide, to a party whose participation is invited or expected, written notice of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings, with sufficient time for the party to prepare to participate.

vi. *Investigative Report:* The investigative report will be simultaneously distributed to all parties and their advisors, if any, at least ten (10) business days prior to a hearing, in an electronic format or hard copy, for their review and written response. The report will not contain any findings or conclusions, but will instead fairly summarize the relevant evidence and will contain:

    1. A summary of alleged conduct in violation of this Policy, including a description of the impact or effect alleged to have been caused;

    2. A summary of the response to the allegations;

    3. A summary of facts found during the investigation; and

    4. Analysis of the application of this Policy to facts found in the investigation;

vii. *Extensions of Time:* Where parties, witnesses, and/or evidence needed by the investigator are delayed, temporarily unavailable, and/or otherwise withheld, good cause exists for the investigator to extend the timeframe of the investigatory process as necessary to complete a thorough and appropriate

review of the matter.  When an extension is inevitable, the investigator shall notify the parties simultaneously, with written notice of the delay or extension and the reasons for the action.

**D. Hearing:**

i. *Location & Accommodations*: In the absence of an informal resolution or a respondent accepting responsibility, a live hearing shall be conducted to determine responsibility.  Hearings may be conducted with all parties physically present in the same geographic location, or at the University's discretion, any or all parties, witnesses, or other participants may appear at the hearing virtually, with technology enabling participants simultaneously to see and hear each other.  The hearing chair reserves the right to make appropriate accommodations to secure the safety and comfort of all parties and witnesses during a conduct proceeding or reasonable accommodations required under law.  This may include having complainants and respondents in separate rooms, the use of technology to accommodate a virtual hearing, or periodic breaks so parties may speak with their advisors.

ii. *Recordings:* Hearings will be recorded by the University. Panel deliberations will not be recorded. Any record of the hearing will remain the property of the University and be subject to the Family Educational Rights and Privacy Act. Either party may have post-hearing access to the recorded hearing. To maintain confidentiality, parties will be permitted access to inspect and review the recording.  Persons given access to the recording will be required to sign a confidentiality agreement in order to protect the privacy of the information contained in the recording.

iii. *Hearing Panel:*

   1. Hearing Panel Pool: A pool of individuals shall be available to serve as members of the Hearing Panel.  The pool shall consist of individuals who are trained on issues relating to this Policy as well as how to conduct hearings.

   2. Hearing Panel: The hearing panel will consist of three members, one of whom will serve as the hearing chair.  All three members will vote as to responsibility and as to sanctions and remedies, if any.

   3. Conflicts of Interest: The complainant or respondent may challenge participation of any hearing panel member on the grounds of conflict of interest. Challenges must be submitted in writing to the hearing chair within three (3) business days of notice of the proposed panel composition. The challenge must specify reasons the parties believes the challenged member has a conflict of interest.  The Vice President for Equity, Inclusion & Community Impact, or designee, shall determine whether a conflict of interest exists.  If the challenge is granted, the conflicted member shall be replaced by another member from the Hearing Panel pool.

iv.  *Hearing Participants:*

1. <u>Restricted Attendance</u>: Presence at hearings shall be restricted to the parties involved (complainants and respondents) along with their advisors, witnesses, the hearing panel, and appropriate administrative University personnel.  Hearings are closed to the public.

2. <u>Advisors</u>: Advisors may provide guidance to their respective parties, and, except for conducting cross-examination of witnesses, may not play an active role in the hearing. The parties are required to notify the hearing chair three (3) business days prior to the hearing if one or more of their advisors are an attorney.

3. <u>Appointment of an Advisor</u>: If a party does not have an advisor present at the hearing, the University shall provide, without fee or charge, to the party, an advisor of the University's choice, who may be, but is not required to be, an attorney, to conduct cross-examination on behalf of that party.

4. <u>Investigator</u>: The Investigator will be present to answer questions.

5. <u>Participation in Hearing</u>: If either party or a witness does not submit to cross-examination at the hearing, the panel must not rely on any statement of that party or witness in reaching a determination regarding responsibility; provided, however, that the panel cannot draw an inference about the party or witness' testimony or credibility based solely on a party's or witness' absence from the live hearing or refusal to answer cross-examination or other questions.  The parties shall be afforded the same opportunities to have witnesses present for hearings.

