IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN NOAKES | Case No. |
| Plaintiff, | Judge: |
| v. | |
| THE UNIVERSITY OF CINCINNATI, et al. | AFFIDAVIT OF HARRY B. PLOTNICK |
| Defendants | |

Harry B. Plotnick, being duly sworn on oath, does depose and state as follows:

1. I am a forensic toxicologist. A copy of my curriculum vitae is appended to this affidavit. I have been retained by Plaintiff in this case to provide opinion testimony. I am submitting this affidavit in support of Plaintiff's Motion for a Preliminary Injunction.

2. I was awarded the degree of Doctor of Philosophy (Ph.D) in toxicology from the University of Cincinnati College of Medicine in 1974. I received a bachelor of science degree in pharmacy (1967) and a master of science degree in pharmaceutical chemistry (1969) from the University of Cincinnati. In addition, I earned a law degree (J.D.) from Northern Kentucky University in 1977. From 1974 to 1983, I was employed as a toxicologist at the National Institute for Occupational Safety and Health (NIOSH) in Cincinnati. During my tenure at NIOSH, I performed research involving the analysis, distribution, metabolism, and excretion of industrial chemicals.

3. For more than forty years, I have been engaged both in the practice of law and as a consultant in forensic toxicology. I have testified as an expert/opinion witness in the courts of a number of

1

states with respect to the effects of alcohol, alone or in combination with drugs of abuse and the prediction of the levels of alcohol in blood and breath after the ingestion of alcoholic beverages. I have also evaluated and interpreted the results of urine drug testing both for employers and employees and for probationers in probation violation proceedings. My clients include criminal defense lawyers, prosecuting attorneys, attorneys representing both plaintiffs and defendants in personal injury litigation, and insurance companies. My hourly rate as a toxicologist is $300/hour.

4. I have been involved in a significant number of investigations of drug and alcohol induced sexual assault on behalf of both prosecutors and defense counsel. I am familiar with best practices for the investigation of allegations of drug and alcohol facilitated sexual assault, having received training on ethanol (alcohol) facilitated sexual assaults in October, 2011, October, 2013, and gabapentin associated sexual assaults in 2018.

5. I have reviewed the March 23, 2023 correspondence from the University of Cincinnati to Plaintiff. I understand that this letter is an official correspondence regarding the outcome of a formal hearing held on Monday, February 20, 2023. I further understand that the Complainant submitted a formal Complaint on July 26, 2022, alleging that Plaintiff engaged in behaviors that violated the University of Cincinnati's Title IX Sexual Harassment Policy.

6. On page 8 of the letter, the hearing panel indicates that it considered information obtained from a website to estimate the blood alcohol level of the Complainant. The information on this website is not accurate or reliable. The conclusion by the Hearing Panel about the likely level of intoxication of the Complainant, and the possible effects of alcohol on her reflexes, speech, and mental capacity was not based on sufficient facts or data. Nor were they the product of reliable principles and methods. Typically, experts in the field of forensic toxicology consider many factors that impact how an individual is affected by alcohol consumption, including time of

consumption, volume and percentage of alcohol by volume in the beverages, body weight, gender, time(s) of consumption of alcoholic beverages, food, and intake of other drugs that might also have central nervous system depressant effects. Many of the factors considered by the Hearing Panel when computing the predicted blood alcohol range for the Complainant were speculative. One of the most important factors used in their unreliable computation was the assumption that the Complainant consumed eight "standard drinks in a span of roughly theee hours." They also assume that the Complainant weighed 150 pounds, a fact that does not appear in the factual findings. The Hearing Panel used this information, even while acknowledging that "Calculating an individual's blood alcohol content (BAC) is an imprecise exercise, and measurements based on limited inputs like gender, weight, number of drinks, and timespan produce only rough approximations." Their imprecise computation does not result in a rough approximation. It results in an entirely unreliable estimation of the blood alcohol concentration and does not appear to have included consideration of the rate of metabolism and excretion of alcohol in that computation. Notwithstanding the lack of reliable data upon which to calculate an individual's blood alcohol concentration, the Hearing Panel concludes that "… however, looking at the level of intoxication is still helpful for evaluating evidence of Complainant's capacity to consent in this matter." The use of estimates and speculation in computing a predicted blood alcohol concentration does not meet the requisite evidentiary standard of a reasonable degree of scientific certainty or probability applicable to legal proceedings in the United States.

7. I understand that Plaintiff requested that the investigator in this case obtain the Complainant's medical records from the SANE examination. I also understand that the Hearing Panel permitted the Complainant to testify about the results of her SANE examination, even though the investigator was not provided with the records of the examination. The failure of the

3

investigator to obtain the Complainant's medical records from the SANE examination, combined with permitting the Complainant to testify about the results of her SANE examination, significantly prejudiced Plaintiff in his ability to adequately and meaningfully defend himself during the hearing.

8. Medical records associated with a SANE examination are likely to provide highly relevant evidence that is necessary for Plaintiff to prepare an adequate defense. It is a significant deviation from best practices to conduct a review of allegations of sexual assault without seeking to obtain and review these records.

9. I understand that the Complainant was permitted to testify at the hearing that the results of a urine test "came back with no drugs or even alcohol in my system, because it had been too long of a period of time." This is a misleading statement. In fact, some drugs implicated in drug facilitated sexual assaults may be found in urine samples up to 72 hours after ingestion. Urine samples are commonly obtained as part of a SANE examination where there are allegations of drug and alcohol facilitated sexual assault. It appears that urine test results were also not submitted for consideration by the Hearing Panel.

10. I acknowledge that UC does not have subpoena power in Title IX hearings and, as a result, cannot compel the production of the records. However, nothing prohibited the investigator from requesting the records from the Complainant. The failure of the complainant to produce evidence in her custody and control that would have supported her claims limits the ability of a fact finding panel to evaluate those claims.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of April 2023.

*/s/ Harry B. Plotnick*

Harry B. Plotnick, Ph.D, J.D.

4