COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

ENTERED AUG 20 2021

| | |
|---|---|
| JOHN NOAKES OBO JOHN DOE, PLAINTIFF<br><br>-VS-<br><br>UNIVERSITY OF CINCINNATI, DEFENDANT. | CASE NO. A2101546<br><br>JUDGE JENNIFER L. BRANCH<br><br><u>DECISION GRANTING MOTION FOR PRELIMINARY INJUNCTION</u> |

Plaintiff, father and guardian of John Doe, a student with learning disabilities, who attends the University of Cincinnati's Transition & Access Program ("TAP"), seeks a preliminary injunction prohibiting the University from imposing all disciplinary sanctions the University imposed against John Doe on April 29, 2021, after finding him responsible for sexual misconduct in the laundry room of a housing facility on September 24, 2019. The sanctions imposed include loss of John Doe's housing privileges and termination of Plaintiff's housing contract ("collectively referred to as the "housing ban"); being prohibited from entering any and all facilities owned, controlled, operated, or leased by the University ("facilities ban"); an order prohibiting John Doe from having any contact with Jane Doe, the woman to whom Doe's sexual misconducted was directed ("no contact order"); and placement on disciplinary probation for the remainder of John Doe's career at the University. (Jt. Ex. 41.) Plaintiff argues that he is entitled to a declaratory judgment declaring the University violated its prompt investigation policies when finding John Doe responsible for sexual misconduct 583 days after Jane Doe filed her complaint, and therefore is entitled to an injunction enjoining the University from implementing the sanctions which are to go into effect in August 2021 when the school year begins.

Defendant University of Cincinnati opposes the injunction arguing that the University did not violate its policies. The University argues that it followed the timelines in its Title IX Grievance Procedure for Students and Third Parties ("Title IX Policy") and its Student Code of



Conduct ("SCOC"). The University also argues that Plaintiff cannot bring a declaratory judgment action against the University for alleged violations of the timelines in the University's investigation policies. The University also moves to dismiss the Complaint.[1]

The Court finds that based on the record submitted at this preliminary stage of the case, the Plaintiff has shown by clear and convincing evidence that it has established the elements entitling him to a preliminary injunction and is entitled to an order prohibiting the University from imposing the housing ban and the facilities ban against John Doe because to do so will cause John Doe irreparable harm while he is a student. The other sanctions, prohibiting John Doe from contacting Jane Roe and placing John Doe on disciplinary probation throughout his academic career do not cause irreparable harm and are not enjoined.

I.  **FACTS**

   **A. John Doe's Participation in the TAP program**

John Doe has been a student at the University of Cincinnati since August 2019. He has a significant learning disability and is considered disabled. John Doe's disability makes it difficult for him to remember and recall events because part of his disability includes both short-term memory and long-term memory deficits. (Noakes Aff. ¶ 2). He is enrolled in the University's TAP program, which addresses John Doe's specialized needs and helps him transition from high school through adulthood. John Doe's goal in attending TAP is to establish greater independence and achieve his personal, social, and professional goals. (Noakes Aff. ¶¶ 2-3). John Doe attends classes and activities on the University campus and lives with other TAP students in a University residence facility when school is in session. John Doe is capable of learning and continuing his education past his high school graduation. (Noakes Aff. ¶ 2).

---

[1] The Court denies the motion to dismiss and will issue a separate entry.

2

However, he is incapable of living independently and he relies on a network of faculty, staff, advisors and student mentors to guide him through the TAP experiences. (Noakes Aff. ¶ 5; Noakes Depo. 91-92). The housing component of the TAP program is integral to John Doe's education. (Noakes Aff. ¶¶ 4-5). The University's removal of John Doe from housing will mean that John Doe can no longer participate in TAP. (Noakes Aff. ¶ 5; Noakes Depo. 91-92, 115-116).

