## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **JOHN NOAKES,** | : | **Case No. 1:23-cv-00284** |
| | : | |
| **Plaintiff,** | : | **Judge Michael R. Barrett** |
| | : | |
| v. | : | |
| | : | |
| **THE UNIVERSITY OF CINCINNATI,** *et al.*, | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

### DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), Defendants University of Cincinnati ("UC"),[1] Alecia Trammer ("Trammer"), Adrienne Lyles ("Lyles"), Bleuzette Marshall ("Marshall"), and Ashleigh Wade ("Wade," and together with Trammer, Lyles, and Marshall, the "Individual Defendants") move this Court to dismiss Plaintiff John Noakes' ("Plaintiff") Complaint (the "Complaint") in its entirety. As explained in the Memorandum in Support, this Court lacks personal and subject matter jurisdiction over Counts II, III, and IV of the Complaint. Further, all counts of the Complaint fail to state a claim upon which relief can be granted.

Respectfully submitted,

*/s/ Dominick S. Gerace*
Dominick S. Gerace (0082823)
Jada M. Colon (0099048)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Telephone: (513) 381-2838
Fax: (513) 381-0205
dgerace@taftlaw.com
jcolon@taftlaw.com

*Attorneys for Defendants*

---

[1] Plaintiff incorrectly named UC as "The University of Cincinnati." For purposes of this motion, and without waiving any defenses, "UC" refers to the correct name, "University of Cincinnati."

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **JOHN NOAKES,** | **:** | **Case No. 1:23-cv-00284** |
| | **:** | |
| **Plaintiff,** | **:** | **Judge Michael R. Barrett** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **THE UNIVERSITY OF CINCINNATI,** *et al.*, | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

<u>**COMBINED TABLE OF CONTENTS AND SUMMARY**</u>
<u>**PURSUANT TO S.D. OHIO CIV. R. 7.2(a)(3)**</u>

**TABLE OF AUTHORITIES** …………………………………………………….. v

**MEMORANDUM IN SUPPORT** …………………………………………………... 1

**FACTS** ………………………………………………………………………….. 2

**ARGUMENT** ……………………………………………………………………… 4

**I.      Legal Standard.** ………………………………………………………… 4

**II.     Counts II, III, and IV Must Be Dismissed Because the Court Lacks Subject Matter Jurisdiction Under the Eleventh Amended and Personal Jurisdiction Under the Common-Law Doctrine of Sovereign Immunity.** ……………………………… 6

      **A.      Count II is Barred under the Eleventh Amendment and the Common-Law Doctrine of Sovereign Immunity.** ………………………………………... 8

Plaintiff's procedural due process claim in Count II is barred by the Eleventh Amendment and the common-law doctrine of sovereign immunity because it does not qualify for the exception under *Ex parte Young*, 209 U.S. 123 (1908). Plaintiff neither seeks prospective relief for an ongoing violation of federal law nor pleads facts allowing the Court to draw a reasonable inference that the Individual Defendants can provide the relief requested or played a role in causing the alleged harm. *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 514 (6th Cir. 2021); *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012); *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 653 (S.D. Ohio 2016).

          **1.      Plaintiff does not seek prospective relief for ongoing violations of federal law.** ………………………………………………………… 8

Plaintiff fails to plead facts establishing an ongoing violation of federal law and does not seek prospective relief in the form of reinstatement or otherwise. Instead, Plaintiff alleges violations that occurred in the past and seeks relief only for a past, one-time decision that purportedly violated his constitutional rights. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 653 (S.D. Ohio 2016); *Doe v. Bowling Green State Univ.*, N.D. Ohio No. 3:22-cv-140, 2022 U.S. Dist. LEXIS 179939, at *13 (Sept. 30, 2022).

          **2.      Plaintiff has failed to establish the requisite connection between the Individual Defendants and the alleged violation.** …………………… 10

Plaintiff fails to plead facts allowing the Court to draw a reasonable inference that the Individual Defendants are responsible for the alleged constitutional violations or have the authority to afford the relief that Plaintiff seeks. The Complaint contains only conclusory and generalized allegations regarding job titles and responsibilities that fail adequately to plead the requisite connection

between the Individual Defendants and the alleged violations. *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) *Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2020 U.S. Dist. LEXIS 163394, at *20 (S.D. Ohio Sep. 8, 2020).

**B.      Counts III and IV are Barred by the Eleventh Amendment and the Common-Law Doctrine of Sovereign Immunity. ............................... 12**

Plaintiff's claims against UC in Counts III and IV are barred by the Eleventh Amendment and the common-law doctrine of sovereign immunity. The claims allege violations of Ohio state law against an "arm of the state," and Plaintiff pleads no facts establishing that UC has waived its immunity with respect to these claims. *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012); *Qiu v. Univ. of Cincinnati*, 803 F. App'x 831, 840 (6th Cir. 2020); *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 514 (6th Cir. 2021).

**III.      Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted. .......... 14**

**A.      Plaintiff Fails to State a Plausible Erroneous Outcome Claim under Title IX (Count I). ...................................................................................... 14**

Plaintiff fails to plead an "erroneous outcome" claim under Title IX. The Complaint does not allege the required particularized causal connection between the outcome of the proceeding and gender bias, and instead impermissibly relies on an alleged general atmosphere of favoritism toward female victims due to pressure from the government. *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 602 (S.D. Ohio 2016). Plaintiff's allegations also do not allow for a reasonable inference of bias in favor of any particular gender because they are contradictory, conclusory, and temporally removed from Plaintiff's disciplinary proceeding. And Plaintiff fails to allege facts sufficient to cast articulable doubt on the accuracy of the outcome of his disciplinary proceeding for the same reasons that his due process claim fails.

**B.      Plaintiff Fails to State a Plausible Due Process Claim (Count II). ............ 17**

Plaintiff fails to plead facts sufficient to show that the Individual Defendants did not afford him adequate procedural rights. In fact, the Complaint establishes that Plaintiff was afforded the minimum due process protections required under the law. *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399-400 (6th Cir. 2017).

**1.      Alleged delay in the provision of notice. …………………………….. 19**

Plaintiff's allegations fail to establish that any delay in the proceedings violated his due process rights. *Doe v. Cummins*, 662 F. App'x 437, 447 (6th Cir. 2016). Plaintiff was provided notice three weeks after the filing of the Formal Complaint and almost six months before his disciplinary hearing. Due Process requires only a meaningful opportunity to prepare for the hearing. *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005).

2.         **Alleged insufficiency of notice.** ……………………………………….. 21

Plaintiff's allegations fail to establish that his due process rights were violated by the provision of inadequate notice. Plaintiff received adequate notice regarding Jane Roe's allegations against him—i.e., that Plaintiff engaged in vaginal intercourse with Roe at a specified time and place, and without Roe's consent. Plaintiff then later received a draft investigative report detailing the allegations made by Roe nearly three months before his disciplinary hearing. Plaintiff accordingly was provided a meaningful opportunity to prepare for the hearing. *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005).

3.         **Alleged bias of decision-makers.** ……………………………………... 22

Plaintiff fails to allege any facts that establish a plausible claim of bias on the part of the decision-makers in his disciplinary proceeding. Plaintiff's allegations that the decision-makers were associated with organizations that have contractual relationships with UC does not demonstrate a pecuniary interest in the outcome of the proceeding, illegal prejudice, or personal animosity. Instead, Plaintiff's allegations ask the Court to impermissibly "indulge in unreasonable inferences" to find bias where none exists. *Cummins*, 662 Fed. Appx. at 454; *McMillan v. Hunt*, No. 91-3843, 1992 WL 168827 at *2 (6th Cir. July 21, 1992); *Duke v. N. Texas State Univ.*, 469 F.2d 829, 834 (5th Cir. 1972); *Welch v. Barham*, 635 F.2d 1322, 1326 (8th Cir. 1980).

4.         **Alleged cross-examination and evidentiary errors.** ………………… 24

Plaintiff's alleged evidentiary errors fail to establish a plausible due process claim. Plaintiff had the opportunity to be present at the hearing, give testimony, cross-examine Jane Roe, and cross-examine witnesses. Plaintiff is not entitled to unlimited questioning or trial-type evidentiary procedures, disclosures, and inferences. *Doe v. Univ. of Cincinnati*, 872 F.3d at 405; *Doe v. Mich. State Univ.*, 989 F.3d 418, 431 (6th Cir. 2021); *Cummins*, 662 F. App'x at 448; *Doe v. Ohio State Univ.*, 219 F. Supp.3d at 659-61.

5.         **Cumulative error.** ………………………………………………….. 28

Plaintiff has failed adequately to allege any single procedural error and therefore cannot succeed on a cumulative error theory. Plaintiff was provided with a fundamentally fair hearing.

C.     **Plaintiff Fails to State a Plausible Claim for Violation of O.R.C. § 111.15 and O.A.C. § 3361:40-5-05 (Counts III and IV).** ………………………………… 28

Counts III and IV assert state law claims with respect to which no private right of action exists. In any event, the Court will lack supplemental jurisdiction over these claims after dismissal of Plaintiff's federal claims.

