# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JOHN NOAKES, | : | Case No. 1:23-cv-00284 |
| Plaintiff, | : | Judge Michael R. Barrett |
| v. | : | |
| THE UNIVERSITY OF CINCINNATI, *et al.*, | : | |
| Defendants. | : | |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiff's response to Defendants' Motion to Dismiss fails to convince that any of his claims should survive dismissal. Plaintiff concedes that his state law claims under Counts III and IV must be dismissed as barred under the Eleventh Amendment and the common-law doctrine of sovereign immunity. And Plaintiff has offered no real argument—only misrepresentation and misdirection—from which this Court can conclude that his Title IX and due process claims deserve a different fate.

### ARGUMENT

### I.     *Doe v. Cummins* does not save Plaintiff's due process claim.

Plaintiff relies on the unpublished Sixth Circuit opinion in *Doe v. Cummins*, 662 F. App'x 437 (6th Cir. 2016), as "dispositive" of the issue regarding whether, as is required to invoke *Ex parte Young*, Plaintiff is seeking prospective relief for an ongoing violation of federal law with respect to his due process claim. For the following reasons, that reliance is misplaced.[1]

---

[1] Plaintiff notes in his response that Defendants cited *Cummins* in their Motion to Dismiss "extensively elsewhere," but do not discuss "this aspect of the decision." (Resp. to Def. Mot. to Dismiss, Doc. 23 at 13 n.21, PageID # 422). But this is for good reason, given that the Eleventh Amendment holding in *Cummins*, as discussed herein, does not save Plaintiff's retrospective claim for relief.

1

To begin, the request for relief contained in Plaintiff's due process claim differs in material respects from the relief requested in *Cummins*. There, plaintiffs requested an injunction "prohibiting the imposition of, or reporting of, any disciplinary actions under the UC Code of Student Conduct." *Id*. at 444. The Court interpreted this request for relief as prospective in nature because "the individual defendants would *merely* be compelled to remove the negative notation from appellants' disciplinary records that resulted from the allegedly unconstitutional disciplinary process." *Id*. (emphasis added). The Court emphasized that such a claim for relief "would not require the court to grant *any* retrospective or compensatory remedy." *Id*. (emphasis added).

Here, by contrast, Plaintiff explicitly seeks retrospective relief in his due process claim. In Count II, Plaintiff states that he is seeking "an injunction prohibiting the Individual Defendant [sic] from enforcing the Sexual Misconduct Policy and Code of Student Conduct against him in a manner that violates the Due Process Clauses of the United States Constitution." (Compl., Doc. 1 at ¶ 138c, PageID # 61). Unlike the relief requested in *Cummins*, Plaintiff's request for relief would not "merely compel" the Defendants "to remove [a] negative notation." Rather, Plaintiff is asking for an injunction compelling the Individual Defendants to undo something that they have already done—i.e., enforcement of the Title IX Policy against Plaintiff in a manner he deems to be unconstitutional.

That sort of requested relief is retrospective, as discussed in cases like *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645 (S.D. Ohio 2016), and *Doe v. Bowling Green State Univ.*, N.D. Ohio No. 3:22-cv-140, 2022 U.S. Dist. LEXIS 179939 (Sept. 30, 2022). Plaintiff attempts to explain away the inconvenient holding in *Doe v. Ohio State University* by noting that it was decided before *Cummins*, and thus "is no longer good law to the extent it is contrary to *Cummins*." (Resp. to Def. Mot. to Dismiss, Doc. 23 at 14-15 n.23, PageID # 423-24). But the case is not inconsistent with

2

*Cummins* in any way because the requested relief there, like the relief requested here, was different from the relief requested in *Cummins*. *See* 219 F. Supp. 3d at 654 (noting the requested relief is a "[j]udgment … declaring that the Defendants have violated the United States Constitution, the Ohio Constitution, the Ohio Administrative Code, and Title IX.").

The same goes for *Doe v. Bowling Green State University*, which Plaintiff characterizes as "not persuasive" based on the fact that counsel "shepardized" the case and found that only one other case cited it. Setting aside the issue of whether "shepardization" should be used as a gauge to measure the persuasiveness of a particular case—especially when the case was decided only 11 months ago—Plaintiff's attempt to discredit *Doe v. Bowling Green State University* also misses the mark. The requested relief there was, like the requested relief here, retrospective relief that plaintiff attempted to save by adding a couple of allegations to provide the appearance of a prospective claim. Indeed, even though the plaintiff's complaint, on its face, requested that the defendants be enjoined from "imposing a penalty on Doe, reporting Doe's discipline, and for name-clearing," the court nevertheless held that the true nature of plaintiff's claim was to seek "relief from past procedural due process violations." 2022 U.S. Dist. LEXIS 179939 at *15-16.[2]

