**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| JOHN NOAKES, | : | Case No. 1:23-cv-00284 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | |
| v. | : | |
| | : | |
| THE UNIVERSITY OF CINCINNATI, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff uses his reply brief as an opportunity to raise several issues for the first time in this case. First, Plaintiff submits and relies upon the affidavit of KC Johnson to support an allegation that the decision-makers in Plaintiff's Title IX proceedings received biased training. But the Court should strike Johnson's affidavit because: (1) Plaintiff's filing of Johnson's affidavit violates the Federal Rules of Civil Procedure and this Court's local rules; (2) Plaintiff's actions have resulted in unfair prejudice to Defendants; and (3) Plaintiff again has failed to comply with expert disclosure rules under Fed. R. Civ. P. 26(a)(2). Even if the Court chooses not to strike the affidavit, the affidavit should be accorded no evidentiary weight because it offers only generalized conclusions about training bias, relies on outdated information, and fails to address the actual training materials utilized by the Hearing Panel members—which reflect an unbiased approach to Title IX decision-making.

Second, Plaintiff argues in his reply that the Court may infer bias on the part of the Hearing Panel due to the involvement of TNG employee Brett Sokolow, who, after being removed from the panel at Plaintiff's request prior to the hearing, participated in editing the Hearing Panel's outcome letter. But like KC Johnson's affidavit, Plaintiff's argument regarding Sokolow is

inapposite. The record is clear that Sokolow merely served in an administrative role in making edits to the outcome letter, did not participate in any manner in the Hearing Panel's deliberations or decision-making process, and had no decision-making authority of any kind with respect to the outcome of the proceeding. For these reasons, as discussed more fully below, and for the reasons set forth in Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, the Court should deny Plaintiff's motion.

## ARGUMENT

**I.  The Court should strike Johnson's affidavit.**

The Court should strike the affidavit of KC Johnson. It is simply too late in the game for Plaintiff to submit a new affidavit in support of his motion for preliminary injunction. Plaintiff was able to cobble together two affidavits at the time that he filed his motion, yet now seeks reprieve to file a third in support of his reply brief. But other than noting that the affidavit was disclosed to Defendants during discovery, Plaintiff makes no effort to demonstrate why he should be allowed to submit additional evidence during a stage of the litigation where he is entitled only to reply to Defendant's arguments.

In fact, Plaintiff's actions violate the rules of this Court. S.D. Ohio Civ. R. 7.2(d) provides:

> When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, *the primary memorandum* of the party relying upon such evidence. Evidence used to support a reply memorandum *shall be limited to that needed to rebut the positions argued in memoranda in opposition*.

(emphasis added); *see also* Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion."); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002) ("Fed. R. Civ. Pro. 6's requirement that cause be shown for affidavits not attached to the original motion,

2

is designed to prevent the moving party from springing new facts on the nonmoving party 'when it is too late for that party to contest them.'").

Despite the clear language of this rule, Plaintiff submits an affidavit with his reply brief that is *not* limited to rebuttal of the position argued in Defendants opposition. Indeed, nothing in Defendant's opposition memorandum addresses the topic raised in Johnson's affidavit—i.e., that the decision-makers received biased training. Rather, the discussion of bias in Defendant's opposition addresses only Plaintiff's allegation that the decision-makers were biased due to the contractual relationship between their employer and UC—i.e., the bias argument that Plaintiff actually makes in his complaint and motion. Consequently, because Johnson's affidavit goes well beyond rebutting Defendants' opposition memorandum, the affidavit violates Local Rule 7.2(d). The Court should strike the affidavit on this basis alone.

Further, Plaintiff's suggestion that Defendants have not been prejudiced by the submission of the affidavit is incorrect. While Plaintiff produced Johnson's affidavit to Defendants in the course of discovery,[1] Defendants were not required to assume that Plaintiff would use the affidavit in connection with these preliminary proceedings.[2] This is particularly true given the dubious contents of the affidavit, which are more thoroughly addressed in Section II below. Indeed, at the time he produced the affidavit, Plaintiff already had filed his motion, was entitled only to a reply brief, and was subject to Local Rule 7.2(d). Defendants were entitled to assume that Plaintiff would follow this Court's rules.

