# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JOHN NOAKES, | Case No. 1:23-cv-284 |
| Plaintiff, | Judge Michael R. Barrett |
| v. | |
| UNIVERSITY OF CINCINNATI, et al., | **ORDER** |
| Defendants. | |

This matter is before the Court on the motion for preliminary injunctive relief filed by Plaintiff John Noakes, (Doc. 3), and the response by Defendants University of Cincinnati ("UC"); Alecia Trammer, Director of the Office of Equity, Inclusion, and Community Impact; Adrienne Lyles, Title IX Coordinator; Bleuzette Marshall, Vice President for Equity, Inclusion, and Community Impact; and Ashleigh Wade, Director of Student Conduct and Community Standards, (Doc. 38). After conducting expedited, limited discovery in anticipation of a hearing on the motion for a preliminary injunction, the parties appeared before the Court on February 15, 2024. (*See* Doc. 46). For the following reasons, the Court will deny the motion for a preliminary injunction.

**I. Background**

On March 30, 2022, the Assistant Director of Fraternity and Sorority Life at UC submitted an online report to the Office of Gender Equity & Inclusion ("OGEI"), indicating that a student, identified as Jane Roe, accused Noakes of sexually assaulting her at a

1

fraternity party in September 2021. (Doc. 1, PageID 22). OGEI investigator Morgan Shaw conducted an intake meeting with Roe on April 6, 2022, but Roe did not submit a signed formal complaint to OGEI until July 26. (*Id.*). Shaw met with Roe again two days after that to discuss the complaint. (*Id.*).

On August 18, a Notice of Commencement of OGEI Investigation was sent to Noakes, informing him of the allegation "that on September 10, 2021 . . . [he] engaged in vaginal intercourse with [Roe] without [Roe's] consent." (Doc. 30, PageID 1064). The letter informed Noakes that the alleged sexual assault was determined to fall within the scope of UC's Title IX Sexual Harassment Policy and provided an overview of the investigation process, as well as an outline of his rights and responsibilities. (*Id.*, PageID 1064-65). Noakes responded on August 26, expressing his intention to cooperate with the investigation, but requesting additional information, including a copy of the original complaint. (Doc. 1, PageID 24). While Noakes and Shaw continued to correspond, Shaw conducted interviews with Roe and several other witnesses. (*Id.*, PageID 27-36).

Eventually, on November 10, Shaw provided Noakes with a draft investigative report. (*Id.*, PageID 36). Noakes responded on November 22, admitting that he and Roe "did engage in sexual intercourse," but "vehemently disagree[ing] that the sexual intercourse was not consensual." (*Id.*, PageID 37). Noakes also stated that Roe "did not seem to be impaired nor under the influence of any drugs," and expressed in a follow-up letter that he believed "the report was unreasonably delayed[,] which made it difficult for [him] to obtain witnesses and other evidence to support [his] version of the events." (*Id.*).

On January 10, 2023, Noakes was informed that the matter was referred for a misconduct hearing. (*Id.*, PageID 39). At the February 20 hearing, a panel consisting of

2

employees from TNG Consulting reviewed Shaw's final report, heard testimony from witnesses, and examined both Noakes and Roe. (*Id.*, PageID 40-43). Noakes received a letter from Trammer on March 23, explaining that the panel unanimously found him responsible for violating UC's Title IX Sexual Harassment Policy, "specifically related to the prohibition against Sexual Assault (Forcible Rape)". (*Id.*, PageID 132). The panel recommended that Noakes be expelled from UC. (*Id.*, PageID 143).

Noakes timely appealed the result, arguing in particular that (1) the panel impermissibly reviewed "highly prejudicial" statements from witnesses who did not appear at the hearing and therefore could not be cross-examined; (2) he had not received sufficient and timely notice of the allegations against him; (3) the investigative process was unduly prolonged, resulting in prejudice; (4) the hearing panel committed multiple errors; and (5) the entire investigation and hearing process had been fundamentally unfair. (*Id.*, PageID 145-53). However, on May 5, an appeals panel consisting of employees from InCompliance Consulting issued a thorough written opinion upholding the result of the hearing in its entirety. (*Id.*, PageID 154-67).

