**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: October 25, 2024

Ms. Jada Colon
Mr. Dominick Salvatore Gerace II
Taft, Stettinius & Hollister
425 Walnut Street
Suite 1800
Cincinnati, OH 45202

Mr. Joshua Adam Engel
Engel & Martin
4660 Duke Drive
Suite 101
Mason, OH 45040

Re: Case No. 24-3388, *John Noakes v. UC, et al*
Originating Case No. : 1:23-cv-00284

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0427n.06

No. 24-3388

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 25, 2024
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| JOHN NOAKES, <br>     Plaintiff - Appellant, <br><br> v. <br><br> THE UNIVERSITY OF CINCINNATI; ALECIA TRAMMER; ADRIENNE LYLES; BLEUZETTE MARSHALL; ASHLEIGH WADE, <br>     Defendants - Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO <br><br> OPINION |

Before: SUTTON, Chief Judge; READLER and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. The University of Cincinnati expelled John Noakes after finding that he sexually assaulted another student. Noakes sued the university and several administrators for denying him a fair hearing in violation of his Fourteenth Amendment due process rights. He moved for a preliminary injunction to expunge his disciplinary record. The district court denied his motion. Because Noakes is unlikely to succeed on his due process claim, we affirm.

**BACKGROUND**

John Noakes was a student at the University of Cincinnati (UC). On September 10, 2021, his fraternity hosted a party. There, he met Jane Roe, another UC student.[1] Later that night, they had sex. Noakes says Roe consented. Roe says she didn't. A few days later, Noakes learned from a fraternity leader that Roe had accused him of sexual assault.

---

[1] Both Noakes and Roe proceed anonymously.

No. 24-3388, *Noakes v. Univ. of Cincinnati*

On March 30, 2022, Roe met with an administrator overseeing Greek life at UC. She revealed that Noakes sexually assaulted her at a fraternity party. The administrator reported Roe's allegations to UC's Office of Gender Equity & Inclusion (OGEI) that same day. OGEI administers UC's Title IX Sexual Harassment Policy, which covers claims of sexual assault. A week later, OGEI Investigator Morgan Shaw met Roe in person.

Roe filed a formal Title IX complaint against Noakes on July 26. Shaw emailed Noakes on August 18 notifying him of Roe's formal complaint. Her email shared that Roe had accused him of "engag[ing] in vaginal intercourse" without her consent on September 10, 2021, in violation of the Title IX Policy. Compl. R. 1, PageID 23. The email also included a link to the Title IX Policy. The policy treats nonconsensual sex as sexual assault. It also states that "incapacitation," including "impairment resulting from drugs or alcohol," negates consent. *See* Title IX Pol'y, R. 1-3, PageID 105–06.

After Roe filed her formal complaint, Shaw began investigating her claims. Shaw interviewed Noakes, Roe, and nine other witnesses. At his September 22 interview, Noakes declined to say anything except that his sex with Roe "was consensual, and she was not incapacitated." Appellees' Br. at 7.

On November 10, Shaw provided Noakes with her Preliminary Investigative Report, which summarized her witness interviews. The preliminary report contained Roe's version of events, including that she had been drinking, may have been drugged, and remembered only "flashes" of the incident. *Id.* at 6. Other witnesses recalled Roe appearing intoxicated at the party. Noakes responded to the preliminary report in writing, denying Roe's claims. On December 6, Shaw sent Noakes an 82-page Final Investigative Report. Three days later, Alecia Trammer, who coordinates UC's Title IX proceedings, informed Noakes that the school would hold a disciplinary hearing.

No. 24-3388, *Noakes v. Univ. of Cincinnati*

That hearing occurred on February 20, 2023. All three members of the disciplinary panel were consultants from a private consulting company. Noakes and Roe appeared with their advisors,[2] testified, presented opening and closing statements, and cross-examined witnesses, including each other. Just over a month later, the panel issued a 14-page report summarizing its findings. The panel determined Noakes violated the Title IX Policy on sexual assault and recommended expulsion. It found that although Roe likely hadn't been drugged, she was intoxicated to the point of incapacitation and therefore could not consent. Noakes appealed the decision. The appellate panel, this time comprising consultants from a different company, denied his appeal. UC expelled Noakes. He enrolled elsewhere, graduated, and secured a full-time job.

