**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| JOHN NOAKES | Case No. 1:23-cv-00284-MRB |
| Plaintiff, | Judge BARRETT |
| v. | |
| THE UNIVERSITY OF CINCINNATI, ET AL. | MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION BASED ON MATERIAL MISREPRESENTATIONS |
| Defendants. | |

Plaintiff John Noakes respectfully submits this Motion for Reconsideration of the Court's Order denying Plaintiff's Motion for a Preliminary Injunction. (Doc#3; Doc#48.) This Court should reconsider the Order denying the Motion for a Preliminary Injunction to avoid manifest injustice so that UC is not shielded from its own bad faith misrepresentations and so that it may not benefit from its shifting positions before this Court.

In this case, Plaintiff was accused of sexual misconduct. He declined to provide a detailed statement to UC's investigator until he had a chance to review the details contained in the Formal Complaint filed against him. UC's investigator refused to provide Noakes with a copy of the statement and the hearing panel found that his "credibility was weakened" as a result of this decision. This matter then came before the Court on Plaintiff's Motion for a Preliminary Injunction. In response to this Motion and before the Sixth Circuit, UC relied upon deposition testimony from the investigator and a 30(b)(6) witness that, as a matter of 'practice,' UC does not provide copies of Formal Complaints to students accused of sexual misconduct before they are interviewed by investigators. This, it turns out, was not true. UC has provided accused students with copies of the Formal Complaint in other cases, and UC denied, in response to requests for admissions in a separate case, that UC had a practice of not providing copies of Formal Complaints to respondents during an investigation.

A.      **Standard**

"While the federal rules don't contemplate a motion for reconsideration, they don't forbid it either.  Courts may entertain such motions on interlocutory orders." *Exel, Inc. v. S. Refrigerated Transport, Inc.*, 276 F. Supp. 3d 750, 753-754 (S.D.Ohio 2017), *citing Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 952 (6th Cir. 2004).  *See also Salmon v. Old Natl. Bank*, W.D.Ky. No. 4:08CV-116-M, 2010 U.S. Dist. LEXIS 35056, at *2 (Apr. 8, 2010) ("The Sixth Circuit recognizes that a district court may reconsider an interlocutory order both under the common law and Federal Rule of Civil Procedure 54(b)."), *citing Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). A motion for reconsideration will not be granted unless the party can show: (1) an intervening change of controlling law, (2) new evidence available, or (3) a need to correct a clear error or prevent manifest injustice. *Boddie v. Higginbotham*, S.D.Ohio No. 2:14-cv-2395, 2016 U.S. Dist. LEXIS 54814, at *1 (Apr. 25, 2016), *citing Rodriguez*, 89 F. App'x at 959.

B.      **The Misrepresentations By UC's Witnesses**

The misrepresentations arose in a very specific factual context: UC was investigating allegations from a fellow-student, Jane Roe, that Noakes had engaged in sexual misconduct.  Noakes had asked for a copy of the Formal Complaint filed by Roe prior to providing an interview; UC's investigator denied this request.  (Emails, R.29-14, PageID#977-979.)

The investigator testified that it was the "practice" of the school's Title IX Office to not provide a respondent with a copy of the Formal Complaint prior to his interview.

> Q Well, when you made the decision to not give him the Formal Complaint prior to November of 2022 were you making that decision based on some policy at the University of Cincinnati?
> A No… It wasn't a decision based on policy. It was a decision based off of general practices of our office and that's not something that we do during our investigations.

(Shaw Dep., R.31, PageID#1192.)  UC's 30(b)(6) witness backed up this decision, stating that the decision to not provide a copy of the Formal Complaint was a "rule of practice" at the school.  This was the relevant portion of the testimony from the 30(b)(6) witness about this issue:

> Q Why did the University not provide him with more details prior to his meeting with [the investigator]?
> A As a rule of practice when a report is made and a Formal Complaint is received the Investigator is to really pull out the essential necessary information to be able to share that with the Respondent so that the Respondent is aware that there is a report and aware of the allegations. The Respondent then has the opportunity to come in and to share information of what in this case he knows, what he heard, what he saw, what he experienced. Providing additional detail or additional information, I shall say, is not a -- a rule of practice for several reasons.
> Q And those reasons are?
> A Well, one, when there is a Formal Complaint that is a document that is designed for the Complainant. As the Complainant is sharing information the intended audience is not that of the Respondent. Based off of our Formal Complaint form that is an internal document that we use to make an assessment and then to craft whatever the Notice letter will be.
> Other information is that, one, it hasn't been investigated. Two, it limits or it could limit the Respondent from just sharing information and a response may be tailored just to fit whatever has been written. Three, other individuals could be written in the Formal Complaint and that information technically would be confidential. And then I will just stop with 4 that that could potentially lead to retaliation or retaliatory behavior. We treat our Formal Complaint documents as confidential.

(Marshall Depo. R.30, PageID#989.)  The 30(b)(6) witness subsequently explained that a copy of the Formal Complaint is "is shared at the conclusion of [the investigative] process" – after the respondent would have had an opportunity to provide a statement    (Marshall Depo. R.30, PageID#990.)

UC has, in another case, essentially admitted that the investigator's and the 30(b)(6) witness's testimony about this issue was false.[1]  The undersigned counsel is representing alleged victims of sexual abuse in another case, *Roe et al. v. Univ. of Cincinnati,* Ohio S.D. No. 1:22-cv-00376-JPH-KLL.[2]  In that

---

[1] This is not the first time the 30(b)(6) witness has been accused of lying to protect the interests of UC.  In another case before this Court, two UC students submitted affidavits indicating that the witness had lied to them about Title IX enforcement practices at UC.  *Goldblum v. UC*, Ohio S.D. No. 1:19-cv-00398 (R.69-4, PageID#2881-2882; R.69-3, PageID#2881).

[2] The plaintiffs in *Roe* are ballet students at the University of Cincinnati College Conservatory of Music. They allege that were sexually assaulted by a fellow student during classes/rehearsals.  They have

case, discovery revealed that, unlike in this case, the respondent was provided with a copy of the Formal Complaint prior to his interview.[3]  The Plaintiffs' in *Roe* subsequently served requests for admission that tested whether UC would stand by the testimony in this case.  The result was that UC, on a number of occasions in *Roe*, specifically repudiated the testimony of witnesses in this case.  (A copy of the Response to Requests for Admissions in *Roe* accompanies this Motion.)   Here is a summary:

---

asserted a Title IX deliberate indifference claim in that case, alleging that UC was aware of the risk this would occur but initially did nothing, then conducted a sham investigation and flawed hearing that exonerated a star dancer.

The Formal complaint in this case was submitted on July 26, 2022.  (Form, R.30-5, PageID#1114-1115.)   In *Roe*, the formal complaint was filed less than a year earlier, on October 21, 2021, and a copy was provided to the Respondent on November 5, 2021.  (*See Roe* Amended Complaint ¶ 43.)    In theory, it might be *possible* that UC changed its 'practices' in the approximately eight months between November 2021 and July 2022.    This seems unlikely, however, given that the Policy never changed and the investigator and 30(b)(6) witness both described this as a 'practice' of the office without mentioning a recent change.   And, if that *were* the case, UC would be expected to produce contemporaneous documents or memoranda showing when and why this change in practices took place, as well as the "practice guide that our director uses with the team" that the 30(b)(6) witness testified about.  (Marshall Depo., R.30, PageID#982.)

[3] The Document in that case has the Bates Number UC000393.  This has not been attached because it is subject to a protective order.

| Testimony in this Case | Request for Admission in *Roe* | UC Response to Request for Admission in *Roe* |
|---|---|---|
| Q Okay. Where -- I'm looking at [the UC Policy] Page 3. So where in that document do you believe it says that this information may not be provided to the Respondent?<br><br>A Nowhere in the document do we indicate that this will be shared with the Respondent and so this is consistent with our policy.<br><br>(Marshall Depo., R.30, PageID#991) | UC has a policy of not providing copies of Formal Complaints of sexual misconduct to respondents during an investigation.<br><br>(Request No. 2) | UC denies that, at all times relevant to this matter, it had a policy of not providing copies of Formal Complaints of sexual misconduct to respondents during an investigation. [4] |

---

[4] UC often uses the term, "during an investigation." UC may, based on the use of this term, suggest that the testimony in this case is consistent with the admissions in *Roe* because the school had a practice of providing the formal complaint to respondents at some point "during the investigation." Under this view, UC in this case acted consistent with its statements in response to the requests for admissions in *Roe* because it eventually provided a copy of the Formal Complaint along with a copy of the "Preliminary Investigation Report." This seems to be parsing the testimony too finely; the entire context of the testimony concerned Noakes' request to see the Formal Complaint before he participated in an interview, not at any point in time.