6. <u>Witness List Submission</u>:  Three (3) business days prior to the hearing, the parties may submit to the hearing chair a list of witness names they wish to provide testimony at the hearing.  This will help ensure the witnesses receive information on the date and time of the hearing and any necessary links if appearing virtually.

v.  *Hearing Procedures:*

1. <u>Standard of Proof</u>: The standard of proof shall be preponderance of the evidence.  The panel must conclude that it is more likely than not that each alleged violation of the Policy has occurred.

2. <u>Opening Statements</u>:

   a. The hearing chair will open the proceeding with a statement that includes the nature and purpose of the hearing, an overview of the hearing process, and an expectation for decorum during the hearing. The hearing chair may place time limitations on testimony.

    b. The complainant and respondent shall each be entitled to make a ten (10) minute opening statement.  The parties shall confine their presentation to facts relevant to the allegations.

3. <u>Hearing Panel Questions</u>: The hearing chair shall open the floor for direct questions from the hearing panel to the parties.  The hearing panel may coordinate questioning; however, each individual hearing panel member shall retain the right to question both parties and their witnesses.  The hearing panel shall question the complainant and the respondent.  The hearing panel may also request the presence of and question witnesses cited in the investigation report at its discretion. Other than the complainant and respondent, only one witness at a time shall be present in the hearing room.

4. <u>Cross-Examination</u>: Each party's advisor will conduct cross-examination of the other party and of any witnesses.  Cross-examination at the hearing shall be conducted directly, orally, and in real time by the party's advisor and never by a party personally.  During the hearing, only relevant information shall be considered.

5. <u>Relevancy Determinations</u>: The hearing panel shall determine the relevance of evidence and its admissibility.  The hearing panel shall determine the relevance of questions before they are answered and shall explain any decision to exclude a question as not relevant.

6. <u>Prior Sexual History</u>: Questions and evidence about the complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the complainant's prior sexual behavior are offered to prove that someone other than the respondent committed the conduct alleged by the complainant, or if the questions and evidence concern specific incidents of the complainant's prior sexual behavior with respect to the respondent and are offered to prove consent.

7. <u>Closing Statements</u>: The parties will be permitted to make a ten (10) minute oral closing statement.

8. <u>Deliberations</u>: The hearing panel will deliberate privately to determine whether the respondent violated the University's Title IX Policy, and to determine appropriate sanctions, if any, and appropriate remedies, if any.

vi. *Post Hearing Procedures:*

1. <u>Vote</u>: The hearing panel shall seek to reach consensus in adjudicating cases. In the event there is no consensus, a majority vote shall determine the outcome.

2. <u>Written Determination</u>: Within ten (10) business days, the panel will issue its written determination simultaneously to the parties and it will include:

a. Identification of the allegations potentially constituting sexual harassment as defined in this Policy.

b. A description of the procedural steps taken, from the receipt of the formal complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held.

c. Findings of fact supporting the determination.

d. Conclusions regarding the application of the Policy to the facts;

e. A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, any disciplinary sanctions the University imposes on the respondent, and whether remedies designed to restore or preserve equal access to the University's education program or activity will be provided by the University to the complainant; and

f. The University's procedures and permissible bases for the complainant and respondent to appeal.

3. Finality: The determination becomes final either on the date that the University provides the parties with the written determination of the appeal, if an appeal is filed, or if an appeal is not filed, the date on which an appeal would no longer be considered timely.

4. Implementation of Remedies and Sanctions: The Title IX Coordinator is responsible for effective implementation of any remedies and will communicate any applicable sanctions to the appropriate University office for implementation.

5. Records: Records related to the hearing and the determination will be retained by the Division of Equity, Inclusion & Community Impact. A copy of the determination will also be provided to the appropriate University office if applicable.