The University of Cincinnati offers a full-time, four-year program called the Transition and Access Program, referred to as "TAP." TAP is designed for students 18-26 years old with mild to moderate intellectual or developmental disabilities who have completed high school. (Goings Aff. ¶ 2). TAP students integrate with the University student population and upon completion earn a certificate meant to attract employment opportunities. (Goings Aff. ¶ 2). The TAP curriculum focuses on the whole person and helps develop vocational skills, personal goals, social capital, healthy living skills, and self-advocacy. (Goings Aff. ¶ 3). TAP involves an inclusive living-learning opportunity that builds career skills, academic achievement, personal responsibility and social networks for its students. (Noakes Aff. ¶¶ 3-4). TAP students are subject to the University's Title IX policy and the Student Code of Conduct. (Guardia Aff. ¶ 4).

### B. The Complaint of Sexual Misconduct and Investigation

On September 24, 2019, Jane Roe filed a complaint[2] regarding sexual misconduct she observed by John Doe in the laundry room of the residence hall where they both lived. The TAP students lived in a residential building with non-TAP students. Jane Roe was not a TAP student. Jane Roe alleged John Doe followed her around the laundry room and touched his genitals over

---

[2] Jane Roe submitted a Title IX incident report on September 24, 2019. The report is considered a complaint. (Shaw Depo. 22-23; Olovoson Depo. 67).

3

his clothing while looking at her. She felt uncomfortable and experienced a hostile environment. (Investigation Report, Ex. A to Complaint; Complaint, Appendix 2 to Complaint). An investigator was assigned the next day and contacted John Doe on October 1, 2019. The investigator met with John Doe and his father, Plaintiff Noakes on October 3, 2019, but did not take John Doe's statement. (Noakes Depo 21-23; Miller Depo. 77). John Doe was asked to make a statement a year later. The investigator contacted John Doe on September 9, 2020 to discuss the complaint. (Jt. Ex. 26). On September 22, 2020, John Doe provided a written statement and talked to the investigator by phone. (Jt. Ex. 28; Shaw Depo. 68). John Doe did not recall the incident and did not remember Jane Roe or what she looked like. (Jt. Ex. 28). He explained this was due to his memory limitations.

The investigation report was completed on January 22, 2021 and provided to Jane Roe and John Doe to review. (Jt. Ex. 1 and 31). Neither objected to the report and it was finalized on February 1, 2021 which is when the investigation ended and the adjudication stage began. (Shaw Depo. 84). The adjudication stage was completed on April 29, 2021 when the Dean of Students rejected John Doe's appeal and issued the sanctions. (Jt. Ex. 41). The Dean's decision was final. (*Id.*). From the filing of the complaint on September 24, 2019 to the final decision issuing sanctions on April 29, 2021, 583 days had elapsed.

C.   **The University Did Not follow its Policies**

The University's Student Code of Conduct prohibits sexual harassment. A student who alleges another student engaged in sexual misconduct may file a complaint with the Title IX coordinator. (Jt. Ex. 1,[3] Title IX Policy p. 11 and SCOC p. 23). Then an investigation is

---

[3] The University adopted a UC Title IX Grievance Procedure for Students and Third Parties ("Title IX Policy") is Appendix 1 to Exhibit A to the Complaint and which is marked as Jt. Ex. 1. The UC Student Code of Conduct ("SCOC") is codified at O.A.C. 3361:40-5-05 and is Appendix 2 to Exhibit A to the Complaint and marked as Jt. Ex. 1.

4

conducted, and the claim adjudicated. (SCOC p. 23). The object of all investigations and adjudications is that they be *prompt*, reliable, and impartial. (Jt. Ex. 1, Title IX Policy p. 11). "Complaints *will generally be resolved within 60 days of the filing of a complaint*; however, in some circumstances, complaints may take longer to resolved (e.g., if filed during the university breaks). If there is a need to extend the timelines set forth below, the Title IX Coordinator will make the determination and notify the parties." (*Id.* p. 11) (emphasis added). The University "strongly encourages" students to file complaints as soon as reasonably possible to "allow for prompt resolution of inappropriate conduct." (*Id.*) "The purpose of the time frame is to ensure that the passage of time does not limit the University's ability to conduct an investigation or locate witnesses, as memory lapses and other time-sensitive factors may impair an investigation." (*Id.*) Some of the additional timeframes include:

- Within *seven days* of filing the complaint the Title IX investigator[4] will "*generally* initiate a meeting with the respondent,*" giving the respondent an opportunity to discuss the allegations. (Jt. Ex. 1, Title IX Policy p. 11).
- Within *fourteen days* of the filing of the complaint the investigator will begin interviewing witnesses. (Jt. Ex. 1, Title IX Policy pp. 11-12).
- Within *five weeks* of filing the complaint, the investigator will provide the final report to the adjudicators. (Jt. Ex. 1, Title IX Policy p. 12).
- Within *twenty five calendar days* of receipt of the complaint, the Title IX Coordinator or designed will *generally* provide an investigation report to the Student Conduct and Community Standards. (Jt. Ex. 1, SCOC p. 5).