1.         **No private right of action exists for Counts III and IV.** …………… 28

Plaintiff fails to state a claim under Counts III and IV because no private right of action exists for the state law violations asserted thereunder. The Ohio Legislature has indicated an intent to deny

litigants the ability to obtain declaratory judgment actions with respect to rules as defined in R.C. § 111.15, including O.A.C. § 3361:40-5-05.  R.C. § 2721.03; *O'Neal v. State*, 146 N.E.3d 605, 611 (Ohio Ct. App. 2020). Further, to the extent Plaintiff seeks to employ the federal Declaratory Judgment Act with respect to his claims in Counts III and IV, that Act "does not create an independent cause of action." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007); *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997).

### 2. The Court should decline to exercise supplemental jurisdiction over Counts III and IV. ……………………………………………….. 31

Plaintiff's federal Title IX and due process claims (Counts I and II) fail as a matter of law. In the event that the Court dismisses those counts, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims in Counts III and IV. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir. 1996); 28 U.S.C. § 1367(c)(3).

**CONCLUSION** …………………………………………………………….. 32

**CERTIFICATE OF SERVICE** ……………………………………………… 33

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Anderson v. Smith,*
964 N.E.2d 468 (Ohio Ct. App. 2011) ............................................................................29

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................................5, 11, 14

*Bd. of Trustees of Ohio State Univ. v. Dept. of Admin. Servs.,*
429 N.E.2d 428 (Ohio 1981)..........................................................................................30

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).....................................................................................................5, 14

*Carnegie–Mellon Univ. v. Cohill,*
484 U.S. 343 (1988).........................................................................................................31

*Carrier Corp. v. Outokumpu Oyj,*
673 F.3d 430 (6th Cir. 2012) .............................................................................................5

*Cirino v. Bureau of Workers' Comp.,*
171 N.E.3d 840 (Ohio Ct. App. 2021) ............................................................................28

*Clark v. Martinez,*
543 U.S. 371 (2005).........................................................................................................27

*Davis v. United States,*
499 F.3d 590 (6th Cir. 2007) ....................................................................................13, 30

*Doe v. Bowling Green State Univ.,*
N.D. Ohio No. 3:22-cv-140, 2022 U.S. Dist. LEXIS 179939 (Sept. 30, 2022) ................... *passim*

*Doe v. Cummins,*
662 F. App'x 437 (6th Cir. 2016) ........................................................................... *passim*

*Doe v. Miami Univ.,*
882 F.3d 579 (6th Cir. 2018) ..........................................................................................14

*Doe v. Mich. State Univ.,*
989 F.3d 418 (6th Cir. 2021) ..........................................................................................25

*Doe v. Ohio State Univ.,*
219 F. Supp. 3d 645 (S.D. Ohio 2016) .................................................................. *passim*

*Doe v. Ohio State Univ.,*
311 F. Supp. 3d 881 (S.D. Ohio 2018) ...........................................................................26

*Doe v. Univ. of Cincinnati,*
173 F.Supp.3d 586 (S.D. Ohio 2016) ..............................................................15, 20, 23

*Doe v. Univ. of Cincinnati,*
872 F.3d 393 (6th Cir. 2017) ...................................................................18, 19, 24, 25

*Doe v. Univ. of St. Thomas,*
240 F. Supp. 3d 984 (D. Minn. 2017)...........................................................................15

*Duke v. N. Texas State Univ.,*
469 F.2d 829 (5th Cir. 1972), *cert. denied*, 412 U.S. 932 (1973)...................................23

*Dusenbery v. United States,*
534 U.S. 161 (2002)......................................................................................................17

*Emberg v. Univ. of Maryland Univ. Coll. Asian Div.,*
3 F. Supp. 2d 1127 (D. Haw. 1998) .............................................................................13

*Flaim v. Med. Coll. of Ohio,*
418 F.3d 629 (6th Cir. 2005) ..........................................................................19, 21, 25

*Gentek Bldg. Prod., Inc. v. Sherwin–Williams Co.,*
491 F.3d 320 (6th Cir.2007) ..........................................................................................5

*Gomes v. Univ. of Maine Sys.,*
365 F.Supp.2d 6 (D. Me. 2005) ...................................................................................23

*Ikpeazu v. Univ. of Neb.,*
775 F.2d 250 (8th Cir. 1985) .......................................................................................22

*Ingraham v. Wright,*
430 U.S. 651 (1977)......................................................................................................18

*Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.,*
108 F.3d 658 (6th Cir. 1997) .......................................................................................31

*Kentucky v. Graham,*
473 U.S. 159 (1985)........................................................................................................6

*Mallory v. Ohio Univ.,*
76 F. App'x 634 (6th Cir. 2003) ...................................................................................14

*Marshall v. Ohio Univ.,*
No. 2:15-CV-775, 2015 WL 7254213 (S.D. Ohio Nov. 17, 2015) ...................14, 15, 16

*McCormick v. Miami Univ.,*
693 F.3d 654 (6th Cir. 2012) ..........................................................................................6

*McMillan v. Hunt*,
No. 91-3843, 1992 WL 168827 (6th Cir. July 21, 1992)............................................................22

*Moir v. Greater Cleveland Reg'l Transit Auth.*,
895 F.2d 266 (6th Cir. 1990) ......................................................................................................5

*Morrissey v. Brewer*,
408 U.S. 471 (1972)...................................................................................................................18

*Musson Theatrical, Inc. v. Fed. Express Corp.*,
89 F.3d 1244 (6th Cir. 1996) ....................................................................................................31

*Nichols v. Muskingum Coll.*,
318 F.3d 674 (6th Cir. 2003) ......................................................................................................5

*O'Neal v. State*,
146 N.E.3d 605 (Ohio Ct. App. 2020) ......................................................................................30

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993).....................................................................................................................7

*Qiu v. Univ. of Cincinnati*,
803 F. App'x 831 (6th Cir. 2020) .........................................................................................7, 13

*S & M Brands, Inc. v. Cooper*,
527 F.3d 500 (6th Cir. 2008) ......................................................................................................8

*Sahm v. Miami Univ.*,
110 F. Supp. 3d 774 (S.D. Ohio 2015) .....................................................................................16

*Saqr v. Univ. of Cincinnati*,
No. 1:18-cv-542, 2019 WL 6463388 (S.D. Ohio Dec. 2, 2019)................................................12

*Saqr v. Univ. of Cincinnati*,
No. 1:18-cv-542, 2020 U.S. Dist. LEXIS 163394 (S.D. Ohio Sep. 8, 2020) ........................10, 11

*Thiokol Corp. v. Dep't of Treasury*,
987 F.2d 376 (6th Cir. 1993) ......................................................................................................6

*Top Flight Ent., Ltd. v. Schuette*,
729 F.3d 623 (6th Cir. 2013) ....................................................................................................10

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
552 F.3d 430 (6th Cir. 2008) ......................................................................................................5

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966)...................................................................................................................31

*WCI, Inc. v. Ohio Dep't of Pub. Safety*,
18 F.4th 509 (6th Cir. 2021) ...................................................................................6, 13

*Welch v. Barham*,
635 F.2d 1322 (8th Cir. 1980) ....................................................................................23

*Wielgos v. Idaho Bd. of Land Comm'rs*,
No. 1:14-CV-00542-EJL, 2016 WL 3640609 (D. Idaho June 29, 2016) ....................13

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) ........................................................................................................7

*Withrow v. Larkin*,
421 U.S. 35 (1975)...................................................................................................22, 23

*Ex parte Young*,
209 U.S. 123 (1908)............................................................................................ *passim*

*Yusuf v. Vassar Coll.*,
35 F.3d 709 (2d Cir. 1994)...........................................................................................15

**Statutes**

34 C.F.R. § 106.45 ................................................................................................ *passim*

28 U.S.C. § 1367....................................................................................................31

42 U.S.C. § 1983....................................................................................................7, 8

Federal Declaratory Judgment Act (28 U.S.C. § 2201)........................................13, 30

R.C. § 111.15 ........................................................................................................ *passim*

R.C. § 119.01 ........................................................................................................29, 30

R.C. § 2721.03 ......................................................................................................29, 30

U.S. Const. ...........................................................................................................8

U.S. Const. amend. V............................................................................................17, 18

U.S. Const. amend. XI.......................................................................................... *passim*

U.S. Const. amend. XIV .......................................................................................9, 17, 27

O.A.C. § 3361:40-5-05 .........................................................................................28, 30

**Rules**

Fed. R. Civ. P. 8.............................................................................................................5

Fed. R. Civ. P. 12...............................................................................................4, 5, 14

## MEMORANDUM IN SUPPORT

Plaintiff is a former UC student who was accused of sexual assault by a fellow student. After an investigation conducted pursuant to UC's written policies and procedures, a disciplinary hearing before neutral panelists, and an appeal, Plaintiff was found responsible for sexual misconduct and expelled. Yet, despite receiving more process than required by law, Plaintiff now comes to the Court asking for a determination that the process that he received was fundamentally unfair and that the result of the disciplinary proceeding was erroneous. But all of the claims alleged in the Complaint fail as a matter of law and must be dismissed.