Plaintiff attempts the same sleight-of-hand here. In the "wherefore" clause of the complaint, Plaintiff lists among the requested remedies that he seeks an injunction "compelling Defendants to remove any negative notation from Plaintiff's disciplinary records." But, like *Doe*

---

[2] Plaintiff claims that Defendant's reliance on *S&M Brands, Inc. v. Cooper*, 527 F.3d 500 (6th Cir. 2008), is misplaced because that case was a "disguised attempt to recover money damages." (Resp. to Def. Mot. to Dismiss, Doc. 23 at 14 n.22, PageID # 423). But the usefulness of that case is not restricted to the issue of money damages. *S&M Brands* stands for the proposition that courts must "look to the substance of the legal claim, not its formal description." *Id*. at 509. The court in *Doe v. Bowling Green State University* recognized this when it cited *S&M Brands* while holding that the plaintiff actually was seeking retrospective relief despite the inclusion in the complaint of allegations regarding "continued actions." 2022 U.S. Dist. LEXIS 179939 at *15.

3

*v. Bowling Green State University*, this seemingly prospective allegation does not protect his due process claim from principles of sovereign immunity. To begin, Plaintiff makes that request in the "wherefore" clause while invoking every claim asserted in the complaint, including his claims under state law and Title IX. The relief, accordingly, is not tied specifically to the due process claim.

Moreover, *Cummins* is clear that a due process claim for injunctive relief survives scrutiny under the Eleventh Amendment only if it does not request "*any* retroactive or compensatory relief." As discussed above, Plaintiff's due process claim does exactly that. In fact, *Doe v. Bowling Green State University* features the same circumstance, where the Plaintiff sought an injunction that both prohibited the imposition of a penalty already assessed (retrospective) and prohibited the reporting of the discipline and cleared his name (prospective). In this regard, *Doe v. Bowling Green State University* is entirely consistent with *Cummins* because it holds that a claim requesting "any retrospective relief" is barred under the Eleventh Amendment.

Finally, Plaintiff fares no better with respect to his reliance on this Court's decision in *Doe v. Univ. of Cincinnati*, S.D. Ohio No. 1:16-cv-987, 2018 U.S. Dist. LEXIS 51833 (Mar. 28, 2018), which itself relied on *Cummins* for the proposition that an injunction prohibiting "further enforcement of the disciplinary sanction" is not barred by the Eleventh Amendment. *Id*. at *5. The decision does not address the circumstances here, where the Plaintiff has requested retrospective relief in his due process claim to prevent the university from doing something it has already done—enforcing the Title IX Policy against the Plaintiff.

And while it is true that the court in *Doe v. Wright State Univ.*, S.D. Ohio No. 3:16-cv-469, 2017 U.S. Dist. LEXIS 136225 (Aug. 24, 2017), also recognized that relief in the form of preventing the reporting of disciplinary sanctions can be constitutionally permissible, the court

4

there only acknowledged that after concluding that the plaintiff, like Plaintiff here, was "no longer enrolled at WSU" so "there can be no continuing or prospective application of the Code that would violate Doe's Constitutional rights." *Id.* at *15.[3] This, of course, is the very sort of relief requested by Plaintiff here—"an injunction prohibiting the Individual Defendant [sic] from enforcing the Sexual Misconduct Policy and Code of Student Conduct against him in a manner that violates the Due Process Clauses of the United States Constitution." Because Plaintiff is no longer enrolled at UC, the relief he explicitly requests in Count II is retrospective in nature. And he cannot save that claim for retrospective relief by including a general request for removal of a negative notation in the "wherefore" clause.

For the foregoing reasons, Plaintiff's claim does not satisfy the first prong of the *Ex parte Young* test. Consequently, Plaintiff's due process claim in Count II against the Individual Defendants is barred by the Eleventh Amendment and the common-law doctrine of sovereign immunity.