---

[1] Plaintiff produced the Johnson affidavit on July 23, 2023, well after the deadline for the submission of discovery requests had lapsed, and only one-month before the deposition cut-off. This hardly provided time sufficient for Defendants to identify and disclose, if necessary, a rebuttal expert in a manner compliant with the case scheduling order and civil rules.

[2] Plaintiff's surprise tactics placed Defendants in an impossible position. Defendants could not address the affidavit in their response because Plaintiff ultimately could have chosen not to present the affidavit to the Court at all. And had Defendants noticed Johnson's deposition upon receiving the affidavit, Plaintiff likely would have claimed that Defendants, by doing so, invited the submission of evidence from Johnson.

Finally, the Court should strike Johnson's affidavit because it suffers from the same problem as the other two affidavits submitted by Plaintiff in support of his motion for preliminary injunction—it fails to comply with the notice requirements of Fed. R. Civ. P. 26(a)(2).[3] Plaintiff responds that the disclosure requirements under Rule 26(a)(2) apply only to trials (and cites certain cases for that proposition), but other cases suggest the opposite. *E.g.*, *Hawaii Pacific Health*, 560 F. Supp. 2d at 996-97 (granting request to strike affidavit for failure to identify under Rule 26(a)(2) where affidavit filed with reply in support of motion for summary judgment). And the specific circumstance present in this case—where the Plaintiff has employed "gotcha" tactics to present expert evidence to the Court—makes application of the rule especially appropriate here.[4]

For the foregoing reasons, the Court should strike Johnson's affidavit and decline to entertain any argument made by Plaintiff in reliance on that affidavit. *E.g.*, *Bishop v. Oakstone Academy*, 477 F. Supp. 2d 876, 889 (S.D. Ohio 2007) ("it is well established that a moving party may not raise new issues for the first time in its reply brief.").

---

[3] Plaintiff claims throughout his reply that the affidavits of Dr. Plotnick and Scott O'Reilly are "unrebutted" or "uncontested" and that Defendants have only argued that the affidavits are inadmissible. Not true. Defendants set out in their response numerous reasons why the self-serving opinions and conclusions contained in both affidavits hold no evidentiary weight in light of the actual evidence in this case. *See, e.g.*, Def's Memorandum in Opposition at 22 ("Plotnick's opinion does not apply to, or account for, the testimony of the witnesses hear by the Hearing Panel"); *id* at 26 ("while Plaintiff complains that the delay made it difficult to defend himself—and submits an affidavit from his advisor claiming the same—the fact is that Plaintiff took no steps to preserve evidence after learning, only two days after the incident, that Roe had alleged that he sexually assaulted her."); *id*. at 27 ("with respect to Plaintiff's allegation that the hearing panel failed to draw a negative inference, there is no authority for the proposition that due process requires that such an inference be applied."); *id*. at 28 ("Given this testimony, it is unclear how Plotnick could opine that the medical records were 'likely to provide highly relevant evidence that is necessary for Plaintiff to prepare an adequate defense'"). Because the actual evidence in this case clearly rebut Plotnick's and O'Reilly's conclusions, there is no need for rebuttal affidavits. Indeed, "opinion evidence" such as Plotnick's and O'Reilly's "is generally considered of a low grade, and not entitled to much weight against positive testimony of actual facts." *Ray, to Use of Miller v. City of Philadelphia*, 344 Pa. 439, 441 (1942).

[4] Ironically, in the course of introducing a brand new affidavit with his reply brief, Plaintiff declares that Defendants have "forfeited the ability to challenge" the conclusions in that affidavit because certain training materials were not available on UC's website. However, as discussed below, Plaintiff received the relevant training materials from TNG during the course of discovery and was able to depose the chair of the Hearing Panel, Joseph Vincent, regarding those materials. Nothing has impeded Plaintiff from making any argument he wishes regarding those materials, and Defendants are entitled to address any arguments so made.