Noakes subsequently brought the underlying suit, raising claims under Title IX of the Education Amendments of 1972 and 42 U.S.C. § 1983.[1] Specifically, Noakes contends that "[c]lear irregularities in UC's response to the allegations of sexual misconduct permit a plausible inference of sex discrimination," and Defendants violated his due process rights by (1) delaying the investigation and adjudication of the matter; (2) failing to provide adequate notice of the allegations; (3) using biased outside consultants as decisionmakers; and (4) generally conducting hearings that were fundamentally unfair.

---

[1] Noakes voluntarily dismissed two additional counts in his complaint. (Doc. 39).

3

(Doc. 1, PageID 54, 58-61). He argues that he "will suffer reputational and other harm both on and off campus" in the absence of injunctive relief. (Doc. 3, PageID 176).

## II. Preliminary Injunction Standard

Preliminary injunctions are governed by Federal Rule of Civil Procedure 65. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Poffenbarger v. Kendall*, 588 F.Supp.3d 770, 782 (S.D. Ohio 2022) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). A movant's burden is higher than that required to survive a motion to dismiss or even a motion for summary judgment. *Enchant Christmas Light Maze & Mkt. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020); *see also Doe v. Knox Cnty. Bd. Of Educ.*, No. 22-5317, 2022 U.S. App. LEXIS 22897, at *3 (6th Cir. Aug. 17, 2022).

The Court looks to four factors when reviewing a motion for a preliminary injunction: "(1) whether there is a likelihood of success on the merits of the plaintiff's claim; (2) whether the plaintiff will suffer irreparable harm if the injunction is not granted; (3) whether others would be harmed by granting the injunction; and (4) whether the public good is served by issuing the injunction." *Doe v. Univ. of Cincinnati*, 223 F.Supp.3d 704, 709 (S.D. Ohio 2016). However, "where there is no likelihood of either success on the merits or irreparable harm, an injunction in unwarranted—regardless of the showing on the other factors." *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 366 (6th Cir. 2022).

**III.    Analysis**

Noakes points to *Doe v. Univ. of Cincinnati* and two other cases from this district—*Roe v. Adams-Gaston*, No. 2:17-CV-945, 2018 U.S. Dist. LEXIS 185697 (S.D. Ohio Apr. 17, 2018), and *Nokes v. Miami Univ.*, No. 1:17-CV-482, 2017 U.S. Dist. LEXIS 136880 (S.D. Ohio Aug. 25, 2017)—in which the Court granted preliminary injunctions prohibiting educational institutions from suspending or expelling students who alleged that their due process rights had been violated by school disciplinary proceedings. (Doc. 3, PageID 189). To that end, Noakes contends that a preliminary injunction is proper here because he satisfies each of the applicable criteria. Defendants counter that Noakes's procedural due process claim cannot succeed on the merits because he seeks only retrospective relief and was afforded adequate constitutional protections during the disciplinary process.

As an initial matter, the Court notes that "Eleventh Amendment immunity 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments. . . .'" *Doe v. Miami Univ.*, 247 F.Supp.3d 875, 883 (S.D. Ohio 2017) (quoting *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012)). Because UC is a public university in the State of Ohio, it qualifies as an arm of the state and is therefore immune from suit. *See id.* However, "[s]uits for injunctive and declaratory relief against state officials acting in their official capacities . . . are permitted in limited circumstances." *Doe v. Cummins*, 662 F. App'x 437, 443-44 (6th Cir. 2016) (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1974)). Those limited circumstances include suits seeking prospective injunctive relief from state officials. *Doe v. Miami Univ.*, 247 F.Supp.3d at 883.