Noakes sued the university and four of its administrators: Trammer, Bleuzette Marshall, Adrienne Lyles, and Ashleigh Wade. Noakes alleged that by depriving him of a fair investigation and hearing, the university violated Title IX and Ohio law, and the administrators violated his Fourteenth Amendment due process rights. On the due process claims, Noakes moved for a preliminary injunction requiring the administrators—whom for ease, we refer to collectively as "UC"—to expunge his disciplinary record. After limited discovery, the district court denied Noakes's motion, holding that his due process claim was unlikely to succeed on the merits. He timely appealed.

## ANALYSIS

**I.  Standard of Review**

On a motion for a preliminary injunction, courts must consider whether the movant has a strong likelihood of success on the merits and whether an injunction would prevent irreparable

---

[2] The Title IX Policy allows parties to have "advisors" assist them at interviews and hearings. *See* R. 1-3, PageID 117. Advisors need not be attorneys, but Noakes selected an experienced former prosecutor as his advisor.

-3-

No. 24-3388, *Noakes v. Univ. of Cincinnati*

injury, avoid substantial harm to others, and serve the public interest. *See City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (per curiam). We review the district court's ultimate decision for abuse of discretion but examine its legal conclusions "with fresh eyes." *Arizona v. Biden*, 40 F.4th 375, 381 (6th Cir. 2022). When the movant shows no likelihood of success, "an injunction is unwarranted—regardless of the showing on the other factors." *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 366 (6th Cir. 2022).

## II.     Likelihood of Success

Our inquiry starts (and ends) with Noakes's likelihood of success on his due process claim. Although the "exact outlines of process" required under the Due Process Clause vary between cases, universities must provide students facing expulsion with "at least" notice, an "explanation of the evidence," and an opportunity to present their side before an unbiased decisionmaker. *See Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399–400 (6th Cir. 2017). Noakes claims UC offered neither effective notice nor a fair hearing, and we consider his arguments in turn. But before that, we address and reject UC's contention that the Eleventh Amendment bars Noakes's suit.

### A.     Eleventh Amendment

Noakes seeks prospective injunctive relief, so the Eleventh Amendment does not shield UC from suit. The Eleventh Amendment immunizes states from suits seeking to redress past harms. *Block v. Canepa*, 74 F.4th 400, 406 (6th Cir. 2023). But it does not prohibit suits for prospective injunctive relief against state officials acting in their official capacities. *See Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 733 (6th Cir. 2022) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Noakes does not—and could not—sue the university itself under this exception. *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 864 (6th Cir. 2024). Rather, he wants the named administrators to

No. 24-3388, *Noakes v. Univ. of Cincinnati*

expunge his disciplinary record, which "is, as a practical matter, prospective relief." *Ashford v. Univ. of Mich.*, 89 F.4th 960, 969 (6th Cir. 2024). As a result, the Eleventh Amendment is no bar.

UC tries to recast Noakes's claim as retrospective, but it misapprehends his theory of harm. UC highlights a line from the complaint stating Noakes is "entitled to an injunction" preventing UC from unlawfully "enforcing the Sexual Misconduct Policy and Code of Student Conduct against him." Compl., R. 1, PageID 61. Yet Noakes does not seek compensation or any other backwards-facing remedy. *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016). Instead, he asks to clear his disciplinary record and prevent any "further disciplinary proceedings" that violate his rights. Compl., R. 1, PageID 64. Noakes has alleged that the stain unconstitutionally placed on his record "will continue to affect" him. *See Ashford*, 89 F.4th at 969. The Eleventh Amendment allows the "prospective remedial action" he seeks. *Cummins*, 662 F. App'x at 444.

Contrary to UC's assertions, Noakes has sufficiently connected the defendant administrators to his injuries. A plaintiff seeking to enjoin state officials need only establish that they have "some connection" to the constitutional violation or an ability to grant the relief sought. *See Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013). Trammer, Lyles, and Marshall administer the Title IX Policy, and Wade maintains UC's disciplinary records. These individual defendants therefore have "some connection" to Noakes's allegations.

    **B.**    **Notice**

Turning to Noakes's due process claims, we first conclude that UC provided him adequate notice. In this context, notice must include "a statement of the specific charges and grounds which, if proven, would justify expulsion." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005) (citation omitted). It needs to afford the student "a meaningful opportunity to prepare for the hearing." *See id.* (citation omitted).