UC's bigger problem is that to make this argument work, the Preliminary Investigation Report must be part of the investigation process. UC's Policy is clear that the "Preliminary Investigative Report" is *not* part of the investigation process but is compiled at the *after* the investigation is done. The Policy states: "At the *conclusion* of the investigation, the Investigator will prepare a written Preliminary Investigative Report…" (Policy, R.30-3, PageID#1065 (emphasis supplied).) The 30(b)(6) witness explained in her deposition that the Formal Complaint is provided to respondents "at the end of the process." (Marshall Depo., R.30, PageID#989.) Consistent with that Policy and testimony, the investigator, when providing the Preliminary Investigative Report to Noakes, said, "I have completed the evidence gathering process." (Email, R.30-5, PageID#1151.)

| Testimony in this Case | Request for Admission in *Roe* | UC Response to Request for Admission in *Roe* |
|---|---|---|
| Q …Is it your testimony that some policy at the University of Cincinnati prohibited you from providing John Noakes with a copy of the Formal Complaint?<br><br>A No, that is not my testimony. My testimony is that I do not know if there is a policy or not a policy… It was a decision based off of general practices of our office and that's not something that we do during our investigations.<br><br>(Shaw Depo., R.31, PageID#1192) | UC has a practice of not providing copies of Formal Complaints of sexual misconduct to respondents during an investigation.<br><br>(Request No. 3) | … UC denies that, at all times relevant to this matter, it had a practice of not providing copies of Formal Complaints of sexual misconduct to respondents during an investigation. |
| Q Why did the University not provide [Noakes] with more details prior to his meeting with [the investigator]?<br><br>A As a rule of practice when a report is made and a Formal Complaint is received the Investigator is to really pull out the essential necessary information to be able to share that with the Respondent so that the Respondent is aware that there is a report and aware of the allegations…. Providing additional detail or additional information, I shall say, is not a -- a rule of practice for several reasons.<br><br>(Marshall Depo., R.30, PageID#989) | As a rule of practice UC does not provide copies of Formal Complaints of sexual misconduct to respondents during an investigation.<br><br>(Request No. 4) | … UC denies that, at all times relevant to this matter, it had a rule of practice to not provide copies of Formal Complaints of sexual misconduct to respondents during an investigation. |

| Testimony in this Case | Request for Admission in *Roe* | UC Response to Request for Admission in *Roe* |
|---|---|---|
| A Providing additional detail or additional information, I shall say, is not a -- a rule of practice for several reasons. …our Formal Complaint form that is an internal document that we use to make an assessment and then to craft whatever the Notice letter will be.<br><br>(Marshall Depo., R.30, PageID#989) | A formal complaint of sexual misconduct is an internal document that UC uses to make an assessment and then to craft the notice letter and, as a matter of policy and practice, is not provided to respondents.<br><br>(Request No. 5) | UC states … at all times relevant to this matter as a matter of policy and practice, such Formal Complaints were provided to respondents. |
| Q And those reasons [for not providing Formal Complaints to respondents] are?<br><br>A … We treat our Formal Complaint documents as confidential…<br><br>(Marshall Depo., R.30, PageID#989) | UC treats Formal Complaint documents as confidential and copies of formal complaints are not provided to respondents as a rule of practice.<br><br>(Request No. 6) | UC admits that Formal Complaints are confidential educational records under FERPA,[5] but denies that, at all times relevant to this matter, it had a rule of practice to not provide respondents with copies of Formal Complaints. |
| Q You believe that if the Respondent received a copy of the Complaint they would be less likely to come in to interview?<br><br>A Potentially and/or not be as open in an interview in sharing information.<br><br>(Marshall Depo., R.30, PageID#989) | The official position of the University of Cincinnati is that if a Respondent receives a copy of a Formal Complaint prior to the completion of the investigation they would be less likely to come in to interview and/or not be as open in an interview in sharing information. | UC denies this Request |