**X.    Appeals**

**A.  Appeals from Dismissal of Formal Complaint:**

i. *Submission of Appeals:*  A party may appeal a dismissal of a formal complaint within five (5) business days of receipt of the notice of dismissal.  The appeal must be made in writing and state the bases for the appeal.  The written appeal must be sent via email to:

> Vice President for Equity, Inclusion & Community Impact
> University of Cincinnati
> Email: T9appeal@ucmail.uc.edu

ii. *Notification:* Upon receipt of an appeal, the Vice President for Equity, Inclusion & Community Impact and/or designee, will notify both parties of the appeal and

provide a copy of the appealing party's written appeal statement, identify the appeal officer assigned to the matter, provide notice regarding how to object to the appeal officer based on bias and/or conflict of interest, and provide the non-appealing party five (5) business days to respond to the appealing party's statement.

iii. *Appeal Officer:* Upon receipt of an appeal, the Vice President for Equity, Inclusion & Community Impact, and/or designee, will assign an appeal officer who was not involved in the dismissal determination. The University will ensure that the appeal officer complies with the guidelines of this Policy.

iv. *Written Decision*: Unless circumstances warrant additional review, within twenty (20) business days after receipt of all statements from the parties, the appeal officer will issue a written decision describing the result of the appeal and the rationale for the result and provide it simultaneously to the parties.

v. *Finality:* All appeal determinations are final. Notice of the University's appeal determination shall be provided to the parties and appropriate campus entities and/or offices necessary to implement the determination.

**B. Appeals from Hearing Written Determination:**

i. *Basis for Appeal:* An appeal of the determination regarding responsibility may be made by the complainant(s) and/or respondent(s) on one or more of the following bases:

1. Procedural irregularity that affected the outcome of the matter

2. New evidence that was not reasonably available at the time of the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter

3. The Title IX Coordinator, investigator(s), or decision-maker(s) had a conflict of interest or bias for or against complainants or respondents generally or the individual complainant or respondent that affected the outcome of the matter.

4. A sanction is not commensurate with the violation.

ii. *Submission of Appeal:* A party may appeal a hearing written determination of a formal complaint within five (5) business days of receipt of the written determination of responsible or not responsible. The appeal must be made in writing and state the basis and reasoning for the appeal. The written appeal must be sent to:

Vice President for Equity, Inclusion & Community Impact
University of Cincinnati
Email: titleixappeals@uc.edu

iii. *Appeal Panel:* The Vice President for Equity, Inclusion & Community Impact and/or designee, will assign three appeal panel members who were not on the hearing panel that decided the matter.   The University will ensure that the appeal panel members comply with the guidelines of this Policy.

iv. *Notification*: Upon receipt of an appeal, the Vice President for Equity, Inclusion & Community Impact and/or designee, will notify both parties of the appeal and provide a copy of the appealing party's written appeal statement, identify the appeal panel members assigned to the matter, provide notice regarding how to object to members of the appeal panel based on bias and/or conflict of interest, and provide the non-appealing party five (5) business days to respond to the appealing party's statement.

v. *Written Decision*: Unless circumstances warrant additional review, within twenty (20) business days after receipt of all statements from the parties, a written decision describing the result of the appeal and the rationale for the result will be issued and provided simultaneously to the parties.  The appeal panel may:

1. Remand the matter to the investigator and/or hearing panel to correct a procedural irregularity;

2. Remanding the matter to the investigator and/or hearing panel for consideration of whether new information or evidence would materially affect determinations of fact and/or conclusions reached in the hearing; or

3. Remand the matter to be re-investigated by a third party due to the fact that bias or procedural error materially affected determinations of fact and/or conclusions of the hearing;

4. Affirm the findings and conclusions of the hearing panel;

5. Revise any sanctions imposed to be commensurate with the finding of responsibility;

6. Revise any remedies provided to be commensurate with the finding of responsibility; and/or

7. Reverse the findings of the hearing panel as to responsibility, sanctions, and/or remedies, and impose any modified sanctions or provide any modified remedies, as may be appropriate.

vi. *Finality:* All appeal determinations are final.  Notice of the University's appeal determination shall be provided to the parties and appropriate campus entities and/or offices necessary to implement the determination.

## REMEDIES AND SANCTIONS FOLLOWING THE RESOLUTION OF A COMPLAINT

**I.  Remedies**

Remedies will be provided to a complainant, as appropriate, when a determination of responsibility for sexual harassment has been made against the respondent. Remedies must be designed to restore or preserve equal access to the University's education program, activity, or employment, and may include, but are not limited to, referral to counseling and health services, referral to the Employee Assistance Program, transfer, reassignment, housing changes, academic support, climate surveys, training, and other educational programming.

II. **Sanctions**

    **A. Students:** Students found to have engaged in prohibited conduct in violation of this Policy are subject to a range of sanctions which include: educational conferences and/or discussions, reflection papers, educational workshops, service to the University or University community; restrictions on the right of access to campus facilities, events, and participation in student organizations or events; removal from activities, courses, and University housing; and probation, suspension, or dismissal from the University, as set forth in the Student Code of Conduct.