Plaintiff has presented clear and convincing evidence of the following facts. Jane Roe filed her complaint of sexual harassment on September 24, 2019. On October 3, 2019, an investigator met with John Doe and his father to discuss the complaint allegations. But it was not until a year later that the investigator obtained a statement from John Doe on September 22, 2020, at which time John Doe had no memory of the incident or Jane Roe. While the University

---

[4] This person is a Deputy Title IX Coordinator or his/her designee.

5

met their policy of meeting with the respondent within seven days of the complaint, the interview of John Doe did not take place until a year later. More importantly, the investigation was not finalized until February 1, 2021. From the filing of the complaint on September 24, 2019, to the submission of the final investigation report, 496 days had elapsed. This delay vastly exceeded the five week deadline the Title IX Policy required the investigator to submit the final report to the adjudicators and the twenty five day general deadline in the Student Code of Conduct. The Title IX Coordinator did not make a determination to extend the deadline, nor did the Coordinator notify the parties of the need or of the extension, in violation of the Title IX Policy. Furthermore, the entire process through the final appeal took 583 days, which violated the University's stated goal of conducting prompt investigations. The University stated that its goal of all investigations and adjudications is to be prompt because the passage of time limits the University's ability to conduct an investigation as "memory lapses and other time-sensitive factors may impair an investigation." In his case, John Doe's disability, which includes short-term and long-term memory impairments, especially harmed John Doe because he was unable to remember the incident or Jane Doe, and thus was unable to offer any defense to the allegations.

## II. LEGAL ANALYSIS

The purpose of a preliminary injunctive relief is to preserve the status quo. *Acordia of Ohio, LLC v. Fishel,* 1st Dist. No. C–100071, 2010–Ohio–6235, ¶ 9. A preliminary injunction may be issued if the moving party shows by clear and convincing evidence that there is:

> (1) a substantial likelihood that the party will prevail on the merits, (2) the party will suffer irreparable injury or harm if the requested injunctive relief is denied, (3) no unjustifiable harm to third parties will occur if the injunctive relief is granted, and (4) the injunctive relief requested will serve the public interest. *Cincinnati v. Harrison,* 1st Dist. No. C–090702, 2010–Ohio–3430, ¶ 8, citing *The Proctor & Gamble Co. v. Stoneham,* 140 Ohio App.3d 260, 267, 747 N.E.2d 268 (1st Dist. 2000). A court must

6

balance all four factors in determining whether to grant or deny injunctive relief, and no one factor is determinative. *Toledo Police Patrolman's Assn., Local 10, IUPA, AFL–CIO–CLC, v. Toledo,* 127 Ohio App.3d 450, 469, 713 N.E.2d 78 (6th Dist. 1998).

*Brookville Equip. Corp. v. Cincinnati*, 2012-Ohio-3648, ¶ 11 (1st Dist. 2012).

### A. Plaintiff Has Established a Likelihood He Will Prevail on the Merits

Plaintiff brings his claims under the Declaratory Judgment Act, R.C. 2721.02 seeking a declaration that when the University violated its rules, both its Title IX Sexual Misconduct investigation procedures ("Title IX Policy") and its Student Code of Conduct non-academic misconduct investigation procedures ("SCOC"), it impaired the rights of John Doe to have a prompt investigation and adjudication process. Based on the record presented, Plaintiff has shown by clear and convincing evidence that he is entitled to a declaration from this Court that the University violated both its Title IX and SCOC policies when the investigator did not submit the investigation report to the adjudicators within five weeks of Jane Roe filing her complaint on September 24, 2019 in violation of the University's SCOC; when the Title IX investigation report was not finalized within 25 days from the date Jane Roe filed her complaint as required by the Title IX Rules; and when the investigation and adjudication processes were not promptly completed or completed within the general 60 day timeframe. The University's violations of its policies impaired John Doe's rights because as a student with a memory impairment, he was unable to provide a defense to the charges.