As an initial matter, the Eleventh Amendment and the common-law doctrine of sovereign immunity bar Counts II, III, and IV of the Complaint. Count II, asserted against the Individual Defendants in their official capacities as UC employees, fails to pass muster under *Ex parte Young* because Plaintiff has not alleged an ongoing violation of federal law and seeks only retrospective relief for past conduct. Plaintiff also fails to plead sufficient facts to establish that the Individual Defendants are responsible for the alleged conduct and can deliver the relief that Plaintiff requests. Counts III and IV are state law claims asserted against UC, an arm of the state. There is no basis for bringing such claims in federal court.

In addition to these sovereign immunity problems, all counts of the Complaint must be dismissed because they fail to state a claim upon which relief can be granted. For Count I, Plaintiff has failed to plead a plausible Title IX violation because the Complaint is utterly devoid of facts that would allow the Court to infer that the outcome of his disciplinary proceeding was caused by gender bias. Count II, Plaintiff's due process claim, fails because none of the purported procedural errors—taken separately or cumulatively—establish a plausible claim that his due process rights were violated, let alone that the Individual Defendants were responsible for the purported

1

violations. Finally, Plaintiff's state law claims in Counts III and IV must be dismissed because no private right of action exists with respect to those claims.

For these reasons and others stated more fully below, the Court should dismiss the Complaint in its entirety.

## FACTS

Plaintiff, an Ohio resident, was a student at UC who was expelled in May 2023 for sexual misconduct following a hearing and appeal. (Complaint, Doc. No. 1 at ¶ 4, PageID #3).[2] Defendant UC is a public university created by the Ohio legislature. (*Id.* ¶ 5, PageID #3). The Individual Defendants are employees of UC—Trammer is the Director of the Office of Equity, Inclusion and Community Impact (*Id.* ¶ 6, PageID #3); Lyles is the Title IX Coordinator (*Id.* ¶ 7, PageID #3); Marshall is the Vice President for Equity, Inclusion and Community Impact (*Id.* ¶ 8, PageID #4); and Wade is the Director of Student Conduct and Community Standards. (*Id.* ¶ 9, PageID #4).

On March 30, 2022, UC's Office of Gender Equity & Inclusion ("OGEI") received an online report from the Assistant Director of Fraternity and Sorority Life. (*Id.* at ¶ 58, PageID #22). The report indicated that Jane Roe, another student at UC, had alleged that Plaintiff sexually assaulted her during a fraternity party held on September 10, 2021. (*Id.* at ¶¶ 54, 57, PageID #21, 22). OGEI reached out to Jane Roe the following day, and later met with Jane Roe on April 6, 2022. (*Id.* at ¶¶ 59-60, PageID #22).

On July 26, 2022, Jane Roe submitted a Formal Complaint to OGEI containing the sexual assault allegation against Plaintiff. (*Id.* at ¶¶ 54, 62, PageID #21-22). On July 28, 2022, OGEI Investigator Morgan Shaw ("Shaw") met with Jane Roe to discuss the Formal Complaint. (*Id.* at ¶ 63, PageID #22). On August 18, 2022, Shaw provided Plaintiff with a Notice of Commencement of OGEI

---

[2] The facts alleged in the Complaint are taken here as true only for purposes of this motion to dismiss.

Investigation ("Notice"). (*Id.* at ¶ 64, PageID #23). The Notice informed Plaintiff that "[t]he Formal Complaint alleges that on September 10, 2021, at approximately 11:49pm, at 2707 Clifton Ave. … [Plaintiff] engaged in vaginal intercourse with [Jane Roe] without [Roe's] consent." (*Id.* at ¶ 64, PageID #23).

Thereafter, Shaw conducted an investigation that included interviews of Jane Roe, Plaintiff, and nine witnesses. (*Id.* at ¶¶ 68, 73, 75, 77, 78, 80, 82, 83, 84, 87, 88, 91, PageID #25-36). During the investigation, Shaw sent weekly emails to Plaintiff informing him that the investigation was ongoing. (*Id.* at ¶¶ 72, 74, 76, 79, 81, 85, 86, 89, 92, PageID #27, 28, 30, 31, 33, 34, 36). In October 2022, Shaw informed Plaintiff that she was "currently interviewing witnesses and gathering evidence. When the Preliminary Investigation Report (PIR) is sent for your review, you will be able to see witness statements including the dates in which I interviewed them." (*Id.* at ¶ 90, PageID #34). On November 4, 2022, Shaw informed Plaintiff that evidence that she required had been delayed and that "good cause exists for the investigator to extend the timeframe of the investigatory process." (*Id.* at ¶ 93, PageID #36). Following the investigation, on November 10, 2022, Shaw provided Plaintiff with a draft investigative report, to which Plaintiff submitted written responses. (*Id.* at ¶¶ 94-96, PageID #36-37).

On January 10, 2023, Plaintiff was informed that the matter had been referred for a hearing. (*Id.* at ¶ 98, PageID #39). Plaintiff appeared at a hearing on February 20, 2023. (*Id.* ¶ at 104, PageID #40-43). The Hearing Panel consisted of employees from TNG Consulting. (*Id.* at ¶ 102 PageID #39-40). The Hearing Panel received and reviewed the investigation report prepared by Shaw. (*Id.* at ¶ 104, PageID #40). At the hearing, Plaintiff testified, presented opening and closing statements, and cross-examined Jane Roe and other witnesses. (*Id.* at ¶ 104, PageID #40-43).

On March 23, 2023, Plaintiff was notified that the Hearing Panel found him responsible for violating UC's Title IX Sexual Harassment Policy and determined that Plaintiff should be expelled

from UC. (*Id.* at ¶ 108, PageID #44). On March 30, 2023, Plaintiff appealed the Hearing Panel's decision. (*Id.* at ¶ 112, PageID #47-48). The Appeals Panel consisted of individuals from InCompliance Consulting. (*Id.* at ¶ 115, PageID #48-49). On May 5, 2023, the Appeals Panel denied Plaintiff's appeal. (*Id.* at ¶ 116, PageID #49-53).

Plaintiff filed the Complaint on May 15, 2023. In Count I, Plaintiff alleges that he is entitled to monetary damages from UC for violating his rights under Title IX based on an "erroneous outcome" theory. (*Id.* ¶¶ 119-128, PageID #54-58). In Count II, Plaintiff seeks declaratory and injunctive relief against the Individual Defendants in their official capacities for violations of his due process rights. (*Id.* ¶¶ 129-139, PageID #58-61). In Count III, Plaintiff seeks a judgment against UC declaring that "the Title IX Policy is invalid because the rule had not been filed as required by R.C. 111.15" and that "any disciplinary proceedings held in accordance with the Title IX policy, and that deviated from the Student Code of Conduct, are invalid because the rule had not been filed as required by R.C. 111.15." (*Id.* ¶¶140-150, PageID #61-62). In Count IV, Plaintiff seeks a judgment against UC declaring that "the discipline imposed by UC was contrary to the school's policies and the Ohio Administrative Code and, therefore, invalid." (*Id.* ¶¶ 151-162, PageID #63-64).

## ARGUMENT

The Court should dismiss the Complaint in its entirety because (1) this Court lacks personal and subject matter jurisdiction over Counts II, III, and IV based on the common-law doctrine of sovereign immunity and the Eleventh Amendment; and (2) all Counts in the Complaint fail to state a claim upon which relief can be granted.

### I. Legal Standard.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, 'the plaintiff has the burden of proving jurisdiction in order to survive

the motion.'" *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)). "Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) 'come in two varieties: a facial attack or a factual attack.'" *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (quoting *Gentek Bldg. Prod., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir.2007)). For facial attacks, all of the allegations in the complaint must be taken as true. *Id*.

A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether the complaint is plausible, the Court must interpret it in a light most favorable to the non-moving party, accept factual allegations as true, and give the plaintiff the benefit of reasonable inferences. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). However, the Court is not required to accept as true legal conclusions bereft of supporting factual allegations. *Iqbal*, 556 U.S. at 678.

A properly stated claim must satisfy the pleading requirements in Fed. R. Civ. P. 8(a). This pleading standard "does not require detailed factual allegations … [but a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted). Also insufficient is a complaint which "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

**II. Counts II, III, and IV Must Be Dismissed Because the Court Lacks Subject Matter Jurisdiction Under the Eleventh Amendment and Personal Jurisdiction Under the Common-Law Doctrine of Sovereign Immunity.**

Plaintiff's claims against UC and the Individual Defendants in Counts II, III, and IV are the equivalent of claims against the State of Ohio and, therefore, are barred by the Eleventh Amendment to the United States Constitution and the common-law doctrine of sovereign immunity.[3] Accordingly, the claims should be dismissed for lack of personal and subject matter jurisdiction.