---

[3] Plaintiff also disingenuously asserts in his response that "[i]n addition, by vacating the disciplinary finding, Plaintiff would be reinstated as a student in good standing at UC—relief that this Court has *also* specifically held to be prospective." (Resp. to Def. Mot. to Dismiss, Doc. 23 at 15, PageID #424). Plaintiff, of course, provides no basis to support his suggestion that he would be automatically "reinstated" by UC if the Court vacates the disciplinary finding. Even so, the requirement under *Ex parte Young* is that Plaintiff actually plead a claim for prospective relief, and that feature exists in all of the cases cited by Plaintiff with respect to the remedy of reinstatement. *Roe v. Adams-Gaston*, S.D. Ohio No. 2:17-cv-945, 2018 U.S. Dist. LEXIS 185697 (Apr. 17, 2018); *Schwartz v. Univ. of Cincinnati Coll. of Med.*, 436 F. Supp. 3d 1030 (S.D. Ohio 2020); *Reeves v. Shawnee State Univ.*, S.D. Ohio No. 1:16-cv-00765, 2017 U.S. Dist. LEXIS 29674 (Mar. 1, 2017); *Saqr v. Univ. of Cincinnati*, S.D. Ohio No. 1:18-cv-542, 2020 U.S. Dist. LEXIS 163394 (Sept. 8, 2020). Here, Plaintiff states no claim for reinstatement or reenrollment and cannot rely on some assumed administrative mechanism to establish that his claim is prospective in nature.

## II. Plaintiff has failed to establish the requisite connection between the Individual Defendants and the alleged violation.

Plaintiff's claim in Count II also fails under the second prong of the *Ex parte Young* test. Plaintiff asserts that Defendants have confused the standard with respect to the "connection" requirement under *Ex parte Young* by mixing the standard for monetary claims with the standard for injunctive claims. (*See* Resp. to Def. Mot. to Dismiss, Doc. 23 at p. 16, PageID #425). Plaintiff's assertion is wrong.

While Plaintiff's response is riddled with insinuations that Defendants have ignored supposedly controlling precedent in making their arguments for dismissal, it is Plaintiff who ignores precedent with his argument. Plaintiff cites *Saqr*, 2020 U.S. Dist. LEXIS 163394, at *20, in passing, attempting to distinguish it factually in a footnote. But Plaintiff fails to mention that *Saqr* completely contradicts his argument that Defendants are operating under the wrong standard. The court in *Saqr*—in the context of a claim for injunctive relief—stated as follows:

> [A]lthough *Ex parte Young* allows for claims seeking prospective relief against state officials, not just any state official will do—as noted above, the official must have "some connection" to the ongoing federal violation. This "connection" requirement tracks, or perhaps more accurately largely dovetails with, Article III's standing requirements—injury in-fact, causation and redressability. Consistent with that notion, showing "connection" under *Ex parte Young* requires plaintiffs to allege facts showing both (1) that the state official *played some role in causing the ongoing harm* of which plaintiff complains (or that there is a reasonable prospect that the official will cause imminent future harm to the plaintiff), and (2) that an injunction against that official will be likely to provide redress.

*Id.* at *21-22 (internal citations omitted; emphasis added). In their Motion to Dismiss, Defendants rely on this standard and argue that Plaintiff has failed to plead that the Individual Defendants are "responsible for the conduct of which he complains." (Def. Motion to Dismiss, Doc. 17, at 11, PageID #323).

Still, Plaintiff asserts that Defendants have somehow confused the proper standard with the standard for "personal involvement" discussed by the Magistrate Judge in *Taaffe v. Drake*, S.D.

6

Ohio No. 2:15-cv-2870, 2016 U.S. Dist. LEXIS 57397 (Apr. 29, 2016). Not true. Indeed, even that decision vindicates the standard upon which Defendants rely in asking this Court to dismiss Plaintiff's claim. *Id*. at *17 ("All that is required is that the official be responsible for the challenged action.") (quoting *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988)).

After engaging in this distraction, Plaintiff then offers a two-sentence analysis in support of his argument that the Individual Defendants have some connection with the alleged unconstitutional act or conduct:

> The Individual Defendants have "some connection" to that alleged violation because, according to the Complaint, they are the officials who have the "responsibility for implementing the various policies and procedures UC has adopted related to student conduct and the enforcement of Title IX"
>
> \* \* \*
>
> Consistent with this analysis, the Complaint alleges that the Individual Defendants have "the authority to provide all of the injunctive relief sought in this Complaint."

(Resp. to Def. Mot. to Dismiss, Doc. 23 at 17-18, PageID #426-27). But these conclusory allegations are devoid of the requisite factual content that would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Simply stating that the Individual Defendants are responsible for implementing university policy with no explanation regarding what "implementation" consists of or how such "implementation" equates to responsibility for the alleged unconstitutional act does not meet the pleading standard necessary to survive Rule 12(b)(6) dismissal.