**II.     The Court should accord no evidentiary weight to Johnson's affidavit.**

In the event that the Court decides against striking Johnson's affidavit, it should accord the affidavit no evidentiary weight. As a so-called "expert witness," Johnson's opinion is subject to the standard set out in Fed. R. Evid. 702. That rule requires, among other things, that an expert opinion be helpful to the Court in understanding evidence or determining a fact in issue, and be based on sufficient facts or data. Johnson's affidavit fails under this standard.

In the affidavit, Johnson opines as follows:

> The failure of UC to make the trainings undertaken by all decisionmakers on its website prior to the hearings as required by its policy and 34 C.F.R. 106.45(b)(10)(i) is highly significant in assessing bias. The disclosure of the trainings attended by decisionmakers is necessary to allow students to determine if the decisionmakers received training that was free of bias. Much of the training provided to Title IX decisionmakers between 2011-2020, often under pressure from the Department of Education, has been biased.

This opinion is entitled to no weight because it does not help the Court understand the evidence or determine a fact in issue. In his affidavit, Johnson recites the history of Title IX training, suggests that such training was, as a general matter, biased during the time period of 2011-2020, and then concludes that UC's failure to provide the decision-makers' training materials on its website "is highly significant in assessing bias" because the "disclosure of the trainings attended by decision-makers is necessary to allow students to determine if the decision-makers received training that was free of bias."

But Johnson's affidavit fails to account for the fact that Plaintiff actually has been provided with the training materials used by the decision-makers in this case. In fact, Plaintiff extensively questioned the chair of the Hearing Panel, Joseph Vincent, regarding those training materials. (*See* Vincent Dep., Doc. 29 at 13:10-15:1-4, 45-61; PageID #499, 507-11). In this regard, Johnson's affidavit is entirely unhelpful because it offers generalized conclusions regarding bias in Title IX

5

training during 2011-2020 (before the 2023 hearing in this case) and wholly fails to address the actual Title IX training materials used by the decision-makers in this case.

Specifically, Plaintiff was provided with TNG/ATIXA training modules from 2020 and 2023 entitled "Title IX Hearing Officer and Decision-Maker Training & Certification Course." (*See* Exhibits to Vincent Dep., Docs. 29-10 and 29-11; PageID #633-946). Vincent testified to receiving and teaching this training, and also testified that the other Hearing Panel members received the same training. (Vincent Dep., Doc. 29 at 46:3-5, 60:21-25, 61:1-7; PageID #507, 510-11). Moreover, these training materials wholly contradict the generalized suggestion in Johnson's affidavit that the decision-makers in this case received training that would bias them against the Plaintiff. For example, the 2023 training materials provided the following instructions to decision-makers:

- "Decision-maker's role is to impartially uphold the integrity of the process." (Doc. 29-10 at 2, PageID #653).

- "Remember, you have no 'side' other than the integrity of the process, and you represent the process." (*Id*. at 22, PageID #654)

- "Title IX regulations require that published grievance procedures include a statement of a presumption of non-responsibility for the Respondent until a final determination is made. Hopefully this is not new; evidence should have always driven determinations." (*Id*. at 40, PageID #672).

- "How to serve impartially, by avoiding prejudgment of the facts at issue, conflicts of interest, and bias." (*Id*. at 42, PageID #674).

- "Existing mandate for impartial resolutions with fair procedures: Impartial, objective, unbiased, neutral independent." (*Id*. at 73, PageID #707).

- "If you feel you cannot hear a case impartially, notify Title IX Coordinator immediately" (*Id*. at 79, PageID #711).

- "Ensure an impartial decision that is free of substantive bias." (*Id*. at 157, PageID# 789).