5

Just as in *Cummins*, the relief Noakes seeks here would typically "be barred given its retroactive nature." 662 F. App'x at 444. Indeed, Defendants note that Noakes "does not plead for reinstatement and does not express a desire to re-enroll at UC," and argue that "the request for relief is not prospective because it merely seeks to right a purported past wrong rather than correcting an ongoing violation of federal law." (Doc. 38, PageID 1755-56). But the Sixth Circuit has been abundantly clear on this question:

> Appellants are requesting an injunction against the individual defendants in their official capacity "prohibiting the imposition of, or reporting of, any disciplinary actions under the UC Code of Student Conduct." If successful, this claim would not require the court to grant any retroactive or compensatory remedy. Rather, the individual defendants would merely be compelled to remove the negative notation from appellants' disciplinary records that resulted from the allegedly unconstitutional disciplinary process. This is nothing more than prospective remedial action.

*Cummins*, 662 F. App'x at 444 (internal citations omitted).

Thus, although UC may be immune from suit in this instance, Noakes is not barred from seeking prospective injunctive relief and any ancillary declaratory relief designed to remedy a continuing violation of federal law. The Court will therefore assess whether Noakes has met the burden of showing that circumstances demand a preliminary injunction.

### A. <u>Likelihood of Success on the Merits</u>

"To establish a procedural due process claim, a plaintiff must show that (1) it had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014). An adverse disciplinary decision can implicate a protected liberty interest, particularly in the higher

6

education context when such a decision can "impugn [a student's] reputation and integrity." *Cummins*, 662 F. App'x at 445. Consequently, "the question remains what process is due." *Id.* at 446 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court instructed that courts must balance three factors in determining the level of process due under the Fourteenth Amendment: "(1) the nature of the private interest affected by the deprivation; (2) the risk of an erroneous deprivation in the current procedures used, and the probable value, if any, of additional or alternative procedures; and (3) the governmental interest involved, including the burden that additional procedures would entail." *Cummins*, 662 F. App'x at 446. Specifically, "[i]n the school-disciplinary context, an accused student must at least receive the following pre-expulsion: (1) notice of the charges; (2) an explanation of the evidence against him; and (3) an opportunity to present his side of the story before an unbiased decisionmaker." *Id.*

Noakes first argues that Defendants were "aware of the allegations" against him when the OGEI report was filed on March 31, 2022, and he was therefore prejudiced by undue delay because Shaw did not send him notice that an investigation had commenced until August 18. (Doc. 1, PageID 59). To that end, Noakes also contends that Defendants "failed to provide adequate notice of the allegations against [him] prior to initiating an investigation," (*id.*), and when they did, he "had forgotten important details and lost the ability to obtain physical evidence," (Doc. 23, PageID 429).

But, as is most often the case, context is critical here: although the OGEI report was filed on March 31, Jane Roe did not submit a signed formal complaint to UC officials until July 26. The notice sent to Noakes on August 18, 2022, stated clearly that he was

7

accused of engaging in nonconsensual intercourse with Jane Roe; it also included a specific address and a specific date and time. (*See* Doc. 30, PageID 1064). In other words, the notice was timely and provided Noakes with "sufficient notice of the charges against him and a meaningful opportunity to prepare for the hearing," which was not held for another six months. *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005); *see Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399-400 (6th Cir. 2017) (explaining that, under *Mathews*, notice need only meet this threshold).

Noakes next alleges that his hearing panel and appeals panel were impermissibly made up of biased outside consultants from organizations "that routinely provide opinions on behalf of schools that investigations were adequate in response to challenges by students found to have engaged in sexual misconduct." (Doc. 3, PageID 194-95). He contends further that "[t]he staff and lawyers who work for these firms may have preconceived notions about Title IX issues and are almost certainly concerned with upholding the interests of the educational institutions that pay their bills, not the rights of students." (*Id.*, PageID 195).