No. 24-3388, *Noakes v. Univ. of Cincinnati*

In August 2022, UC emailed Noakes with the date, time, and location of the alleged incident. It informed Noakes that Roe had formally accused him of having nonconsensual sex with her in violation of the Title IX Policy. It also summarized UC's grievance process and Noakes's rights. In turn, the Title IX Policy—linked to in the notice—stated on the second page that a person cannot "consent" while "incapacitated." Title IX Policy, R. 1-3, PageID 104. On the next page, it explained that "incapacitation" includes "impairment resulting from drugs or alcohol." *Id.* at PageID 105. Read with the Title IX Policy it linked to, UC's August 2022 email notified Noakes that Roe had accused him of nonconsensual sex, and that incapacitation might be at issue. The email may by itself have satisfied due process's notice requirement. *See Flaim*, 418 F.3d at 638–39.

But even assuming UC's initial email alone did not suffice, the preliminary report, which Noakes received on November 10, 2022, did. It noted that Roe drank alcohol before the alleged assault and also believed she had been drugged. It also summarized Shaw's interviews of other witnesses, who recalled Roe appearing intoxicated. The report placed incapacitation at the heart of Noakes's case. It afforded him over three months to prepare his defense. Thus, Noakes is unlikely to succeed on the claim that he lacked fair notice. *See Martinson v. Regents of Univ. of Mich.*, 562 F. App'x 365, 373–74 (6th Cir. 2014) (holding that notice one month before disciplinary hearing provided adequate time to prepare); *Cummins*, 662 F. App'x at 447 (same); *Doe v. Miami Univ.*, 882 F.3d 579, 603 (6th Cir. 2018) (three weeks).

Noakes's counterarguments fall flat. He contends UC's initial notice should have specified that Roe thought she had been too intoxicated to consent. And he says he faced a "moving target," as Roe claimed someone drugged her, while the hearing panel ultimately found she was too drunk to consent. Appellant's Br. at 30. But UC's email and the preliminary report let Noakes know that the hearing would center on Roe's capacity, as possibly influenced by drugs or alcohol. That was

No. 24-3388, *Noakes v. Univ. of Cincinnati*

enough to give him a "meaningful opportunity" to formulate a defense, and due process did not require the university to share more. *Flaim*, 418 F.3d at 639.

Nor has Noakes established that any delays amounted to due process violations. Noakes first claims UC should have notified him in March 2022, when it learned Roe had accused him of sexual assault. But due process requires "notice of the charges," and until Roe filed a formal complaint on July 26, Noakes faced no disciplinary charges. *Flaim*, 418 F.3d at 639. Second, Noakes argues UC improperly waited three weeks to notify him after Roe's formal complaint, but his reliance on *Doe v. University of Cincinnati* is misplaced. *See* 872 F.3d 393. In that case, the university waited five months to inform the respondent after receiving a formal complaint, much longer than the three weeks here. Even then, we did not rest our due process holding on that delay. *Id.* at 403. Third, Noakes suggests UC's notice provided him too little time to prepare for his "initial interview." Appellant's Br. at 28. Yet due process required only that UC offer him "a meaningful opportunity to prepare for the hearing," not for every investigative step along the way. *Flaim*, 418 F.3d at 639 (citation omitted). Finally, Noakes contends that UC missed the deadlines imposed by its own Title IX Policy. But even if that's true, Noakes must show that it "result[ed] in a procedure which itself impinge[d]" on his due process rights. *Id.* at 640 (quoting *Bates v. Sponberg*, 547 F.2d 325, 329–30 (6th Cir. 1976)). As explained below, he has not done so.

### C. Hearing

UC also provided Noakes a constitutionally adequate hearing. Due process requires that a student facing expulsion receive a hearing at which they can "respond, explain, and defend" themselves before unbiased decisionmakers. *Id.* at 635 (citation omitted); *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 566 (6th Cir. 2011). If the hearing turns on witness credibility, the student must receive "an opportunity for cross-examination." *Doe v. Baum*, 903 F.3d 575, 581

No. 24-3388, *Noakes v. Univ. of Cincinnati*

(6th Cir. 2018). Noakes and his advisor—an experienced attorney—presented a defense and cross-examined witnesses at his hearing. The panel issued a 14-page report outlining the evidence, weighing conflicting pieces of testimony, and concluding that Noakes sexually assaulted Roe in violation of UC's policies. Now, Noakes contends his disciplinary panel improperly favored UC, relied on undisclosed evidence, and prevented him from effectively cross-examining Roe. None of these challenges holds weight.