---

[5] FERPA is not relevant here, as it would not prohibit UC from providing a copy of the Formal Complaint to the Respondent.

| Testimony in this Case | Request for Admission in *Roe* | UC Response to Request for Admission in *Roe* |
|---|---|---|
| Q … Is it the position of the University of Cincinnati that providing a copy of the Complaint to the Respondent is going to make it less likely that the Respondent agrees to participate in the interview?<br><br>A No, I did not say that it would make it less likely for a Respondent to agree to participate in an interview.<br><br>Q Okay. So what were you saying?<br><br>A I was saying that the Respondent may then only tailor the response based off of whatever is written in that particular document and not share the totality of what he may have seen, heard, witnessed, or experienced.<br><br>(Marshall Depo., R.30, PageID#990) | The official position of the University of Cincinnati is that providing a copy of a Formal Complaint to the Respondent prior to the completion of the investigation makes it more likely that the Respondent may then only tailor the response based off of whatever is written in that particular document and not share the totality of what he may have seen, heard, witnessed, or experienced. (Request No. 8) | … UC denies this Request. |

## C.    Reconsideration Is Warranted

This Court should reconsider the Order denying the Motion for a Preliminary Injunction to avoid manifest injustice so that UC is not shielded from its own bad faith misrepresentations and so that it may not benefit from its shifting positions before this Court. To uphold a ruling based on a misrepresentations constitutes a manifest injustice the Court must correct. *Cf. AMF Bowling Ctrs., Inc. v. Tanase,* E.D.Va. Civil Action No. 3:23-cv-448-HEH, 2024 U.S. Dist. LEXIS 118449, at *4 (Mar. 1, 2024) ("reconsideration is proper because of the new evidence regarding prior misrepresentations");

*Anderson v. Credit One Bank, Nat'l Ass'n*, S.D.Cal. No. 16cv3125-MMA (AGS), 2018 U.S. Dist. LEXIS 84189, at *11-12 (May 17, 2018) (reconsidering where "deposition testimony plainly contradicts" later statements).   One court observes:

> The judicial system cannot tolerate dishonest testimony… When the Court becomes aware of such clear-cut evidence of false testimony by a party, the Court must not turn a blind eye; it must remedy the situation to preserve the integrity of the judicial system.  A party must respect his obligation to provide honest testimony.   Otherwise the judicial system would cease to serve justice and instead would become a manipulated tool where the litigant who can create the best lie wins.

*Quinn v. City of Kansas City*, 64 F.Supp.2d 1084, 1094 (D.Kan. 1999).

The investigator's and 30(b)(6) witness' false testimony that that UC does not provide copies of Formal Complaints to respondents prior their interviews is material in two respects.

<u>First</u>, the misrepresentations by UC concerned the legal issue of whether the notice provided by UC was insufficient under *Mathews v. Eldridge*, 424 U.S. 319 (1976), because it failed to include sufficient details known at the time and with sufficient time to prepare a response before any initial interview.   The misrepresentations by UC and its 30(b)(6) deponent arose in the context of whether the initial notice of wrongdoing received by Noakes was sufficient.   Noakes alleged that the Notice was insufficient because it only referred to the Title IX Policy and failed to inform him exactly how he was alleged to have engaged in sexual assault.   UC claimed, and this Court agreed, that the notice was sufficient because it "included a specific address and a specific date and time" of the alleged misconduct.  (Order, R.48, PageID#1888.)