    **B. Employees:** Employees found to have engaged in prohibited conduct in violation of this Policy may be subject to discipline including, but not limited to, educational conferences; educational workshops and/or discussions; service to the University or University community; restrictions on the right of access to campus facilities and University events; removal from activities and University events; and warning, reprimand, counseling, demotion, suspension, or termination as set forth by the University's Human Resources policies and procedures and/or the applicable collective bargaining agreements.

    **C. Volunteers and Third Parties:** Volunteers and third parties, including visitors, guests, program participants, vendors, contractors, subcontractors, or other persons who do business with the University, may be subject to bans from campus, termination of participation in activities or programs, or termination of contractual arrangements with the University.

III. **Constitutional Rights**

The University does not infringe upon rights protected by the First Amendment of the Constitution. The University may sanction acts in violation of this Policy that do not qualify for First Amendment protection.

## PROHIBITION AGAINST RETALIATION

University policy, state law, and federal law prohibit retaliation against an individual for reporting in good faith complaints of sexual harassment, for the individual's good faith participation in an investigation, or for otherwise asserting protected rights in good faith. Retaliation is a serious violation that can subject the offender to sanctions independent of the merits of the complaint of sexual harassment.

Neither the University nor any other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX or this Policy or

because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this Policy. Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sexual harassment, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by Title IX or this policy, constitute retaliation. Complaints alleging retaliation may be filed according to the grievance procedures for sexual harassment provided in this Policy.

The exercise of rights protected under the First Amendment does not constitute prohibited retaliation. Charging an individual with a code of conduct violation for making a materially false statement in bad faith in the course of a grievance proceeding does not constitute retaliation provided, however, that a determination regarding responsibility, alone, is not sufficient to conclude that any party made a materially false statement in bad faith.

## TRAINING

The University will ensure that Title IX Coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process, will receive training on the definition of sexual harassment; the scope of the University's education program or activity; how to conduct an investigation and grievance process including hearings, appeals, and informal resolution processes, as applicable; and, how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias.

The University will ensure that hearing panel members receive training on any technology to be used at a live hearing and on issues of relevance of questions and evidence, including when questions and evidence about the complainant's sexual predisposition or prior sexual behavior are not relevant.

The University will ensure that investigators receive training on issues of relevance to create an investigative report that fairly summarizes relevant evidence.

Any materials used to train Title IX Coordinators, investigators, grievance panel members, appeal panel members, and any person who facilitates an informal resolution process, will not rely on sex stereotypes and will promote impartial investigations and adjudications of formal complaints of sexual harassment.

All training materials will be made publicly available on the University's website. All training materials must be retained for a period of seven years.

## EDUCATIONAL AWARENESS AND PREVENTION

The University is committed to preventing and eliminating sexual harassment. To that end, the University's Division of Equity, Inclusion & Community Impact, Human Resources, and the Division of Student Affairs have developed educational awareness programs to inform staff, faculty, and students about issues such as diversity and inclusion, equal opportunity, understanding implicit bias, respectful workplace, teamwork communications, discrimination, sex discrimination, sexual harassment, gender-based violence, dating violence, domestic violence, and intimate partner violence.

The University will continue its ongoing mission of training and informing students, faculty, and staff about identifying and preventing discrimination, harassment, and retaliation, as well as advising members of the University community of their rights and responsibilities under this Policy.

## RECORDS

The University will maintain for a period of at least seven years, the following records:

- Each sexual harassment investigation including any determination regarding responsibility and any audio or audiovisual recording or transcript, any disciplinary sanctions imposed on the respondent, and any remedies provided to the complainant designed to restore or preserve equal access to the University's education program or activity;

- Any appeal and the result therefrom;

- Any informal resolution and the result therefrom;

- For each response to a report of sexual harassment, records of any actions, including any supportive measures, taken in response to a report or formal complaint of sexual harassment. In each instance, the University must document the basis for its conclusion that its response was not deliberately indifferent, and document that it has taken measures designed to restore or preserve equal access to the University's education program or activity; and

- If the University does not provide a complainant with supportive measures, then the University must document the reasons why such a response was not clearly unreasonable in light of the known circumstances.

The documentation of certain bases or measures does not limit the University in the future from providing additional explanations or detailing additional measures taken.