### 1. The Declaratory Judgment Act is Proper Basis for Stating a Claim

Ohio's Declaratory Judgment Act, R.C. 2721.02 provides "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed." R.C. 2721.03 provides "any person . . . whose rights, status, or other legal relations are affected by a

7

rule as defined in section 119.01 of the Revised Code[5] . . . may have determined any question of construction or validity arising under the . . . rule . . . and obtain a declaration of rights, status, or other legal relations under it." In order to establish a claim under the declaratory judgment act, the plaintiff must show "(1) the action is within the spirit of the Declaratory Judgments Act; (2) a real controversy between adverse parties exists which is justiciable in character; and (3) speedy relief is necessary to the preservation of rights which may be otherwise impaired or lost." *State v. Stewart*, No. 98-CA-116, 1999 WL 55718, at *2 (2nd Dist. Feb. 5, 1999) (citing *Gray v. Willey Freightways, Inc.* (1993), 89 Ohio App.3d 355, 362, 624 N.E.2d 755).

Plaintiff has presented evidence that this case is within the spirit of the Declaratory Judgments Act because Plaintiff is seeking a declaration of his rights as a student who was investigated and sanctioned for violating the University's SOCS and Title IX anti-sexual harassment policy. The parties briefing and the evidence submitted show there is a real controversy between parties which is justiciable in character. Plaintiff claims the University failed to comply with its investigatory and adjudication policies. The University argues that it did comply with its policies because the policies do no create concrete deadlines. Plaintiff also claims the University's noncompliance with its policies violated John Doe's rights under the Title IX and SCOC polices. The University argues the policies do not impute rights to John Doe. Finally, John Doe argues that the delays in the investigation and adjudications and impaired his ability to continue in TAP. The University disputes this and claims John Doe can successfully complete TAP regardless of the housing ban.

This controversy is justiciable in character because there is no judicial appeal of the disciplinary sanction the University imposed on John Doe and the controversy – whether UC

---

[5] The Student Code of Conduct is an administrative rule, promulgated at O.A.C. 3361:40-5-05. In their briefing, the parties treat both the SCOC and the Title IX policies as rules.

8

violated its investigation and adjudication policies and whether such violations impacted John Doe's rights – can be determined by a court. To be judiciable, requires there be an actual controversy or a genuine dispute between adverse parties. *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas,* 74 Ohio St.3d 536, 542, 660 N.E.2d 458 (1996). Thus, a justiciable controversy exists for purposes of a declaratory-judgment action when there is a genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Waldman v. Pitcher,* 2016-Ohio-5909, ¶ 21, 70 N.E.3d 1025, 1030. *See Burger Brewing Co. v. Liquor Control Comm.,* 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973); *see also Mallory,* 1st Dist. Hamilton No. C–110563, 2012-Ohio-2861, 2012 WL 2409677, at ¶ 10. Such a dispute is evidenced in this case. Given the delays in the investigation and adjudication process and the effect of the sanctions the University imposed banning John Doe from living in housing and from all University facilities, John Doe seeks a ruling whether his right to participate in the TAP program would be impaired or lost if he could not live in student housing as part of the integrated TAP program. The program is designed to teach more than academics, including how to live independently in a community.

Finally, speedy relief is necessary to preserve the rights of the parties because the housing ban and the access to facilities ban, if implemented, would significantly affect John Doe's ability to utilize and learn from the TAP program. and tries to undo the facilities ban in affidavits of officials. The sanctions imposed by the Dean of Students states:

> "Your housing contract has been terminated, and you are no longer eligible to live in any facility owned, controlled, operated, or leased by the University of Cincinnati for the dates listed above. You are **also prohibited from entering any and all facilities** owned, controlled, operated or leased by the University of Cincinnati during this period. Should you be discovered in any Housing facility during this time, you will be considered trespassing and **subject to arrest.**"