The common-law doctrine of sovereign immunity sounds in personal jurisdiction. *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 514 (6th Cir. 2021). It erects a jurisdictional bar to suits by individuals against the State in both federal and state court. *Id.*

The Eleventh Amendment sounds in subject-matter jurisdiction. *Id.* Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens." *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993); *see also Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 653 (S.D. Ohio 2016). Thus, where Eleventh Amendment immunity applies, federal courts lack subject-matter jurisdiction. *Doe v. Ohio State Univ.* 219 F. Supp. 3d at 653-654; *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[A]bsent a waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.").

---

[3] Defendants read Count II of the Complaint as alleging a violation against, and seeking relief from, the Individual Defendants, and not UC. In the event that Count II could be construed as alleging a violation against UC, it is barred by the Eleventh Amendment based on the principles discussed herein. Likewise, Defendants read Counts III and IV as alleging violations against, and seeking relief from UC, and not the Individual Defendants. To the extent these counts may also be construed as stating claims against the Individual Defendants, they also are barred under the principles discussed herein.

Eleventh Amendment immunity bars claims against States alleging constitutional violations by way of 42 U.S.C. § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect was made clear in our decision in *Quern*."), and claims against States that allege violations of state law. *E.g.*, *Qiu v. Univ. of Cincinnati*, 803 F. App'x 831, 840 (6th Cir. 2020) ("To the extent that the State of Ohio—and, thus, its agencies and its employees acting in their official capacities—has waived its sovereign immunity from liability for violations of state law, it has consented to be sued only in Ohio's court of claims."). Ohio public universities qualify as an "arm of the state" and are considered state entities for purposes of sovereign immunity. *Doe v. Bowling Green State Univ.*, N.D. Ohio No. 3:22-cv-140, 2022 U.S. Dist. LEXIS 179939, at *13 (Sept. 30, 2022). And claims against state officers, such as university employees, in their official capacity "are no different from a suit against the State itself." *Id.* (internal quotations omitted).

The Supreme Court has carved out one exception to this immunity, known as the "*Ex parte Young*" exception. *Ex parte Young*, 209 U.S. 123 (1908). To establish a claim under *Ex parte Young*, a plaintiff must: (1) seek prospective relief for an ongoing violation of federal law against a state official in their official capacity; and (2) allege that the state official has "some connection" to the ongoing violation. *Id.* at 157-159. The *Ex parte Young* exception applies only to claims against state officers and thus "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

A.   **Count II is Barred under the Eleventh Amendment and the Common-Law Doctrine of Sovereign Immunity.**

In Count II, Plaintiff alleges by way of 42 U.S.C. § 1983 that the Individual Defendants violated his right to due process under the United States Constitution. Plaintiff concedes that the Individual Defendants are being sued in their official capacities, (Complaint, Doc. 1 at ¶¶ 6b, 7b, 8b, 9b, PageID #3-4), and seeks declaratory and injunctive relief against these state officials. For such a claim to evade the Eleventh Amendment, however, it must fall within the exception under *Ex parte Young*. For the reasons stated below, it does not.

(1)   **Plaintiff does not seek prospective relief for ongoing violations of federal law.**

First, Count II does not seek prospective relief for an ongoing violation of federal law. The Court is required to examine Plaintiff's section 1983 claim substantively rather than by the form in which it appears. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008). A substantive examination of Count II shows that Plaintiff merely alleges purported constitutional violations that have already occurred, and not an ongoing violation of federal law.

The substance of Plaintiff's claim relates to the alleged denial of procedural due process in the past—that is, before and during Plaintiff's February 20, 2023 hearing, and before his appeal was denied on May 5, 2023. (*See* generally Compl., Doc. 1). Plaintiff asserts in Count II that the Individual Defendants violated his constitutional rights in several ways, but all of the alleged wrongdoings relate to actions that already have occurred—undue delay in the investigation; failure to provide adequate notice; use of "biased" consultants; improper reliance on certain statements and other evidence; failure to permit cross-examination; and failure to seek or obtain certain evidence. (*Id.* at ¶137, PageID #59-61). These allegations make it clear that Plaintiff seeks relief for actions related to "a past, one-time decision of [certain University officers] that purportedly violated [his] federal constitutional rights." *Cooper*, 527 F.3d at 509. But the exception under *Ex*

8

*parte Young* "does not permit judgments against state officers declaring that they violated federal law in the past." *Doe v. Bowling Green State Univ.*, 2022 U.S. Dist. LEXIS 179939 at *14.

It is also clear that Plaintiff is not seeking prospective relief in Count II. Plaintiff pleads that he is requesting (1) a declaration that the "Title IX Policy and the Code of Student Conduct, as applied to [Plaintiff], violate the Due Process Clauses of the United States Constitution" and (2) an injunction "prohibiting the Individual Defendant[s] from enforcing the Sexual Misconduct Policy and Code of Student Conduct against him in manner that violates the Due Process Clauses of the United States Constitution." (Complaint, Doc. 1 at ¶138, PageID# 61). But neither request for relief is prospective because each merely seeks to right a purported past wrong rather than correcting an ongoing violation of federal law.

*Doe v. Ohio State University* is instructive in this regard. There, a student filed suit alleging violations of his procedural due process rights against the university after he was expelled for sexual misconduct. 219 F. Supp. 3d at 650. The student sought a judgment declaring that the university violated the law and damages in an amount to be determined at trial. *Id*. at 654. The Court held that the university and its administrators were immune from suit under the Eleventh Amendment because the student sought only retrospective relief and had not "state[d] a claim for reinstatement or any other kind of prospective relief." *Id*. at 654. The Court rejected the student's argument that the relief requested was prospective because it would eliminate the "ongoing harm" that expulsion had on his ability to seek employment:

> If the Court did issue a declaratory judgment, it would do so to correct a previous error in the disciplinary process OSU used in this case. Of course, without this discipline on his record, Doe's employment prospects might improve. But any plaintiff could make a similar argument that a declaratory judgment to right past wrongs would cause some prospective benefit. But here, if the Court issued the declaratory judgment Doe seeks, that judgment wouldn't correct "an ongoing violation of federal law."

*Id*. (citation omitted).

The same principles apply here. In Count II, Plaintiff does not plead for reinstatement, and does not express a desire to re-enroll at UC. Rather, Plaintiff seeks a declaration and injunction prohibiting something that has already happened to him—the enforcement of a policy in a manner that he considers to be unconstitutional. But even if the effect of this alleged past violation is "ongoing in the form of [Plaintiff's] disciplinary penalty," the alleged violative act is done. *Doe v. Bowling Green State Univ.*, 2022 U.S. Dist. LEXIS 179939 at *15-16 ("While the effects of these past alleged violations may be ongoing in the form of Doe's disciplinary penalty, the alleged violative act itself is done and, as applied to Doe, will not recur."). Plaintiff's claim therefore does not satisfy the first prong of the *Ex parte Young* test.

### (2)   Plaintiff has failed to establish the requisite connection between the Individual Defendants and the alleged violation.

Plaintiff's claim in Count II also fails under the second prong of the *Ex parte Young* test. A plaintiff who alleges an ongoing violation and seeks prospective, injunctive relief cannot sue just any individual. The individual defendant "must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains." *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013). Accordingly, a plaintiff must allege facts that show how a state official is connected to or responsible for the alleged constitutional violation. *Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2020 U.S. Dist. LEXIS 163394, at *20 (S.D. Ohio Sep. 8, 2020).

This "connection" requirement tracks Article III's standing requirements—injury in-fact, causation, and redressability. *Id.* at *21-22. To satisfy the requirement, a plaintiff must allege facts: (1) that the state official played a role in causing the ongoing harm of which plaintiff complains; and (2) that an injunction against that official will be likely to provide redress. *Id.* at *22. In other

words, the state official must have some connection with the enforcement of the act and authority to perform the relief sought. *Id*. at *23.

The Complaint falls short in this regard because it is utterly devoid of the requisite "factual content" that would "allow[] the court to draw the reasonable inference" that the Individual Defendants may be held liable for the violations alleged. *E.g.*, *Iqbal*, 556 U.S. at 678. The Complaint contains only the following conclusory and generalized allegations regarding the Individual Defendants: (1) they are employed at UC in various positions (Compl., Doc. 1 at ¶¶ 6a, 7a, 8a, 9a, PageID #3-4); (2) they are responsible for "implementing the various policies and procedures UC has adopted related to student conduct and the enforcement of Title IX" (*Id*. at ¶¶ 6c, 7c, 8c, 9c, PageID #3-4); and (3) "upon information and belief, [the Individual Defendants] in conjunction with the other individual defendants ha[ve] the authority to provide all of the injunctive relief sought in this Complaint." (*Id*. at ¶¶ 6b, 7b, 8b, 9b, PageID #3-4). Apart from these allegations, Lyles and Wade are mentioned nowhere in the Complaint; Trammer is mentioned once as a messenger relaying the outcome of the hearing (*Id*. at ¶ 108, PageID #44); and Marshall is mentioned three times as the messenger identifying the Appeals Panel members. (*Id*. at ¶¶ 113-114, PageID #48).