Nor is Plaintiff's blanket statement that the Individual Defendants have authority to provide the requested injunctive relief—without offering any facts to support that allegation—adequate to survive a motion to dismiss. The two cases cited by Plaintiff in support of his statement that this "Court has provided injunctive relief against similarly situated school officials" (Resp. to Def. Mot. to Dismiss, Doc. 23 at 18, PageID #427) did not involve the question of whether the

7

defendants had a connection to the alleged unconstitutional act. *See Doe v. N. Mich. Univ.*, 393 F. Supp. 3d 683 (W.D. Mich. 2019) (acknowledging, but not analyzing, that plaintiff could pursue a claim against defendants that had the ability to reinstate the plaintiff); *Doe v. Univ. of Cincinnati*, 223 F. Supp. 3d 704, 709 (S.D. Ohio 2016) (sovereign immunity not addressed). Even if they did, that would not absolve Plaintiff of the requirement to plead sufficient facts *in this case*.

And *Roe v. Adams-Gaston* does not help Plaintiff either. There, the Court held that university employees were sufficiently connected to the alleged unconstitutional act since the employees supervised the hearing panel officers and OSU's code of conduct delegated all "final responsibility and authority for the discipline of all students … to the vice president of student life, whose office is also charged with responsibility for promulgation of rules governing student conduct." 2018 U.S. Dist. LEXIS 185697 at *41-42. Those facts have not been alleged in this case. Plaintiff's only allegations regarding the authority or responsibility of the Individual Defendants consist of conclusory allegations and recitation of job titles of the Individual Defendants. That is not sufficient to survive a Rule 12(b)(6) motion.

### III. Plaintiff has waived his claims under Counts III and IV.

Plaintiff concedes that his claims in Counts III and IV are barred by the Eleventh Amendment and the common-law doctrine of sovereign immunity. (Resp. to Def. Mot. to Dismiss, Doc. 23 at 19, PageID #428). Accordingly, any argument to the contrary is waived. Those claims should be dismissed.

### IV. Plaintiff has failed to state a plausible Title IX erroneous outcome claim.

In an attempt to rescue his insufficiently pled Title IX erroneous outcome claim, Plaintiff asserts that *Cummins* no longer accurately states the law—a sharp departure from his previous exclusive reliance on that case for purposes of sovereign immunity. Plaintiff claims that *Doe v. Oberlin College*, 963 F.3d 580 (6th Cir. 2020), has now "clarified" the standard for establishing

8

the required "particularized causal connection" between the outcome of the proceeding and sex bias. But Plaintiff's characterization of *Doe v. Oberlin College* is wholly inaccurate.

There, the Sixth Circuit simply pointed out that the defendant had misread precedent, noting that Sixth Circuit precedent has never required that, to be "particularized," the "effects of the causal bias must be limited to the plaintiff's own case." *Id*. at 586. This "clarification" does not change the law as articulated in *Cummins*. Even after *Doe v. Oberlin College*, a plaintiff is still required to allege "facts supporting an inference of sex bias in his particular proceeding." *Id*. And Defendants are not arguing anything different.

Plaintiff's mischaracterization of the law and Defendants' arguments constitutes another attempt to turn away this Court's attention from Plaintiff's real problem—that he has not pled an adequate erroneous outcome claim under the pleading standards of *Iqbal*. In his response, Plaintiff suggests that he has alleged "clear procedural irregularities" that are sufficient to plead his Title IX claim. But as discussed in Defendants' Motion to Dismiss (and this reply) with respect to Plaintiff's due process claim, none of Plaintiff's allegations establishes the existence of a procedural irregularity during Plaintiff's disciplinary proceeding. And contrary to Plaintiff's suggestion, his allegations look nothing like *Oberlin*, where (1) the plaintiff was not informed of the specific allegations against him during the investigation, (2) the college failed to notify the parties regarding the delay, (3) the Title IX coordinator did not respond to any of plaintiff's concerns, (4) plaintiff's appointed Title IX advisor did not attend the whole hearing, and (5) the hearing panel failed to comment on the complainant's contradictory story. *Id*. at 587. For these same reasons, Plaintiff's "merits of the decision" argument, based on *Oberlin* again, also does not support a conclusion that Plaintiff has pled a reasonable inference of gender bias. None of the

9

procedural issues raised by Plaintiff cast any articulable, much less grave doubt, on the accuracy of the proceeding's outcome.

And aside from his attempt to manufacture "procedural irregularities" where none exists, the only fact identified by Plaintiff that he alleges amounts to "an inference of sex bias" is that "UC has been the subject of a number of investigations by the Department of Education." (Compl., Doc. 1 at ¶ 26, PageID #13). But in *Doe v. Baum*, the Sixth Circuit stated that "no circuit court has ever held that a student plausibly states a claim that deficiencies in his disciplinary proceedings were motivated by gender bias where the only fact that he alleges to show such bias is general pressure on the university to adequately address allegations of sexual assault." 903 F.3d 575, 590-91 (6th Cir. 2018). This Court should not be the first to do so.