6

These materials render irrelevant Johnson's conclusions regarding the history of Title IX training. Indeed, noticeably absent from Plaintiff's reply brief is any citation to Vincent's deposition or the actual training materials used by the decision-makers in this case that would establish the receipt of biased training.[5]

What's more, Johnson's affidavit is not based on sufficient facts or data. Not only does the affidavit fail to account for Vincent's deposition and the training materials referenced therein, but the facts and data that Johnson uses in his affidavit to suggest that the decision-makers here received biased training are completely outdated. Plaintiff's disciplinary hearing occurred in February 2023. Johnson's affidavit spends pages discussing training and guidance from the Department of Education that occurred several years before the hearing, and concludes that "[m]uch of the training provided to Title IX decisionmakers between 2011-2020 . . . has been biased." The Court can easily reject Johnson's invitation to apply his conclusions about the period between 2011-2020 to a hearing that occurred in 2023.[6]

---

[5] Rather than citing to evidence of training bias in the actual training materials utilized by the decision-makers, Plaintiff inserts additional new information into his reply consisting of comments from Vincent that appeared in a New York Times article from September 2023. A fair reading of the comment attributed to Vincent (much of which consists of paraphrasing by the article's author rather than direct quotation) suggests a neutral opinion regarding cross-examination—*i.e.*, meant to test credibility, but not particularly valuable at getting to the truth. But even if it were not neutral, the comment in no way demonstrates bias against the Plaintiff. As Defendants have briefed, a decision-maker is not "disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute[.]" *Welch v. Barham*, 635 F.2d 1322, 1326 (8th Cir. 1980). And despite Plaintiff's claim that the "questioning of the Hearing Panel of Jane Roe suggested that the Panelists had made up their minds," (Pl.'s Reply Br. at 16), a review of the entire hearing shows that Vincent allowed extensive cross-examination of Jane Roe and applied the same standards to the questioning of Jane Roe as he applied to the questioning of Plaintiff.

[6] Notably, Johnson's affidavit discusses the 2020 Title IX regulations only in the context of the requirement to make training materials available on a website, but fails to acknowledge, as Plaintiff does in his motion, that those regulations also made significant changes that favored the rights of respondents. (Pl.'s Motion, Doc. 3, at 3, PageID #178 (noting that the 2020 Title IX Final Rule "prescribes a transparent grievance process that treats the accused as innocent until proven guilty, requires the school to state a standard of evidence, and requires the school to provide a hearing process where accused students may question adverse witnesses.")). Surely, these changes in 2020 impacted the training of Title IX decision-makers (as evidenced by the training materials attached to Vincent's deposition), but Johnson makes no attempt to discuss the effect of the new 2020 regulations on the purported training bias that he concludes existed between 2011 and 2020.

For the reasons stated above, should the Court choose not to strike Johnson's affidavit, it should nevertheless accord it no evidentiary weight.[7]

### III. Brett Sokolow's involvement in editing the Hearing Panel's written decision is not evidence of a due process violation.

Plaintiff's reply relies on a new argument in support of his contention that the Hearing Panel was biased against him. Plaintiff suggests that the Court should infer bias because Brett Sokolow, a TNG employee that UC excused from the panel at the request of Plaintiff prior to the hearing, continued to be involved in the matter unbeknownst to UC. Specifically, Plaintiff claims that by "edit[ing], provid[ing] substantive comments on, and ultimately 'approv[ing]' the decision prepared by the Hearing Panel," (Pl.'s Reply Br. at 18), Sokolow somehow contributed to the bias of the Hearing Panel. The argument is as counterfactual as it is incoherent.

As Joseph Vincent testified, Sokolow's involvement was minimal and purely administrative:

Q: When you say he reviewed it what – what exactly was his role?

A: Well, Brett and other partners essentially provided internal review function and in this matter or matters like this it would be to ensure that the panel's rationale is sufficient and robust and it actually supports the determination that they have made.

\* \* \* \*

Q: Were you concerned about the role that he played in this mater given that he had been recused?

A: No.