While due process requires unbiased and impartial decisionmakers, "[i]t is also well established that school-disciplinary committees are entitled to a presumption of impartiality, absent a showing of actual bias." *Cummins*, 662 F. App'x at 449. That presumption is only overcome by a showing of "personal animosity, illegal prejudice, or a personal or financial stake in the outcome" on the part of decisionmakers, *Doe v. Wright State Univ.*, No. 3:16-CV-469, 2017 U.S. Dist. LEXIS 136225, at *23 (S.D. Ohio Aug. 24, 2017) (quoting *Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 254 (8th Cir. 1985)), and "[a]ny alleged prejudice on the part of the [decisionmaker] must be evident from the record and

8

cannot be based in speculation or inference," *Cummins*, 662 F. App'x at 450 (quoting *Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987)).

Noakes asserts that "[t]he questioning by the Hearing Panel of Jane Roe suggested that the Panelists had made up their minds," perhaps in part "[b]ecause much of the training provided to Title IX decisionmakers under pressure from the Department of Education, has been biased." (Doc. 41, PageID 1820). But as Defendants note, these inferences of bias and allegations of a financial interest in the outcome of Noakes's proceedings are not supported by the record. The Court ultimately finds no specific facts indicating the presence of a pre-existing bias or financial interest giving rise to a procedural due process violation.

Noakes next alleges that the hearing panel impermissibly relied on witness statements from individuals who were not present and could therefore not be subjected to cross-examination. Specifically, he cites the panel's statement that it reviewed "all available evidence, including interviews, witness statements, and evidence provided to the investigator." (Doc. 29, PageID 590). As for the panel's clarification that it "did not rely on any statements [from absent witnesses] in reaching a determination regarding responsibility," (*id.*), Noakes dismisses it as a "conclusory assertion" that "cannot be the end of the matter," (Doc. 23, PageID 436).

But Noakes does not present any authority standing for the proposition that the Court is unable to look to the panel's assertion that it did not consider statements from witnesses who could not be cross-examined. In any event, even if the Court was unable to rely on that representation, the Court's own review of the panel's unredacted decision reveals not a single direct reference to statements from any of the absent witnesses. The

actual language of the report and summary of the evidence on which the panel relied undermines Noakes's argument that the panel's statement cannot be taken at face value.

In a similar vein, Noakes argues that the panel relied on previously undisclosed and unreliable evidence in the form of an online blood-alcohol level calculator. He cites the appeals panel's own conclusion that "it was inappropriate for the [hearing panel] to use an outside website to calculate blood alcohol content without providing the parties the opportunity to review and provide feedback on the information." (Doc. 35, PageID 1728). And although it is certainly true that due process requires the disclosure of evidence, *Doe v. Miami Univ.*, 882 F.3d 579, 603 (6th Cir. 2018), the appeals panel was not referring to the evidence in a due process context. Rather, the procedural error arose in the context of UC's own policies, and "a mere failure by the University to follow its own internal guidelines does not give rise to a procedural-due-process violation." *Id.*

Regardless, the hearing panel viewed the information "as an educational tool only," which reflected that intoxication could manifest in "nausea, slow reflexes, staggering and slurring of words, and reduced mental capacity," as well as "[l]oss of consciousness and memory impairment." (Doc. 29, PageID 595). The hearing panel considered the information "in light of the testimony provided by" Jane Roe and other witnesses, and did not base any conclusions on it. This is reinforced by the hearing panel chair's statement that the information "happened to align with the party and witness testimony about how [Jane Roe] described her experience related to the impact of that [alcohol] consumption and what other witnesses observed related to how she . . . reacted to what she consumed." (*Id.*, PageID 525). Ultimately, when he was asked more directly in a follow-

up question whether the panel's decision would have remained the same in the absence of the calculator information, the chair said that it would have. (*Id.*).