### 1. Panel Bias

Noakes has not shown that his disciplinary panel was biased against him. We presume the impartiality of school-disciplinary committees absent evidence of actual bias. *See Miami Univ.*, 882 F.3d at 601 (quoting *Cummins*, 662 F. App'x at 449). Bias must be "evident from the record" not just "based in speculation or inference." *Cummins*, 662 F. App'x at 450 (quoting *Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987)).

Noakes presents two purported examples of bias, but both miss the mark. First, a 2023 New York Times article quoted one of the disciplinary panelists on the value of cross-examination during campus sexual-assault hearings. The panelist stated that cross-examination is supposed to test credibility but is "basically worthless at getting to the truth." Appellant's Br. at 50. Noakes claims this statement reveals bias, but it favors neither Roe nor Noakes, as they both cross-examined witnesses, including each other. And simply taking research positions on sexual misconduct proceedings does not establish a reasonable inference of bias. *Miami Univ.*, 882 F.3d at 601. Second, Noakes contends the panelists "help[ed] Roe with her story" by repeatedly asking her to clarify her testimony. Appellant's Br. at 50–51. Once again, Noakes hasn't demonstrated those questions cut against him. Indeed, the panel ultimately discounted parts of Roe's testimony, including her belief that she had been drugged. And the panel asked Noakes the same kinds of

No. 24-3388, *Noakes v. Univ. of Cincinnati*

clarifying questions, so bias is not "evident from the record." *Cummins*, 662 F. App'x at 450 (quoting *Nash*, 812 F.2d at 665).

Noakes responds that he does not need "proof of actual partiality," but he misapprehends our decision in *Utica Packing Co. v. Block*. 781 F.2d 71, 77 (6th Cir. 1986). *See* Appellant's Br. at 48–49. There, we did not require proof of actual bias because those prosecuting the case also served as its adjudicators, resulting in an "intolerably high" risk of unfairness. *Id.* at 77–78 (quoting *Withrow v. Larkin*, 421 U.S. 35, 57 (1975)). Noakes identifies no structural unfairness here. True, upon his request, UC replaced one of its initial panelists, Brett Sokolow. And unbeknownst to UC, Sokolow still provided feedback on the panel's final report. But Noakes has established neither that Sokolow showed bias, nor that he influenced the case's outcome. Beyond that, Noakes at most alleges that panelists worked for entities that also served as "advocates for schools," including UC, in other contexts. Appellant's Br. at 49. But that does not suffice to show structural unfairness in this proceeding.

Noakes then calls the panel's decision so "perplexing" that it reflects bias, but that is hyperbole. Appellant's Br. at 44. He cites *Doe v. Purdue University*, in which the Seventh Circuit held that a university's disciplinary decision rested on reasoning so faulty that it suggested bias. *See* 928 F.3d 652, 669 (7th Cir. 2019) (Barrett, J.). That case "boiled down to a he said/she said" scenario, and the adjudicator treated the complainant as the "more credible witness" despite never interviewing her or even meeting her. *Id.* at 664 (cleaned up). UC's procedures had no such infirmities. The disciplinary panel heard from Noakes, Roe, and other witnesses. It allowed cross-examination. And it amply explained its credibility determinations in its post-hearing report. We are not "perplexed" by its reasoning.

No. 24-3388, *Noakes v. Univ. of Cincinnati*

Noakes's remaining arguments fare no better. He challenges the panel's decision mentioning that he initially chose not to participate in the investigation. But Noakes presents no authority recognizing a due process right to remain silent during school disciplinary proceedings, especially absent a threat of criminal prosecution. Even if that right did exist, the decision does not suggest that the panel faulted him for not speaking to Shaw. Rather, in assessing Noakes's credibility, the panel compared his hearing testimony with his earlier account of the incident. Noakes spoke to one friend but not to Shaw, so the panel had only one point of comparison. The panel found that in some respects, his story differed, and as a result, found him less credible. Noakes has not shown the panel violated his due process rights by doing so.

### 2. Undisclosed Evidence

Moreover, Noakes hasn't shown that the panel relied on undisclosed evidence. Universities need to provide students facing disciplinary sanctions "an explanation of the evidence supporting the accusation" and a chance to respond to it. *Flaim*, 418 F.3d at 634. Well before Noakes's hearing, UC sent him the preliminary and final reports, which summarized witness interviews and outlined Roe's allegations. At his hearing, Noakes got to cross-examine witnesses about Roe's intoxication. But in its post-hearing report, the panel referenced a previously undisclosed online calculator for approximating Roe's blood alcohol content (BAC). Based on Roe's testimony, the calculator estimated her BAC would have been "roughly 0.19% to 0.23%," which would have impaired her physical and mental capacity. Report, R. 1-4, PageID 137. Noakes claims UC violated his due process rights by using the calculator without letting him scrutinize it.