Both before the Court and in the Sixth Circuit, Noakes argued that UC's decision to not provide a copy of the formal complaint during the investigation violated due process guarantees under the *Mathews* test.   Noakes argued that the Investigator's refusal to provide a copy of the formal complaint is a due process violation under the *Mathews* test because what Noakes asked for would not have imposed any additional expense or administrative burden for UC while, at the same time, would

9

have provided him a benefit in helping him prepare for his interview.[6] Before the Sixth Circuit, UC responded that due process did not require the school to provide a copy of the formal complaint in advance of any interview because of "the significant potential costs of providing extensive detailed information at the early stages of a disciplinary proceeding." UC Brief at 20. Significantly, UC cited and quoted extensively from the false deposition testimony from the 30(b)(6) witness in its Brief in the Sixth Circuit on this issue. 👆



The decision by UC to not provide Noakes with a copy of the formal complaint had a direct impact on the outcome. Noakes had stated an intention to "fully cooperate with any investigation," but declined to give a statement until he could review a copy of the formal complaint. (Emails, R.29-14, PageID#977-979; Emails, R.32-3, PageID#1501-1504.) The hearing panel commented negatively on Noakes' decision to not provide a statement to the investigator until he received more details about

---

[6] *Cf. VanNahmen v. Dodge City Community College*, D.Kan. No. 17-CV-1174-EFM, 2018 U.S. Dist. LEXIS 132451, at *11 (Aug. 7, 2018) (student successfully asserted a procedural due process claim based on insufficient notice where the letter from the school "only vaguely" referred to misconduct "without providing any context other than that it allegedly occurred); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 603 (D.Mass. 2016) (warning that a student should not be "expected to defend himself against [a] vague and open-ended charge" by "refusing to provide him with the specific factual conduct alleged to have given rise to the charge"); *Doe v. Univ. of Notre Dame*, N.D.Ind. No. 3:17CV298, 2017 U.S. Dist. LEXIS 69645, at *29 (May 8, 2017) (noting that providing the student with access to the investigative report detailing alleged misconduct does not constitute adequate notice).

the allegation, even though that was his right. The decision states, "Respondent's credibility was weakened in part because he did not provide any statements during the course of the grievance process prior to the hearing." (Letter, R.29-2, PageID#597.)[7]

Second, Noakes had alleged bias in the UC process. The core of the Sixth Circuit's university disciplinary hearing jurisprudence is the idea that a school's entire process must be fundamentally fair. *Flaim v. Med. Coll. of Ohio,* 418 F.3d 629, 635 fn.1 (6th Cir. 2005) ("a public university student who is facing serious charges of misconduct that expose him to substantial sanctions should receive a fundamentally fair hearing"); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 396 (6th Cir. 2017) ("The Due Process Clause guarantees fundamental fairness to state university students facing long-term exclusion from the educational process."). The Sixth Circuit has also held that "Procedural irregularities provide strong support for [a student's] claim of bias…" *Doe v. Oberlin College*, 963 F.3d 580, 587 (6th Cir. 2020). *See also Baum*, 903 F.3d at 586 (allegation of adjudicator bias based on conduct of hearing, combined with the external pressure facing the university, made student claim of bias plausible). The lies by the investigator and 30(b)(6) witness about UC's "practices" suggest a hostility towards Noakes from the start of the investigation, which led to a fundamentally unfair process.

**CONCLUSION**

The Court should reconsider the Motion for Preliminary Injunction. In order to avoid manifest injustice and prevent further irreparable harm, the Motion for Preliminary Injunction should be granted.

_____

[7] The Sixth Circuit said, "the decision does not suggest that the panel faulted him for not speaking to" the investigator. *Noakes v. Univ. of Cincinnati*, 6th Cir. No. 24-3388, 2024 U.S. App. LEXIS 27189, at *14 (Oct. 25, 2024). This does not appear to be accurate in light to the language quoted in the main text. The Sixth Circuit opinion also did not address the fact that the chair cut off good faith questions from Noakes' advisor based on the fact that "evidence" to support the questions "was not in the record." (Hrg, R.37., at approx. 1:51:21.) The chair admitted in a deposition that this was error. (Vincent Depo., R.29, PageID#520.)

11

Respectfully submitted,

_____/s/ Joshua A. Engel_____

Joshua Adam Engel (0075769)
Scott O'Reilly (0075717)
Anne Tamashasky (OH 0064393)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Court's electronic filing system this February 7, 2025 upon all counsel of record.

/s/ Joshua Engel
Joshua Engel