9

(Jt. Ex. 41)(emphasis added). Yet, in his affidavit the Dean states "If John Doe has a need to attend a program or activity that is located within University housing while has sanctions is in effect, he may contact the Office of Student Conduct and Community Standards 48 hours prior to the event to **seek permission** to attend." (Guardia Aff. ¶ 9) (emphasis added) (the Court notes permission is not guaranteed). Dean Guardia adds that "John Doe is permitted to utilize University dining serves that are located in buildings where University housing is also located." (Guardia Aff. ¶ 10). The director of TAP, Jan Goings, testified that John Doe "will have access to all coursework, internships, programs, activities, and campus life outside of University housing." (Goings Aff. ¶ 11). This testimony from Dean Guardia and Director Goings do not change the sanctions imposed by Dean Guardia. By attempting to minimize the sanctions in affidavits, these University officials underscore the significance the facility and housing bans will have on John Doe's participation in TAP.

Plaintiff has established a likelihood of success on each element of a declaratory judgment action and thus has met its burden on the first prong of establishing the need for preliminary injunctive relief.

### 2. The Court Has Proper Jurisdiction

The University makes several arguments that this case is not properly before the Court because the Court lacks jurisdiction. Each of these arguments will be addressed in turn.

The University argues that Plaintiff does not have standing to bring this claim. "To succeed in establishing standing, plaintiffs must show that they suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief. . . . These three factors—injury, causation, and redressability—constitute 'the irreducible constitutional minimum of standing.'" *Moore v. Middletown*, 2012-Ohio-3897, ¶

22, 133 Ohio St. 3d 55, 60, 975 N.E.2d 977, 982 (citations omitted). Plaintiff John Noakes, father of John Doe, brings this case on behalf of his son. John Doe has suffered an injury caused by the University, that is, sanctions banning John Doe from housing and other facilities on campus. This injury is likely to be redressed by an injunction enjoining the sanctions. The sanctions occurred because John Doe was found responsible for violating the University's sexual misconduct policy, but because the University's noncompliance with its investigation and adjudication timelines were so far outside the timelines, the delay caused John Doe, who has memory impairments, to be unable to offer a defense to the allegations. Therefore, Plaintiff has standing to bring this declaratory judgment action.

The University argues that neither the Declaratory Judgment Act, nor the University's policies create a private right of action giving Plaintiff the right to sue. However, this argument is misplaced. The University cites no case where a party bringing a declaratory judgment was unable to do so on the basis the Declaratory Judgment Act provided no private right action. While the University's policies do not create a private right of action to sue to enforce the policies, the Declaratory Judgment Act provides that mechanism. Plaintiff is entitled to an injunction if it shows a likelihood of success on the merits of its underlying claim. In this case, the underlying claim is a declaratory judgment action. "Ohio's Declaratory Judgment Act, R.C. Chapter 2721, allows courts to declare the rights or status of parties that arise in particular circumstances, such as under a contract or law, as well as the legal relations between parties." *State v. City of Cincinnati Citizen Complaint Auth.*, 2019-Ohio-5349, ¶ 23, 139 N.E.3d 947, 954 (1st Dist. 2019) (holding that when the State filed a complaint for injunctive relief and failed to state a substantive claim in the complaint, the Court construed the underlying claim as one for declaratory relief). Furthermore, Plaintiff points out that in similar litigation against The Ohio

State University, the attorneys for The Ohio State University, the Ohio Attorney General, argued that a proper mechanism for challenging a public university's noncompliance with its policies is to file a declaratory judgment action. *State ex rel. John Doe v. The Ohio State University,* Ohio Supreme Court No. 2019-0713.

Finally, the University argued, before the Complaint was amended, that the Plaintiff's request for attorney fees and costs divested this Court of jurisdiction because only the Ohio Court of Claims could hear monetary claims against the University. Plaintiff amended his complaint to remove the request for attorney fees which cured the problem the University identified. As for costs, the Declaratory Judgment Act allows for the award of court costs. R.C. 2721.11.

The Court finds that this action seeking a declaratory judgment is properly plead and the Court has jurisdiction to hear the case. Furthermore, Plaintiff has established that he has a likelihood of success on the merits of his declaratory judgment claim. John Doe, as a disabled student with short-term and long-term memory impairments, had a right, pursuant to the University's policies, to a prompt investigation and adjudication process of his alleged sexual misconduct. John Doe's rights were impaired by the University's 496 day investigation process and its 583 day adjudication process. Given the likelihood of success on his declaratory judgment claim, John Doe has met the first factor for issuing a preliminary injunction.