These cursory allegations do not adequately plead the required connection between the Individual Defendants and the alleged constitutional violations. To begin, Plaintiff alleges no facts that would allow the Court to draw a reasonable inference that the Individual Defendants may be responsible for the conduct of which he complains. The Complaint lacks any allegations regarding specific actions taken by the Individual Defendants that might lead to such an inference, and Plaintiff's mere assertion that the Individual Defendants are responsible for "implementing" university policy falls far short of the mark. The Complaint contains no explanation regarding what

"implementation" consists of or how such "implementation" equates to responsibility for the actions that Plaintiff claims violated his due process rights. *Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2019 WL 6463388 at \*5 (S.D. Ohio Dec. 2, 2019) ("Suit will not lie in the absence of facts showing that the state official has some responsibility for the alleged constitutional violations."). Further, aside from a uniform and conclusory "information and belief" allegation applied to all Individual Defendants, Plaintiff pleads no allegations that could allow the Court to reasonably infer that any of the Individual Defendants has the authority to provide the relief that he requests.

Given the paucity of any specific factual allegations regarding the conduct of the Individual Defendants, Plaintiff's claim in Count II fails to satisfy *Ex parte Young*'s connection requirement. Accordingly, Count II should be dismissed as barred by the Eleventh Amendment and the common-law doctrine of sovereign immunity.

### B. Counts III and IV are Barred by the Eleventh Amendment and the Common-Law Doctrine of Sovereign Immunity.

Plaintiff's claims in Counts III and IV against UC constitute claims for violations of state law against an "arm of the state," and Plaintiff makes no allegation that UC has somehow waived its immunity with respect to these claims. As such, they also are barred by the Eleventh Amendment and the common-law doctrine of sovereign immunity.

In Count III, Plaintiff seeks a judgment against UC declaring (1) that "the Title IX Policy is invalid because the rule had not been filed as required by R.C. 111.15," and (2) that "any disciplinary proceedings held in accordance with the Title IX policy, and that deviated from the Student Code of Conduct, are invalid because the rule had not been filed as required by R.C. 111.15." (Compl., Doc. 1 at ¶¶140-150, PageID #61-62). In essence, Count III is a claim that UC has violated state law (R.C. § 111.15) by not filing the Title IX Policy as a rule. Even if a private cause of action exists for such a claim—and as discussed below, it does not—the claim is barred from federal court by the Eleventh

Amendment and the common-law doctrine of sovereign immunity. *E.g.*, *Qiu*, 803 F. App'x at 840 ("To the extent that the State of Ohio—and, thus, its agencies and its employees acting in their official capacities—has waived its sovereign immunity from liability for violations of state law, it has consented to be sued only in Ohio's court of claims."); *WCI*, 18 F.4th at 513-14.

The same is true of Count IV. There, Plaintiff seeks a judgment against UC declaring that "the discipline imposed by UC was contrary to the school's policies and the Ohio Administrative Code and, therefore, invalid." (Compl., Doc. 1 at ¶¶ 151-162, PageID #63-64). Again, this claim seeks a judgment based on a violation of state law—the Ohio Administrative Code. Even if it was somehow cognizable in state court, it cannot be asserted against an arm of the state in federal court under the Eleventh Amendment or the common-law doctrine of sovereign immunity.

Lastly, while it is true that Plaintiff seeks a declaratory judgment in both Counts III and IV, Plaintiff cannot use the Federal Declaratory Judgment Act (28 U.S.C. § 2201) to circumvent the Eleventh Amendment or common-law doctrine of sovereign immunity. *E.g.*, *Davis v. United States,* 499 F.3d 590, 594 (6th Cir. 2007) ("A federal court accordingly must have jurisdiction already under some other federal statute before a plaintiff can invoke[e] the Act.") (internal quotations omitted); *Wielgos v. Idaho Bd. of Land Comm'rs*, No. 1:14-CV-00542-EJL, 2016 WL 3640609, at *4 (D. Idaho June 29, 2016) (concluding that the Declaratory Judgment Act did not abrogate the state agency defendant's Eleventh Amendment immunity); *Emberg v. Univ. of Maryland Univ. Coll. Asian Div.*, 3 F. Supp. 2d 1127, 1131 (D. Haw. 1998) ("The Declaratory Judgment Act is a procedural statute, and therefore has no language regarding abrogation of a state's Eleventh Amendment immunity.").

For the foregoing reasons, Counts III and IV should be dismissed as barred under the Eleventh Amendment and common-law doctrine of sovereign immunity.

**III. Plaintiff Has Failed To State A Claim Upon Which Relief Can Be Granted.**

In addition to the dismissal of Counts II, III, and IV on immunity grounds, the Court can dismiss all counts of the Complaint because each fails to state a claim upon which relief can be granted.

**A. Plaintiff Fails To State A Plausible Erroneous Outcome Claim under Title IX (Count I).**

In Count I, Plaintiff asserts a violation of Title IX under the "erroneous outcome" theory. "A successful 'erroneous outcome' claim requires the plaintiff to show that the 'outcome of [the] University's disciplinary proceeding was erroneous because of sex bias.'" *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (quoting *Mallory v. Ohio Univ.*, 76 F. App'x 634, 639 (6th Cir. 2003)). "The gravamen of an erroneous outcome claim is that an 'innocent' person was wrongly found to have committed an offense because of his or her gender." *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 7254213, at *5 (S.D. Ohio Nov. 17, 2015) (internal quotations omitted).

To adequately plead an "erroneous outcome" claim, a plaintiff must allege: "(1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding; and (2) a particularized … causal connection between the flawed outcome and gender bias." *Doe v. Miami Univ.*, 882 F.3d 579, 592 (6th Cir. 2018) (quotations omitted). Title IX erroneous outcome claims must satisfy the pleading requirements of *Twombly* and *Iqbal* to survive a Rule 12(b)(6) motion. *Id.* at 589.

Here, Plaintiff's Title IX claim must be dismissed because he has not adequately pled a causal connection between the hearing outcome and gender bias.[4] "[A]llegations of a procedurally

---

[4] Nor, for the reasons stated below in section III.B., has Plaintiff alleged facts sufficient to cast some articulable doubt on the outcome of his disciplinary proceeding. Although Plaintiff includes certain allegations of purported procedural flaws as evidence of a due process violation, UC complied with the requirements of due process. *See infra* section III.B. So Plaintiff's allegations cast no doubt on the outcome of his disciplinary proceeding.

or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with *a conclusory allegation of gender discrimination* is not sufficient to survive a motion to dismiss." *Cummins*, 662 F. App'x at 452 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)) (emphasis added). A complaint is not adequate unless the plaintiff pleads "a *particularized* . . . causal connection between the flawed outcome and gender bias." *Id.* (emphasis added) (quoting *Yusef*, 35 F.3d at 715). "Such allegations might include, *inter alia,* statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Yusuf*, 35 F.3d at 715.

The allegations contained in the Complaint fall far short of satisfying the particularity requirement. Despite the length of the Complaint, Plaintiff's allegations regarding gender bias boil down to this: "a general atmosphere at UC" that favors alleged female sexual assault victims that is the "direct result of pressure" on UC created by the government and the public. (Compl., Doc. 1 at ¶ 124, PageID #57.) But this Court has already declined to entertain "erroneous outcome" claims based on such conclusory allegations.

In *Doe v. University of Cincinnati*, for example, this Court held that "Plaintiffs' allegations concerning … pressure allegedly exerted on universities by the Department of Education to intensify their response to sexual assault complaints fall short of creating a reasonable inference that the ARC panels in Plaintiffs' cases were biased." 173 F.Supp.3d 586, 602 (S.D. Ohio 2016). Other courts have held the same. *See Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 992 (D. Minn. 2017) ("[T]his Court joins the majority of federal courts in finding a general reference to federal pressure, by itself, is insufficient to show gender bias."); *Marshall*, 2015 WL 7254213, at *8 (finding insufficient at the motion to dismiss stage plaintiff's assertion "that OU has succumbed

15

to pressure from the Department of Education to 'crackdown' on perpetrators of sexual assault and sexual misconduct on university campuses").

True, Plaintiff spends ten pages of the Complaint explaining the policies of various presidential administrations in an attempt to plead his Title IX claim. But those allegations fail to demonstrate gender bias because they are entirely contradictory. According to the Complaint, UC is biased both for and against sexual assault victims, and has faced pressure as a result of government policies that both favor and disfavor the accused. For example, in one sentence, Plaintiff accuses UC of a pattern and practice of "not taking allegations of sexual assault against female students seriously." (Compl., Doc. 1 at ¶ 24, PageID #12). In the very next sentence, Plaintiff accuses UC of a pattern and practice of "not respecting the due process rights of both accused students and alleged victims." (*Id*.). Which is it? Bias means favoring one group over another, but Plaintiff's allegations appear to suggest that UC is biased in every direction.