Indeed, the cases relied upon by Plaintiff to support the adequacy of his allegations regarding "pressure" on UC are distinguishable. *Doe v. Oberlin College* involved active ongoing systemic investigations by the Department of Education of the college's policies, procedures, and practices with respect to its sexual harassment and sexual assault complaint process during the accused students' hearing, as well as statistical evidence that showed that the university found every male student accused of sexual assault responsible. 963 F.3d at 587. In *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018), the university was not only facing pressure from the government to vigorously combat sexual assault on college campuses, but it had also recently been sued for failing to zealously prosecute sexual assault cases. Additionally, the plaintiff presented statistical evidence that showed that the university found almost every male student accused of sexual assault guilty for the following several years. *Id.* at 594.

On the other hand, as discussed in the Motion to Dismiss, Plaintiff's allegations regarding UC consist of contradictory allegations of bias that could be construed as favoring both

10

complainants or respondents, and which, in any event, focus on complainant/respondent bias rather than gender bias.[4] Further, unlike the investigations and criticisms in *Doe v. Oberlin College* and *Doe v. Miami University*, which were contemporaneous with the disciplinary proceedings in those cases, Plaintiff's allegations regarding the supposed criticisms of UC took place years prior to Plaintiff's own proceedings. Accordingly, Plaintiff fails to allege any facts sufficient to support a plausible inference of gender bias.

### V. Plaintiff fails to state a plausible procedural due process claim.

#### A. Delay.

Plaintiff once again mischaracterizes Defendants' arguments in the Motion to Dismiss, claiming that Defendants are arguing that the disciplinary proceedings were not unduly delayed because Defendants complied with UC's policies. (Resp. to Def. Motion to Dismiss, Doc. 23 at 20, PageID # 429). That is not what Defendants have argued.

---

[4] In a footnote, Plaintiff states that "Defendants suggest that they are merely pro-victim, not biased on the basis of gender." (Resp. to Def. Mot. to Dismiss, Doc. 23 at 33 n.46, PageID # 442). This is a complete mischaracterization. Defendants do not suggest that they are pro-victim. Defendants suggest that Plaintiff has pled facts that wholly fail to establish any particular bias on the part of Defendants, whether pro-victim, pro-respondent, or pro-any-sex. And contrary to Plaintiff's suggestion, his allegations regarding any pro-complainant or pro-respondent bias on the part of UC are not sufficient to plead gender bias. As is typical in his response, Plaintiff relies on case law to suggest otherwise, but fails to tell the Court the complete story about those cases. Plaintiff cites *Schwake v. Az. Bd. of Regents*, 967 F.3d 940 (9th Cir. 2020), and *Does 1-2 v. Regents of Univ. of Minn.*, 999 F.3d 571 (8th Cir. 2021), for the proposition that courts now reject the argument that allegations regarding pro-complainant or pro-respondent bias are not sufficient to establish gender bias. But in each of those cases, the courts simply found that the plaintiffs *had* pled facts that could establish gender bias. *Schwake*, 967 F.3d at 948 (noting that the complaint contained allegations regarding "gender-based decisionmaking *against men* in sexual misconduct disciplinary cases.") (emphasis added); *Univ. of Minn.*, 999 F.3d at 578-79 (noting that the amended complaint contained allegations of pressure to charge *male* football players with sexual misconduct). These cases do not stand for the proposition that a complaint sufficiently pleads gender bias when, like Plaintiff's complaint here, it contains allegations that would establish only pro-complainant or pro-respondent bias.

11

Rather, Defendants argue that, boiled down, Plaintiff's undue delay allegation asks this Court to decide for the first time that a university is required to provide a student with notice of allegations before the reporting student decides to file a formal complaint. Plaintiff suggests that because UC was "aware" of the allegations against Plaintiff for over four months before the formal notice was filed, procedural due process mandated that some sort of notice be provided even though no formal process had been initiated to trigger a notice. Plaintiff can point to no authority providing support for such a rule.

Plaintiff was provided notice of allegations three weeks after the filing of the Formal Complaint and almost six months before the hearing. Though Plaintiff refuses to acknowledge it in his response, the proper analysis of whether notice is sufficient for due process purposes involves consideration of the amount of time the student had to prepare for the hearing. *Cummins*, 662 F. App'x at 447. Plaintiff was provided ample notice in time to prepare for the hearing. And despite Plaintiff's protestations that he "had forgotten important details," the fact remains he was aware of Jane Roe's allegations almost immediately after the incident. (Compl., Doc. 1 at ¶¶ 56-57, PageID # 22).