Q: Did you make any inquiries about why he had been recused?

A: No.

---

[7] In his reply, Plaintiff states that Defendants "fail to present this Court with any evidence rebutting the inference that TNG Consulting and Bricker & Eckler would be influenced by their significant work representing UC and universities," (Pl.'s Reply Br. at 15). But for the reasons stated in Defendants' opposition and herein, it is Plaintiff who has failed to produce one shred of evidence establishing actual bias, and it is Plaintiff who maintains the burden of proof.

8

> Q: Did you ever talk to him and say, "Hey, maybe you shouldn't have been involved in this if you were recused'?
>
> A: No. His – He wasn't involved I think in the manner that you're using the word, so our internal review process isn't normally one that we would announce externally as a course of business. As I said, that - - that internal review just ensures that the outcome letter meets regulatory requirements for sufficiency and specificity related to the panel's decision in this case.
>
> \* \* \* \*
>
> Q: Okay. And then he writes, "Approved as edited." What does that mean?
>
> A: Typically in the review process on the second round it will be grammatical things, word choice stuff, so he's just saying, "If you accept these edits it's good to go."
>
> Q: Mr. Sokolow is the - - is he the owner of the company or the top of the company? What's his role?
>
> A: I believe so, yeah.
>
> Q: Is he considered your boss?
>
> A: Yes.
>
> Q: And so he indicates he approved it. Was his role to approve all panel findings?
>
> A: No.
>
> Q: So why did he approve the panel findings in this case?
>
> A: Well, I think that's an inaccurate question. I think he approved the form that the panel's decision was presented in in terms of its, as I said, sufficiency, specificity. The decision of the panel is the panel's, and so Brett's job is just to ensure that the work product reflecting that decision meets the regulatory expectations or sufficiency and specificity.

(Vincent Dep., Doc. 29 at 26:9-16, 30:15-25, 31:1-7, 33:25, 34:1-24; PageID #502-504).

Vincent testified that Sokolow did not have access to the investigative report in the case or the hearing transcript. (Vincent Dep., Doc. 29 at 41:1-24; PageID # 506). Vincent also explained that:

9

> it wasn't [Sokolow's] job to critique the rationale or to determine if we made the right decision. It was his job as a function of the internal review to make sure it was well supported, and so regardless of the outcome that wasn't his role. . . I think that's why the recusal doesn't really have the same effect on this process as you might anticipate because Brett nor anyone else was involved in the deliberations or the panel's decision. None of those decisions were altered or changed.

(*Id.* at 42:4-9, 43:18-23; PageID #506). Later in the deposition, Vincent confirmed that Sokolow played no role in the Hearing Panel's decision regarding responsibility or sanction:

> Q: Did Brett have any influence on the panel's decision?
>
> A: No.
>
> Q: When Brett made edits to the written decision had the panel already decided whether the respondent violated the applicable UC policy?
>
> A: Yes, and the appropriate sanctions.

(*Id.* at 120:23-25, 121:1-4, PageID #525-26).

Like Vincent's discussion of training materials (and much other testimony that Plaintiff glosses over while quoting selectively in his reply), Plaintiff conveniently ignores all of Vincent's testimony regarding Sokolow's role. While Plaintiff wishes he could manufacture a controversy here, nothing that he points to establishes that any of the actual hearing Panel Members were biased against Plaintiff when making their determination.

## CONCLUSION

For the reasons above, and those set forth in Defendants' Memorandum in Opposition, Plaintiff's Motion for Preliminary Injunction should be denied.

Respectfully submitted,

*/s/ Dominick S. Gerace*
Dominick S. Gerace (0082823)
Jada M. Colon (0099048)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Telephone: (513) 381-2838
Fax: (513) 381-0205
dgerace@taftlaw.com
jcolon@taftlaw.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on October 26, 2023, I filed the foregoing using the Court's CM/ECF system, which will send electronic notice of such filing to all parties of record.

*/s/ Dominick S. Gerace*