Finally, Noakes claims due process violations stemming from Defendants' alleged failure to obtain evidence undermining Jane Roe's credibility; specifically, their failure to obtain or produce Jane Roe's medical records, as well as their alleged failure "to obtain evidence in the school's possession concerning the benefits or accommodations that Jane Roe received as a result of her claim to have been a victim of sexual assault." (Doc. 3, PageID 200). As to the undisclosed benefits argument, Noakes cites to *Doe v. Ohio State Univ.*, 219 F.Supp.3d 645 (S.D. Ohio 2016), for the proposition that such evidence is critical in "a case where the panel's decision hinged on a credibility decision." However, the facts are easily distinguishable here.

In that case, the plaintiff argued that the alleged victim misrepresented to the hearing panel "that she did not receive any benefit from her decision to report the alleged sexual assault," when in fact "she was [already] threatened with expulsion from medical school and might be able to remain in school if she claimed to be the victim of a sexual assault." *Doe v. Ohio State Univ.*, 311 F.Supp.3d 881, 890-91 (S.D. Ohio 2018). But Defendants are correct when they saw there is no blanket rule that a university is always required to disclose benefits or accommodations received by victims of sexual assault to satisfy due process, or even always required to make such disclosures in cases that turn on the credibility of the parties.

Indeed, the Court in *Doe v. Ohio State Univ.*, noted that "[t]he Due Process Clause is flexible; it calls for such procedural protections as each particular situation demands." *Id.* at 892. Noakes can only speculate as to whether Jane Roe received some unspecified

benefit when she reported the alleged misconduct, thus *potentially* undermining her credibility or aiding his defense. This "particular situation," then, did not require Defendants to disclose whether Jane Roe received accommodations, because Noakes puts forth no factual basis that any such accommodations (if they were even extended) were relevant and led Jane Roe to falsify her report or her testimony before the hearing panel.

The Court also finds *Doe v. Ohio State Univ.* to be instructive when assessing Noakes's argument that Defendants violated his due process rights when Shaw did not obtain Jane Roe's medical records and the hearing panel did not draw a negative inference from Jane Roe's decision not to produce those records. First, "[t]he procedural-due-process analysis focuses on the decision-maker, not the investigator," and "[d]ue process provides, not a guarantee of a perfect investigation, but notice and an opportunity to be heard by a neutral decisionmaker." *Doe v. Ohio State Univ.*, 219 F.Supp.3d at 657. The focus on Shaw is therefore misplaced.

As for the hearing panel's treatment of Jane Roe's medical records, there is simply no authority demanding that an adverse inference be drawn when an alleged victim of sexual misconduct opts not to produce their medical records to an investigator or a hearing panel. *See Doe v. Hamilton Coll.*, No. 6:21-CV-436, 2023 U.S. Dist. LEXIS 225299, at *70 (S.D.N.Y. Dec. 19, 2023). Moreover, any attempt to obtain those records without Jane Roe's consent would have clearly run afoul of Title IX. Whether such a burden would be considered minimal under *Mathews*, then, is a question that the Court need not reach here.

Noakes has not demonstrated a substantial likelihood of success on the merits of his procedural due process claim, and preliminary injunctive relief is therefore inappropriate. *See Union Home Mortg. Corp.*, 31 F.4th at 366. He was provided with notice that was both adequate and timely, he had access to an advisor, he was able to present a defense and meaningfully cross-examine witnesses before an unbiased panel, and he was permitted to appeal an unfavorable outcome; in other words, "the opportunity to be 'heard at a meaningful time and in a meaningful manner.'" *Cummins*, 662 F. App'x at 446 (quoting *Mathews*, 424 U.S. at 333).

## IV. Conclusion

For the foregoing reasons, the motion for a preliminary injunction, (Doc. 3), is **DENIED**.

**IT IS SO ORDERED.**

              */s/ Michael R. Barrett*
              Michael R. Barrett
              United States District Judge