The panel's reference to an online calculator doesn't violate the Due Process Clause. Noakes relies on two cases in which we held that a university violated an accused student's due process rights by withholding evidence. *See Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 301–02

No. 24-3388, *Noakes v. Univ. of Cincinnati*

(6th Cir. 2019); *Miami Univ.*, 882 F.3d at 603. But in both, the evidence was so central that without it, the student "could not have responded to what seemed like incontrovertible proof" against him or "present[ed] his side of the story." *Endres*, 938 F.3d at 301–02 (citation omitted); *see Miami Univ.*, 882 F.3d at 603 (finding a due process violation where the university refused to provide its investigative report to a student accused of sexual assault). Noakes's case is a far cry from *Endres* and *Miami University*. The BAC calculator merely corroborated extensive testimony from Roe and several other witnesses that, on the night of her alleged assault, Roe's intoxication had impaired her physical and mental faculties. As a result, it was inessential to the panel's decision. And given the ample evidence that Roe had diminished capacity, attacking the calculator would not have meaningfully improved Noakes's ability to craft a responsive defense. We find that the panel's reference to the BAC calculator did not deprive Noakes of a fair hearing.

### 3. Effective Cross-examination

Nor does Noakes show that UC deprived him of his right to cross-examine witnesses. If a disciplinary proceeding turns on witnesses' credibility, the "hearing must include an opportunity for cross-examination." *Baum*, 903 F.3d at 581. Noakes had that opportunity. He cross-examined several witnesses and Roe herself about her level of intoxication and her capacity to consent. But Noakes argues UC should have shared records of Roe's medical treatments and academic accommodations from after the alleged assault, which could have helped him impeach her. Noakes also asserts the panel improperly cut off his questioning during the hearing. According to him, this violated his due process right to cross-examine Roe.

These are shots in the dark. Schools cannot access or disclose a witness's medical records without their consent. *See* 34 C.F.R. § 106.45(b)(7)(ii) (2023). Roe did not consent. Noakes looks to *Doe v. Ohio State University* for the proposition that due process requires a university to turn

No. 24-3388, *Noakes v. Univ. of Cincinnati*

over records of the complainant's academic accommodations. *See* 219 F. Supp. 3d 645, 663 (S.D. Ohio 2016). That case neither binds nor persuades us. The plaintiff there claimed the university planned to expel the complainant, allowed the complainant to stay because she alleged sexual assault by the plaintiff, and withheld that information at his hearing. In those circumstances, academic supports were "critical evidence" of the complainant's motive to lie. *Id.* By contrast, although Roe may have received academic supports after filing her complaint, Noakes points to no evidence that she needed those supports beforehand and had motive to lie to receive them. Rather, Noakes received the final investigative report, which noted Roe sought no academic supports before filing a complaint. Put simply, the law does not support his position that due process entitled him to Doe's records.

Finally, Noakes suggests the panel should have allowed him to ask more questions. According to Noakes, the panel "cut off good faith questions" from his advisor at least once during the hearing. Appellant's Br. at 47. Maybe so, but due process does not require "unlimited" cross-examination. *Doe v. Mich. State Univ.*, 989 F.3d 418, 431 (6th Cir. 2021). And Noakes does not argue that being interrupted deprived him of the ability to present a full defense.

Noakes has not shown he is likely to succeed on the merits of his due process claim, so the district court did not err in denying his motion for a preliminary injunction.

## CONCLUSION

We affirm the district court's denial of a preliminary injunction.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-3388

JOHN NOAKES,

    Plaintiff - Appellant,

v.

UNIVERSITY OF CINCINNATI; ALECIA TRAMMER; ADRIENNE LYLES; BLEUZETTE MARSHALL; ASHLEIGH WADE,

    Defendants - Appellees.

**FILED**
Oct 25, 2024
KELLY L. STEPHENS, Clerk

Before: SUTTON, Chief Judge; READLER, and BLOOMEKATZ, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

*Kelly L. Stephens*

Kelly L. Stephens, Clerk