**B. Plaintiff Has Established He Will Suffer Irreparable Harm Without Relief**

Plaintiff has presented sufficient evidence to show, absent an injunction, John Doe will suffer irreparable harm. While the University argues the John Doe can successfully complete TAP and obtain his certificate without residing in the residence hall his last two years of the program, TAP's director testified that TAP students typically live in University residence halls

with other University students. (Goings Aff. ¶ 4). Director Goings also testified that the TAP curriculum focuses "on the whole person and helps develop vocational skills, personal goals, social capital, healthy living skills, and self-advocacy." (Goings Aff. ¶ 3). Plaintiff, John Doe's father, testified that banning his son from housing will effectively mean his son is unable to participate in the program. (Noakes Aff. ¶ 4). He testified the housing ban would create a significant obstacle to his son being able to participate in all facets of the TAP program experience." (Noakes Depo. 115-116). The program immerses the students in all aspects of the University community, including experiencing on-campus housing and activities, living in the dorm, engaging in the dining halls, and interacting with other citizens and students. (Noakes Depo. 91-92). Being enrolled in TAP, without the housing component, would make the program useless to John Doe because he is incapable of living on his own off campus. (*Id.*)

In addition to the facts causing irreparable harm to John Doe, courts have held that being disciplined for a Title IX violation, by itself, constitutes irreparable harm because it causes harm to the student's reputation. *Doe v. Cummins*, 662 F. App'x 437, 445 (6th Cir. 2106). For these reasons, Plaintiff has presented sufficient evidence that absent an injunction, John Doe will suffer irreparable harm.

### C. No Third Party Will Be Harmed If Relief Is Granted and Injunctive Relief Will Serve the Public Interest

Plaintiff is seeking a declaration of John Doe's rights based on the University's noncompliance with its investigation and adjudication rules. Seeking to enforce rights because the University did not comply with its own policies cannot cause harm to third parties or the public interest. *See N. Cheyenne Tribe v. Hodel*, 851 F. 2d 1152, 1157 (9th Cir. 1988).

An injunction in this case prohibiting the University from imposing the housing and facility bans against John Doe pending a final verdict in this case does not prohibit the University

13

form enforcing its sexual misconduct policies against others. Jane Roe is not harmed by the injunction because the Court is allowing the sanction of no contact with Jane Roe to remain in place. Likewise, the probation sanction is not enjoined, so if John Doe were to violate the sexual misconduct in the future, the University is able to follow its Title IX and SCOC policies.

Finally, it must be noted that the delay in the investigation and adjudication caused a two year delay in imposing any sanction. The University took almost two years to ban John Doe from student housing, which means, he lived in the residence hall after the complaint was filed on September 24, 2019 for the remaining of that school year and for the following school year. No further complaints were filed or investigations conducted. Additionally, the University, on December 3, 2019 told John Doe that if he completed a training on sexual harassment it "will likely result in the official closing of your case in our office." (Jt. Ex. 11). John Doe completed the training. During the two years since the incident giving rise to this case, there is no evidence that John Doe presented a risk to any other student at any time. Therefore, on balance, the Court finds that no third party will be harmed by the injunction and the public interest will be served by the injunction.

**IT IS HEREBY ORDERED:**

1. The University of Cincinnati is preliminarily enjoined from imposing sanctions against John Doe that prohibit him from living in or being in any facility owned, controlled, operated, or leased by the University through August 1, 2023 while John Doe is enrolled as a student at the University. The University is prohibited from terminating Plaintiff's housing contract as a sanction against John Doe through August 1, 2023 while he is enrolled as a student at the University.

2. The University of Cincinnati is preliminarily enjoined from imposing sanctions against John Doe that prohibit him from entering any and all facilities owned, controlled, operated, or leased by the University through August 1, 2023 while John Doe is enrolled as a student at the University.

Jennifer L. Branch, Judge
Hamilton County Court of Common Pleas

Date: 8/20/21

15