Plaintiff also highlights government policies in effect between 2011 and 2020 to show that UC has been under pressure to favor complainants of sexual assault over respondents. Yet, according to the Complaint, these government policies have both "treat[ed] all those accused of sexual misconduct with a presumption of guilt" and "prescribe[d] a transparent grievance process that treats accused students as innocent until proven guilty." (*Id*. at ¶¶ 18a, 20, PageID # 7, 10). Again, which is it? Plaintiff cannot establish that UC favors victims of sexual assault because of pressure imposed by governmental policies when he acknowledges that those very governmental policies have swung the pendulum both ways.[5]

---

[5] And inasmuch as Plaintiff's allegations involve discussion of bias for or against alleged victims and alleged perpetrators of sexual assault, they fail to establish bias in favor of any particular *gender*. *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015) ("Demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students.").

Nor do Plaintiff's allegations regarding the "substantial criticism" of UC "[i]n the years preceding" Plaintiff's disciplinary action create a plausible inference of gender bias. Plaintiff's disciplinary proceeding occurred in February and March 2023, but the alleged "criticisms" of UC that Plaintiff discusses in the Complaint took place years earlier—between 2014 and 2021. *Cf. Cummins*, 662 F. App'x at 452 (distinguishing *Doe v. Columbia University*, where it was alleged that "*in the weeks leading up to* the plaintiff's hearing" the school and the Title IX investigator had "faced substantial criticism from both the student body and the public media regarding its handling of sexual-assault investigations") (emphasis added). Plaintiff asserts that UC is currently subject to five open Title IX investigations from the Department of Education, but provides no information regarding those investigations, let alone any allegations that would connect those investigations to the alleged gender bias. Moreover, ostensibly in an attempt to freshen up his allegations, Plaintiff cites a law review article written in 2022. But that article notes that the government policies upon which Plaintiff relies to establish gender bias have, indeed, swung the "pendulum" both ways. (Compl., Doc. 1 at ¶¶ 23-27, PageID #11-14).

Because Plaintiff has failed to allege facts sufficient to establish a particularized causal connection between the alleged flawed outcome and gender bias, Count I must be dismissed.

### B. Plaintiff Fails to State a Plausible Due Process Claim (Count II)

In Count II, Plaintiff alleges that the Individual Defendants deprived him "of life, liberty, or property, without due process of law" in violation of the Fourteenth Amendment to the U.S. Constitution. (*Id.* at ¶ 131, PageID #58).[6] To state a claim for a violation of procedural due process,

---

[6] Plaintiff also invokes the Fifth Amendment in Count II, but it is well established that the Fifth Amendment due process clause applies only to the United States government and its officials. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (the "Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law."); *Bowling*

Plaintiff must allege that: (1) he had a property or liberty interest of which he was deprived; and (2) the state did not afford him adequate procedural rights prior to depriving him of the interest. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).

Most fundamentally, Plaintiff has failed to state a due process claim in Count II for the reasons stated above in Part II.A. with respect to the Eleventh Amendment and the common-law doctrine of sovereign immunity: the Complaint fails to adequately establish that the Individual Defendants had the requisite connection to the due process violations of which he complains. The allegations in the Complaint regarding the Individual Defendants are generalized, conclusory, and lack any particularized facts that would allow the Court to infer that the Individual Defendants played any role in the alleged violation. For this reason alone, Count II must be dismissed.

But the count can be dismissed on an additional ground as well. While the Sixth Circuit has held that state universities must afford students minimum due process protections before issuing significant disciplinary decisions—*Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017)— Plaintiff's allegations fail to establish a plausible claim that anybody at UC, let alone the Individual Defendants, failed to afford him adequate procedural rights. Where a party properly alleges the existence of a property or liberty interest,[7] "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Sixth Circuit has explained the parameters of adequate procedural rights for students facing disciplinary action:

> At a minimum, a student facing suspension is entitled to "the opportunity to be 'heard at a meaningful time and in a meaningful manner.'" While the exact outlines of process may vary, universities must "at least" provide notice of the charges, an

---

*Green State Univ.*, 2022 U.S. Dist. LEXIS 179939, at *18 ("The Fifth Amendment's prohibition applies only to the United States."). To the extent Plaintiff bases any of his claim under Count II on the Fifth Amendment due process clause, the claim should be dismissed.

[7] Defendants do not concede that Plaintiff has a protected property or liberty interest in continuing his education at UC, or otherwise.

explanation of the evidence against the student, and an opportunity to present his side of the story before an unbiased decision maker.

A student's opportunity to share his version of events must occur at "some kind of hearing," though that hearing need not "take on … [the] formalities" of a criminal trial. Education is a university's first priority; adjudication of student disputes is, at best, a distant second. "Formalizing hearing requirements would divert both resources and attention from the educational process." Thus, UC is not required to "transform its classrooms into courtrooms" in pursuit of a more reliable disciplinary outcome. … Even in the case of a sexual assault accusation—where "[a] finding of responsibility will … have a substantial and lasting impact" on the student—the protection afforded to him "need not reach the same level … that would be present in a criminal prosecution." Review under *Mathews* asks only whether John Doe "had an opportunity to 'respond, explain, and defend,'" not whether a jury could constitutionally convict him using the same procedures.

*Doe v. Univ. of Cincinnati*, 872 F.3d at 399-400 (internal citations omitted).

When examined against these principles, the Complaint makes it clear that what Plaintiff seeks is more process than he is constitutionally due—process that would transform student disciplinary proceedings into a court of law. (Compl., Doc. 1 at ¶ 137, PageID #59-61).

### (1) Alleged delay in the provision of notice.

Plaintiff argues that UC unduly delayed the investigation and adjudication of the matter because "John Noakes was not provided notice until August 18, 2022 – over four months after the UC Title IX Office became aware of the allegations and over three weeks after a formal complaint was filed." (*Id*. at ¶ 137a, PageID #59.) Plaintiff also complains that UC's Title IX Policy requires that all matters be completed within 90 business days, which time period expired prior to the Outcome Letter dated March 23, 2023. (*Id*. at ¶ 157-60, PageID #63). These allegations fail to establish a plausible due process violation.

As indicated above, a university is obligated to provide a student "notice of the charges." Notice satisfies due process where the student has "sufficient notice of the charges against him and a meaningful opportunity to prepare for the hearing." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005).

19

When courts analyze whether notice is sufficient for due process purposes, they consider the amount of time the student had to prepare for the hearing—not how long the university took to notify the student following the filing of a complaint. *Cummins*, 662 F. App'x at 447 (providing notice one month before the disciplinary hearing was sufficiently timely to satisfy due process requirements). In fact, due process only compels a university to provide the accused student notice "pre-expulsion." *Id.* at 446.

The Complaint unquestionably acknowledges that UC fulfilled this obligation—providing Plaintiff with notice three weeks after the filing of the Formal Complaint and almost six months before the hearing. *E.g. Cummins*, 662 F. App'x at 447. Contrary to Plaintiff's suggestion, UC does not have a duty to provide Plaintiff with notice of allegations until a Formal Complaint has been filed. (Title IX Policy, Doc. 1-3, PageID #115).

Nor can Plaintiff rely on the purported lapse of the 90-day time period in UC's Title IX Policy to establish a due process violation.[8] *Doe v. Univ. of Cincinnati*, 173 F.Supp.3d at 603 ("[A]n allegation that the disciplinary board violated its own policies and procedures does not state a claim for a due process violation."). Despite Plaintiff's claim, the allegations in the Complaint show that Shaw continually kept Plaintiff apprised of the investigation. And although UC's Title IX Policy provides that the "University shall make appropriate efforts to ensure" completion of the grievance process within 90 days, the policy also provides that "these timeframes are estimations of the duration of time necessary" and that "[t]emporary delay of the grievance process or the limited extension of timeframes for good cause, with written notice to the complainant and the respondent of the delay or extension and the reasons for the action, are permissible." (Compl.,

---

[8] Ironically, Plaintiff appears to simultaneously attack UC's Title IX Policy as violative of his due process rights while relying on provisions of that same policy in an effort to establish his claims.

Doc. 1-3 at § IX, PageID #114). The Title IX Policy also provides that "[w]here parties, witnesses, and/or evidence needed by the investigator are delayed, temporarily unavailable, and/or otherwise withheld, good cause exists for the investigator to extend the timeframe of the investigatory process as necessary to complete a thorough and appropriate review of the matter." (Compl., Doc. 1-3 at § VII, , PageID #120-121).

As indicated in the Complaint, Shaw abided by these provisions. On November 4, 2022, one month prior to the expiration of the 90-day deadline, Shaw sent an email to Plaintiff stating that "evidence needed by the investigator [was] delayed" and that "good cause exists for the investigator to extend the timeframe of the investigatory process." (Compl., Doc.1 at ¶ 93, PageID #36). Consequently, Plaintiff's "undue delay" allegations do not state a plausible claim that Plaintiff's due process rights were violated.