### B.  Insufficiency of notice.

Plaintiff also misrepresents Defendants' argument with respect to Plaintiff's allegations of insufficient notice. Plaintiff tells the Court that Defendants have argued that "'nothing in the law requires notice in disciplinary proceedings' **to specify the nature of the alleged misconduct**." (Resp. to Def. Mot. to Dismiss, Doc. 23 at 22, PageID # 431). But Defendants actually argue that "nothing in the law requires notice in disciplinary proceedings (and even criminal indictments) **to**

12

**include that level of detail**." (Mot. to Dismiss, Doc. 17 at 21, PageID # 333). The difference between the two statements could not be more apparent.[5]

Defendants stand by their actual argument. While Plaintiff appears to seek a level of detail in the Notice that eclipses the notice requirements for criminal indictments, the information specified in the Notice that Plaintiff received was more than adequate to inform Plaintiff of the nature of the allegations against him. Contrary to Plaintiff's suggestions, the Notice unquestionably complied with the Title IX requirements. Title 34, Code of Federal Regulations, § 106.45(b)(2) provides as follows:

> Notice of the allegations of sexual harassment potentially constituting sexual harassment as defined in § 106.30, including sufficient details known at the time and with sufficient time to prepare a response before any initial interview. Sufficient details include the identities of the parties involved in the incident, if known, the conduct allegedly constituting sexual harassment under § 106.30, and the date and location of the alleged incident, if known.

Here, UC provided Plaintiff with notice that Jane Roe (identity of the party involved) had alleged that, on September 10, 2021, at approximately 11:49 pm, at 2707 Clifton Ave. (date and location), Plaintiff engaged in vaginal intercourse with Roe without her consent (the conduct allegedly constituting sexual harassment). (Compl., Doc. 1 at ¶ 64, PageID #23).

Plaintiff's allegations accordingly fail to establish how the notice he received was insufficient for due process purposes. All of the cases cited by Plaintiff as analogous are factually distinguishable. In *Doe v. Brandeis University*, the court held that notice that a student engaged in "numerous inappropriate, nonconsensual sexual interactions" over a nearly two-year period was

---

[5] Notably, Plaintiff opens this section of his response by citing the well-known rule that notice satisfies due process where the student had meaningful time to prepare for a hearing. (Resp. to Def. Mot. to Dismiss, Doc. 23 at 21, PageID #430). But then, Plaintiff closes the section by arguing that Defendants' focus on "whether a student had adequate time to prepare for a hearing is misplaced because it ignores that the investigation is an essential part of the process." (*Id.* at 22, PageID #431). Defendants urge the Court to follow the well-known rule.

"vague and open-ended." 177 F. Supp. 3d 561, 603 (D. Mass. 2016). The court stated, "[u]nder the circumstances, the lack of specific notice of the charges may have been particularly prejudicial. This was not a dispute about a single isolated event; it involved a lengthy and apparently tangled relationship that went on for nearly two years." *Id*. The same cannot be said here. Plaintiff engaged in vaginal intercourse with Jane Roe once. Plaintiff was put on notice of the exact day, time, and occurrence that Jane Roe alleged was nonconsensual.

Plaintiff argues that, in *Nokes v. Miami University,* this Court held that a student is not adequately notified of the charges against them where the notice cites to a section of a policy that contemplates at least two different situations. No. 1:17-cv-482, 2017 U.S. Dist. LEXIS 136880, at *36 (S.D. Ohio Aug. 25, 2017). Such a narrow reading of that case is misguided. In *Nokes*, this Court held that Miami University failed to provide the plaintiff with adequate notice to prepare for the hearing because: (1) the notice directed plaintiff to the student code of conduct containing multiple definitions of sexual misconduct; (2) the notice used limiting language and identified only allegations of use of force, not intoxication; (3) the new theory of intoxication was presented to the plaintiff one week before the hearing; and (4) plaintiff pointed to additional evidence that he would have used at the hearing had he been given adequate notice. *Id*. The same facts are not present in this case. The Notice stated that Plaintiff engaged in vaginal intercourse with Jane Roe without her consent. (Compl., Doc. 1 at ¶ 64, PageID #23). On November 10, 2022, Plaintiff was provided with a draft investigative report that contained the specifics of Jane Roe's allegations— nearly three months prior to the hearing. (Compl., Doc. 1 at ¶ 94, PageID #36). And unlike the situation in *Nokes*, the draft report did not introduce a new theory that was not present in the Notice.

Plaintiff fares no better with *Sterrett v. Cowan*, 85 F. Supp. 3d 916, 923 (E.D. Mich. 2015), or *Doe v. Univ. of Notre Dame*, No. 3:17CV298-PPS/MGG, 2017 U.S. Dist. LEXIS 69645 (N.D.