### (2) Alleged insufficiency of notice.

Plaintiff also claims that the Notice provided by Shaw "did not include sufficient details known at the time." (*Id*. at ¶ 123, PageID #55). This claim is equally deficient. As outlined in the Complaint, on August 18, 2022, Shaw provided notice to Plaintiff that the investigation involved an allegation that "September 10, 2021 at approximately 11:49 pm, at 2707 Clifton Ave. … [John Noakes] engaged in vaginal intercourse with [Jane Roe] without [Roe's] consent." (Compl., Doc. 1 at ¶ 64, PageID #23). Plaintiff appears to suggest that this Notice was inadequate because it "did not state that Jane Roe alleged she was incapacitated and therefore incapable of consent due to alcohol and/or drugs." (*Id*. at ¶123, PageID #55). But nothing in the law requires notice in disciplinary proceedings (and even criminal indictments) to include that level of detail. *Cummins*, 662 F. App'x at 447 (quoting *Flaim*, 418 F.3d at 638) ("Notice satisfies due process if the student

had sufficient notice of the charges against him and a meaningful opportunity to prepare for the hearing.").

Further, Plaintiff was placed on notice of allegations regarding incapacitation—both by the formal Notice provided by Shaw and by other information provided to Plaintiff throughout the course of the disciplinary process. The Notice provided by Shaw stated that Roe did not give "consent." (Compl., Doc. 1 at ¶ 64, PageID #23). A quick reading of UC's Title IX Policy by Plaintiff and his advisor would have revealed how that word is interpreted under the policy. For example, the policy provides that "[a] person cannot give consent if the person is mentally or physically incapacitated." The policy then defines "incapacitation" to include "physical or mental impairment resulting from drugs or alcohol." (Compl., Doc. 1-3 at PageID #104). Additionally, as outlined in the Complaint, on November 10, 2022, Shaw provided Plaintiff with a draft investigative report that contained the specifics of Jane Roe's allegations—nearly three months prior to the hearing. (Compl., Doc. 1 at ¶ 94, PageID #36).

Given these facts, Plaintiff cannot establish a plausible due process claim based on his allegations of insufficient notice.

### (3) Alleged bias of decision-makers.

Plaintiff argues that UC "used biased outside consultants as decision-makers on both the Hearing Panel and the Appeal Panel." (*Id*. at ¶ 137, PageID #60). While "a biased decisionmaker [is] constitutionally unacceptable," *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), "[i]n the university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of *actual bias*." *McMillan v. Hunt*, No. 91-3843, 1992 WL 168827 at *2 (6th Cir. July 21, 1992) (citing *Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 254 (8th Cir. 1985)) (emphasis added). Thus, "[a]lleged prejudice of university hearing bodies must be based on more than mere

speculation and tenuous inferences." *Duke v. N. Texas State Univ.*, 469 F.2d 829, 834 (5th Cir. 1972), *cert. denied*, 412 U.S. 932 (1973). Examples of allegations that may establish a plausible claim of actual bias include allegations of personal animosity, illegal prejudice, or a personal or financial stake in the outcome. *Doe v. Bowling Green State Univ.*, 2022 U.S. Dist. LEXIS 179939 at *25 (internal quotations omitted).

Plaintiff alleges that UC used biased decision-makers because: (1) the Hearing Panel members are associated with organizations "that routinely provide opinions on behalf of schools that investigations were adequate in response to challenges by students found to have engaged in sexual misconduct;" and (2) the Appeals Panel members were affiliated with a law firm that "derives significant income from providing training and legal representation to UC in Title IX matters and that represents schools in responding to Title IX claims." (Compl., Doc. 1 at ¶ 137, PageID #60).

Even if accepted as true, Plaintiff's allegations do not establish actual bias. For one, a decision-maker is not "disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute[.]" *Welch v. Barham*, 635 F.2d 1322, 1326 (8th Cir. 1980); *see also Doe v. Univ. of Cincinnati*, 173 F.Supp.3d at 601–602 (citing *Gomes v. Univ. of Maine Sys.*, 365 F.Supp.2d 6, 31–32 (D. Me. 2005) (explaining the fact that the hearing board chair participated in sexual assault victim advocacy programs did not demonstrate that she was biased against the plaintiff in his sexual misconduct disciplinary hearing). Nor is a decision-maker disqualified for belonging to an entity that has a contractual relationship with the school. The mere existence of such a contractual relationship does not demonstrate that the decision-maker "ha[d] a pecuniary interest *in the outcome*" of the proceeding, *e.g.*, *Withrow*, 421 U.S. at 47 (emphasis added), and therefore is not sufficient to establish actual bias.

At most, Plaintiff's allegations establish a relationship between UC and entities to which the decision-makers belong. But the fact that the decision-makers are affiliated with entities that provide certain arms-length business services to UC is not evidence of actual bias. *E.g., Cummins*, 662 Fed. Appx. at 454 (the court will not "indulge in unreasonable inferences" concerning alleged bias). Plaintiff makes no allegations that the panel members exhibited personal animosity, illegal prejudice, or had a personal or financial stake in the outcome. Instead, Plaintiff asks the Court to infer and speculate to find actual bias. Because such inference and speculation is flatly prohibited by the law, Plaintiff's bias allegations do not support a plausible inference that a due process violation occurred.

### (4) Alleged cross-examination and evidentiary errors.

Plaintiff argues that various evidentiary errors occurred during the hearing that violated his right to due process. He asserts that the Hearing Panel: (1) improperly reviewed and relied on statements from witnesses who failed to appear before the Hearing Panel and were not subject to cross-examination; (2) did not permit full cross-examination by his advisor; (3) relied on evidence of a blood-alcohol calculator that was not disclosed prior to the hearing; and (4) relied on blood-alcohol and SANE evidence that was not supported by expert testimony. (Compl., Doc. 1 at ¶¶ 137d-g, PageID #60). Plaintiff also argues that the investigation failed to seek relevant evidence regarding Jane Roe's SANE examination and that the Hearing Panel failed draw a negative inference from Jane Roe's failure to produce such evidence. (*Id*. at ¶ 137h, PageID #60-61). None of these allegations establishes a viable due process claim.

First, it is axiomatic that the university is "not required to facilitate witness questioning at every nonacademic misconduct hearing." *Doe v. Univ. of Cincinnati*, 872 F.3d at 405. "[C]ross-examination is 'essential to due process' only where the finder of fact must choose 'between

believing an accuser and an accused.'" *Id.* (quoting *Flaim*, 418 F.3d at 641). Here, the Hearing Panel heard from both the accuser and the accused, as well as numerous other witnesses, all of whom were subject to cross-examination. The panel was not required to hear from all possible witnesses, and could have, if it wished, considered hearsay in making its decision. *Bowling Green State Univ.*, 2022 U.S. Dist. LEXIS 179939 (holding that the consideration of summaries that included hearsay statements is not a procedural due process violation). And contrary to Plaintiff's allegation, the Hearing Panel did not rely upon statements made by witnesses who did not appear. (Doc. 1-6, PageID #156.) Thus, Plaintiff's allegations do not raise a plausible inference that a due process violation occurred.

Moreover, Plaintiff had the opportunity to cross-examine Jane Roe, so none of the concerns extant in cases like *Doe v. University of Cincinnati*, 872 F.3d at 401-405, are present here. Plaintiff alleges only that, during one exchange, the Hearing Panel cut off his questioning of Roe. But Plaintiff is not entitled to unlimited questioning or to ask every question he wishes to ask. *Doe v. Mich. State Univ.*, 989 F.3d 418, 431 (6th Cir. 2021) (Plaintiff was entitled to "'some form of cross-examination' that allows for a fact-finder to more accurately make a determination of credibility and to witness the claimant's demeanor on the stand."); *Cummins*, 662 F. App'x at 448 (limiting cross-examination to preapproved written questions comported with due process even if the panel "did not ask all of the questions [the accused students] submitted," and did not permit follow-up questions.); *Doe v. Ohio State Univ.*, 219 F. Supp.3d at 660-61 (noting that Plaintiff had "no clearly established right to a trial-type cross-examination."). Plaintiff had the opportunity to thoroughly question his accuser, and the Hearing Panel had the opportunity to assess the accuser's credibility. *E.g.*, *Doe v. University of Cincinnati*, 872 F.3d at 403 (a university's procedures must

25

be sufficient to make "issues of credibility and truthfulness … clear to the decision makers."). That is all due process requires.