Ind. May 8, 2017), which both were later vacated. In *Sterrett v. Cowan*, the court held that the university failed to provide sufficient notice where the university told the student that it received an "undefined student complaint against him." 85 F. Supp. 3d at 923. Similarly, in *Doe v. University of Notre Dame*, the court held that the university failed to provide sufficient notice where a letter to the plaintiff merely provided that he violated the school's sexual assault policy. 2017 U.S. Dist. LEXIS 69645, at *29. The court also noted that a 350-page report provided to plaintiff ten days prior to the hearing was insufficient time for the plaintiff to prepare in light of the report's volume. *Id*. Comparing the Notice in this case to these cases is comparing apples to oranges.

    **C.**  **Use of biased decision-makers.**

Plaintiff contends that UC is not entitled to a presumption of honesty and integrity because "the cases cited by UC involve committees composed of educators" and the "presumption has never been extended to adjudications performed by for-profit private companies." (Resp. to Def. Mot. to Dismiss, Doc. 23 at 24, PageID #433). The Sixth Circuit has never limited the presumption to educators. Rather, it stated "[i]n the *university setting*, *a disciplinary committee* is entitled to a presumption of honesty and integrity, absent a showing of actual bias." *McMillan v. Hunt*, No. 91-3843, 1992 WL 168827 at *2 (6th Cir. July 21, 1992) (citing *Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 254 (8th Cir. 1985)) (emphasis added). In *McMillan*, the committee included a student representative and was not composed solely of educators. *Id*. The student on the committee in that case was not "screened like [a] juror[]" and does not have "tenure to insulate them from consequences of an unpopular decision," like Plaintiff demands is necessary. (Resp. to Def. Mot. to Dismiss, Doc. 23 at 24, PageID #433). Still, the Sixth Circuit applied the presumption and found no bias. *McMillan v. Hunt*, 1992 WL 168827 at *2.

Plaintiff acknowledges that providing opinions, training, or legal representation to UC by the Hearing Panel and Appeals Panel does not amount to bias. Rather, Plaintiff contends that the Hearing Panel and Appeals Panel have a financial stake in the outcome because they "derive significant income from training to UC" and "thus are unwilling to take criticize investigation or take any other any actions to 'upset' the Title IX Office or its staff." (Resp. to Def. Mot. to Dismiss, Doc. 23 at 25, PageID #434). But these allegations fail to demonstrate a financial stake in the *outcome* of Plaintiff's matter. And Plaintiff fails to explain how deciding that Plaintiff did not violate the Title IX Policy would "upset" UC.

Plaintiff's argument that a conflict of interest exists because "the Hearing Panel and the Appeals Panel were required to rule on matters related to the investigation in this case and the actions of the Title IX Office" is incorrect. *Id.* The Hearing Panel and Appeals Panel were only required to rule on one thing: whether Plaintiff violated the Title IX Policy. Despite Plaintiff's suggestion, the Hearing Panel and Appeals Panel were not tasked with deciding whether the investigation was proper.

Finally, any allegation that training materials given to decision-makers *might* reveal bias is further insufficient to state a claim. "Legal conclusions will not carry a complaint past the motion-to-dismiss stage in the absence of supporting factual allegations, and a plaintiff whose complaint is deficient is not entitled to a fishing expedition for facts to support it." *Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 698 (W.D. Ky. 2016).

### D.     Alleged cross-examination and evidentiary errors.

First, Plaintiff argues that "a student's due process rights are violated when a decision maker relies on information from an outside source without disclosing this information to the student prior to the hearing." (Resp. to Def. Mot. to Dismiss, Doc. 23 at 26, PageID #435). But the cases cited by Plaintiff do not support that proposition. In *Doe v. Miami University*, the Sixth

16

Circuit held that the university failed to sufficiently explain the evidence against a student where the university refused to provide the student with his entire disciplinary file. 882 F.3d at 603. In *Endres v. Northeast Ohio Medical University*, the Sixth Circuit held that the university failed to sufficiently explain the evidence against a student where a statistical analysis was presented during a portion of the hearing that the student was not permitted to attend, which "alone establishes a due process violation." 938 F.3d 281, 301 (6th Cir. 2019). Unlike *Endres,* this case does not involve an allegation that UC withheld "incontrovertible" evidence against Plaintiff. The Hearing Panel made clear that the blood alcohol calculation was an "educational tool" and used the information only in conjunction with its consideration of testimony at the hearing, which on its own supported the Hearing Panel's determination. (Doc. 1-4, PageID #134 – 142).