Next, Plaintiff argues that the Hearing Panel "improperly relied on scientific and medical evidence that was not reliable and supported by sufficient expert testimony," including the calculation of Jane Roe's blood alcohol level and the SANE examination. (Compl., Doc. 1 at ¶ 137, PageID #60). Due process, however, places no obligation on UC to retain and produce expert witnesses in relation to such information. *See Ohio State Univ.*, 219 F. Supp. 3d at 661 ("The fiscal and administrative burden on a university would be significant if it had to retain experts, present live expert testimony at student disciplinary hearings, and prepare a cross-examination of the other side's expert witness.").[9]

Plaintiff then complains that the Hearing Panel did not disclose evidence regarding a blood-alcohol calculation prior to considering it in its decisions. But "there is no clearly established due process right to formal discovery in university disciplinary hearings." *Doe v. Ohio State Univ.*, 219 F. Supp. 3d at 659. Moreover, the Hearing Panel made clear that the blood alcohol calculation was an "educational tool" and used the information only in conjunction with its consideration of testimony at the hearing.

Finally, Plaintiff argues that the investigator "failed to seek and/or obtain significant relevant evidence," including Jane Roe's medical records, and that the Hearing Panel failed to draw a negative inference from Jane Roe's failure to produce such evidence. (Compl., Doc. 1 at ¶

---

[9] While the Court later reconsidered its earlier ruling on expert testimony in *Doe v. Ohio State Univ.*, 311 F. Supp. 3d 881, 894-96 (S.D. Ohio 2018), this reconsideration occurred in the context where the university had denied the respondent the opportunity to present his own expert testimony—an allegation not present here. Indeed, the Court's reconsideration made no suggestion that due process could require that the university itself produce expert testimony.

137h, PageID #60-61). There is no authority, however, for the proposition that due process "requires certain thoroughness to an investigation." *Ohio State Univ.*, 219 F. Supp. 3d at 657. Universities are not required to seek out or even disclose every possible piece of evidence. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d at 662 (declining to extend the rule set forth in *Brady v. Maryland*). Indeed, obtaining this information presents a second problem. If the Due Process Clause requires UC to obtain Jane Roe's medical records, that requirement would be in conflict with a federal statute. Title IX, 34 C.F.R. § 106.45(b)(5)(i), prohibits UC from accessing Jane Roe's medical records.[10]

Further, with respect to Plaintiff's allegation that the Hearing Panel failed to draw a "negative inference" from Jane Roe's failure to produce medical evidence, there is no authority for the proposition that due process required such an inference to be applied. Moreover, the Complaint acknowledges that the Hearing Panel heard testimony from Jane Roe regarding the results of the SANE exam and the reasons for *her* decision not to release the records. Jane Roe testified that she "didn't release those because there was too much time had passed before I got the SANE exam," and that there "was not results to that I felt needed to be included." (Compl., Doc. 1 at ¶ 104, PageID #42). Consequently, Plaintiff had more than adequate opportunity to present his case regarding the SANE examination and medical records to the Hearing Panel.[11]

---

[10] This also implicates the constitutional-avoidance canon of statutory construction. That canon "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005).

[11] It bears repeating here that the Complaint fails to include any allegations connecting any of these alleged wrongs to the actions of any of the Individual Defendants.

27

### (5)  Cumulative error.

Plaintiff argues that the "accumulation of errors" outlined in the Complaint suggest a process that was biased and fundamentally unfair. (Compl., Doc. 1 at ¶ 137, PageID #61). However, as discussed above, Plaintiff fails adequately to allege a single error. Plaintiff was provided with a fundamentally fair hearing. The hearing was live. (*Id*. at ¶ 104, PageIDs #40-43). Plaintiff had the opportunity to be present at the hearing, give testimony, cross-examine Jane Roe, and cross-examine five witnesses. (*Id*.). Requiring UC to provide trial-type procedures would fly in the face of established due process precedent in student disciplinary cases.

### C.  Plaintiff Fails to State a Plausible Claim for Violations of O.R.C. § 111.15 and O.A.C. § 3361:40-5-05 (Counts III and IV).

In Count III, Plaintiff seeks a declaratory judgment that UC violated R.C. § 111.15 by failing to file the Title IX Policy as a rule. In Count IV, Plaintiff seeks a declaratory judgment that UC violated O.A.C. § 3361:40-5-05 by not concluding the adjudication of the allegations against Plaintiff in 90 days.  The Court should dismiss both counts because no private right of action exists for either claim and, in any event, the Court will lack supplemental jurisdiction over these claims after dismissal of Plaintiff's federal claims.

### (1) No private right of action exists for Counts III and IV.

Ohio courts have held that they "will not infer that a statute grants a private right of action unless the language of the statute indicates a clear intent that the legislature intended such a remedy." *Cirino v. Bureau of Workers' Comp*., 171 N.E.3d 840, 848 (Ohio Ct. App. 2021). There is no explicit language in R.C. § 111.15 or O.A.C. § 3361:40-5-05 allowing a private party to assert a claim for alleged violations of those provisions.

In determining whether a private right of action should be inferred from a statute, Ohio courts rely on a three-part test: (1) whether the statute creates a right in favor of the plaintiff, (2)

28

whether there is any indication of legislative intent, explicit or implicit, to create or deny a remedy through private right of action, and (3) whether it is consistent with the underlying purposes of the legislative scheme to infer such a remedy. *Anderson v. Smith*, 964 N.E.2d 468, 472 (Ohio Ct. App. 2011).

Application of this test shows that no private right of action can be inferred for either of the claims Plaintiff asserts in Counts III and IV. With respect to R.C. § 111.15, the statute does not purport to confer any rights in Plaintiff. Rather, the statute obligates certain state agencies to follow procedures with respect to the filing of rules as defined under that section. And there is no indication of legislative intent to create a right or remedy through a private right of action. In fact, the opposite is true—the Ohio Legislature has indicated, through the state declaratory judgment statute, an intent to *deny* litigants the ability to obtain declaratory judgments with respect to rules as defined in R.C. § 111.15—exactly what Plaintiff seeks to do here.

The applicable state declaratory judgment statute, R.C. § 2721.03, limits the availability of declaratory judgment actions to cases involving rules as defined in section 119.01 of the Revised Code:

> Subject to division (B) of section 2721.02 of the Revised Code, any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, *rule as defined in section 119.01 of the Revised Code*, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

(emphasis added).

29

Conspicuously missing from § 2721.03, of course, is similar authorization to bring a declaratory judgment in the context of rules as defined under § 111.15.[12] Had the legislature wished to authorize that, it would have explicitly said so, as it did for rules as defined under Chapter 119. *See O'Neal v. State*, 146 N.E.3d 605, 611 (Ohio Ct. App. 2020) (opining without deciding that causes of action raising issues pertaining to rules as defined under R.C. § 111.15 "arguably" fail to fall within the parameters of the Ohio declaratory judgment statute). It did not, and so Plaintiff has no private right of action to bring his claim under Count III.

Count IV also must be dismissed for the same reason. O.A.C. § 3361:40-5-05 is a rule, but it is not a "*rule as defined in section 119.01 of the Revised Code*." R.C. § 2721.03. Indeed, state universities in Ohio are not considered "agencies" for purposes of R.C. § 119.01, and thus are not subject to the rulemaking procedures under Chapter 119 of the Revised Code. *See Bd. of Trustees of Ohio State Univ. v. Dept. of Admin. Servs.*, 429 N.E.2d 428, 430-31 (Ohio 1981). Plaintiff's attempt to seek a declaratory judgment respecting this rule, then, must be rejected on the same grounds as those expressed above—the Ohio Legislature has not authorized declaratory judgment actions for rules as defined in R.C. § 111.15.[13]

Finally, to the extent that Plaintiff seeks to employ the federal Declaratory Judgment Act with respect to his claims in Counts III and IV, he fares no better. It is black letter law that the Declaratory Judgment Act "does not create an independent cause of action." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007).  Accordingly, "[a] request for declaratory relief is barred

---

[12] Defendants do not concede that the Title IX Policy itself is a "rule" as defined in R.C. § 111.15.

[13] In fact, Plaintiff mistakenly cites to O.A.C. § 3361:40-5-05 (UC's Student Code of Conduct). Plaintiff's hearing and appeal followed the process set forth in UC's Title IX Policy, which is not a "rule" as defined in R.C. § 111.15 or R.C. § 119.01.

to the same extent that the claim for substantive relief on which it is based would be barred." *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997).

### (2) The Court should decline to exercise supplemental jurisdiction over Counts III and IV.

The doctrine of supplemental jurisdiction set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), is codified in 28 U.S.C. § 1367. Section 1367 grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims. In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the "values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir. 1996); *see also* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it ha[d] original jurisdiction").

For the reasons stated above, Plaintiff's federal Title IX and due process claims (Counts I and II) fail as a matter of law. In the event that the Court dismisses those counts, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims in Counts III and IV.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court dismiss all counts of the Complaint.

Respectfully submitted,

*/s/ Dominick S. Gerace*
Dominick S. Gerace (0082823)
Jada M. Colon (0099048)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Telephone: (513) 381-2838
Fax: (513) 381-0205
dgerace@taftlaw.com
jcolon@taftlaw.com

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 7, 2023, I filed the foregoing using the Court's CM/ECF system, which will send electronic notice of such filing to all parties of record.

*/s/ Dominick S. Gerace*