Second, Plaintiff argues that his due process rights were violated because the Hearing Panel considered statements from witnesses who were not present at the hearing or subject to cross-examination. But Plaintiff only speculates that this occurred given that the Hearing Panel itself explicitly stated in its decision that it did no such thing. (Doc. 1-4, PageID #132; Doc. 1-6, PageID #156). Further, Plaintiff fails to cite a single case supporting his argument that such reliance would amount to a due process violation. That is because it would not, as the Hearing Panel could consider hearsay if it wished. *Univ. of Cincinnati*, 872 F.3d at 405 (quoting *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005)).

Third, Plaintiff argues that the "clearest due process violation[]" stems from the investigator's failure "to obtain evidence in the school's possession concerning the benefits or accommodations that Jane Roe received as a result of her claim to have been a victim of sexual assault." (Resp. to Def. Mot. to Dismiss, Doc. 23 at 28, PageID #437). Plaintiff asks this Court to hold for the first time that a university is always required to disclose benefits or accommodations

17

received by victims of sexual assault to satisfy due process. But nothing in the law requires that. Indeed, *Doe v. Ohio State University*, 311 F. Supp. 3d 881 (S.D. Ohio 2018), relied upon by Plaintiff, does not mandate such a disclosure. There, the court was tasked with deciding whether defendants violated the plaintiff's constitutional right to procedural due process when the plaintiff was denied the ability to effectively cross-examine Jane Roe on her potential motive to lie about the sexual assault—to obtain accommodative measures that would allow her to stay in medical school. *Id.* at 889. The court was clear that its decision was based on that "particular situation," and the court did not hold that the disclosure of information regarding accommodations was required to satisfy due process. *Id.* at 892 ("This particular situation may indeed demand the procedural protection of the university either correcting a false statement or providing the accused with the necessary information to impeach a critical witness."). Here, by contrast, Plaintiff alleges no facts whatsoever indicating that any accommodations received by Jane Roe are relevant to the credibility of her complaint or testimony. Accordingly, he has pled no factual basis from which he can establish that any failure to obtain evidence of accommodations or benefits violated his due process rights.

Fourth, Plaintiff also relies on *Doe v. Ohio State*, 219 F. Supp. 3d 645 (S.D. Ohio 2016), to argue that Defendants were required to at least "ask" for Jane Roe's medical records. The argument seems to be that Plaintiff could have used those records to impeach Jane Roe. But again, nothing in the law required Defendants to make such a request for information (indeed, the law forbids it in 34 C.F.R. § 106.45(b)(5)(i))—and Jane Roe herself testified it was *her* decision not to

18

release the records. Further, as highlighted in the Motion to Dismiss, Plaintiff had ample opportunity to cross-examine Jane Doe on her testimony regarding the medical records.[6]

### E.  Cumulative error.

Plaintiff's cumulative error argument is that "John Noakes was treated like a suspect and the investigator refused to seek evidence that might undermine the credibility of Jane Roe." (Resp. to Def. Mot. to Dismiss, Doc. 23 at 30, PageID #439). As detailed above and in Defendants' Motion to Dismiss, the record supports no such conclusion. Plaintiff received a fundamentally fair hearing.

### CONCLUSION

For the reasons set forth above and those in Defendants' Motion to Dismiss, Defendants respectfully request that the Court dismiss all counts of the Complaint.

Respectfully submitted,

*/s/ Dominick S. Gerace*
Dominick S. Gerace (0082823)
Jada M. Colon (0099048)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Telephone: (513) 381-2838
Fax: (513) 381-0205
dgerace@taftlaw.com
jcolon@taftlaw.com

*Attorneys for Defendants*

---

[6] *Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019), and *Doe v. Syracuse University*, No. 5:19-cv-1467, 2020 U.S. Dist. LEXIS 85708 (N.D.N.Y. May 15, 2020), do not support the proposition that UC was required to seek and obtain Jane Roe's medical records. In *Doe v. Purdue University*, the Court held that the hearing panel's failure to speak with the victim, read the victim's statement, or otherwise assess the victim's credibility constituted a violation of due process. 928 F.3d at 664. In *Doe v. Syracuse University*, the court held that allegations that the university failed to *disclose* multiple pieces of *exculpatory* evidence was sufficient to state an erroneous outcome claim. 2020 U.S. Dist. LEXIS 85708 at *24. Those situations are not present here.

## **CERTIFICATE OF SERVICE**

I certify that on August 7, 2023, I filed the foregoing using the Court's CM/ECF system, which will send electronic notice of such filing to all parties of record.

/s/ Dominick S. Gerace