IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JOHN NOAKES, | : | Case No. 1:23-cv-00284 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | |
| v. | : | |
| | : | |
| THE UNIVERSITY OF CINCINNATI, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS**

Plaintiff's response to Defendants' Renewed Motion to Dismiss does nothing to salvage his deficient Title IX claim.[1] Instead of presenting any meaningful legal or factual arguments explaining why his claim should withstand dismissal, Plaintiff simply regurgitates his insufficient factual allegations and mischaracterizes precedent in an effort to distract the Court. But Plaintiff cannot escape the fact that he has failed to plead allegations sufficient to state a plausible claim for relief with respect to both elements required for a Title IX erroneous outcome claim. And try as he might, Plaintiff cannot shoehorn this case into *Baum*, *Miami University*, or *Oberlin College*. This case bears no resemblance to those. For these reasons and those stated more fully below, Plaintiff's Complaint should be dismissed.

**ARGUMENT**

In evaluating the sufficiency of Plaintiff's Complaint, this Court must engage in a three-step process: (1) accept all of the Plaintiff's factual allegations as true; (2) draw all reasonable

---

[1] Plaintiff's only remaining claim is his erroneous outcome claim as he has now abandoned his due process claim. "Where a party fails to support its claim in a brief opposing a motion to dismiss, district courts are free to treat those claims as abandoned and dismiss them." *Pierre Invs., Inc. v. Fifth Third Bancorp*, No. 1:22-cv-155, 2022 WL 6764494, at *5 (S.D. Ohio Oct. 11, 2022), *aff'd*, No. 23-3269, 2023 WL 8373001 (6th Cir. Dec. 4, 2023); *see also Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007).

1

inferences in Plaintiff's favor; and (3) take all of the facts and inferences and determine whether they plausibly give rise to an entitlement to relief. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). "Legal conclusions, 'formulaic recitation[s]" of the claim's elements, and 'naked assertion[s]' of liability are all insufficient." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the "[a]ssessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," a district court may consider exhibits attached to the complaint "so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (2011). Here, even the most favorable reading of Plaintiff's Complaint and the attached exhibits leads to only one conclusion—Plaintiff has failed to allege facts sufficient to raise a plausible Title IX erroneous outcome claim with respect to both required elements of the claim.

**I.  The Complaint fails to allege facts sufficient to cast some articulable doubt on the outcome of his disciplinary proceeding.**

Although Plaintiff is correct when he states that the burden for pleading the "articulable doubt" element of a Title IX erroneous outcome claim is relatively light, Plaintiff does not meet even that minimal standard. To survive dismissal, Plaintiff must allege facts that plausibly cast doubt on the accuracy or fairness of the disciplinary proceeding's outcome. *Doe v. Baum*, 903 F.3d 575, 585 (6th Cir. 2018). The Complaint does no such thing.

Plaintiff claims that he satisfies the pleading burden under this first prong because he has listed "*possible* procedural errors in ¶¶ 122-123 of the Complaint." (Reply, Doc. 63 at 13, PageID #2060 (emphasis added).) Those "possible" procedural errors, however, are the same alleged errors that Plaintiff relies upon in support of his now-defunct procedural due process claim. And as explained in Defendants' Renewed Motion to Dismiss, Plaintiff's allegations regarding the process he received during his disciplinary proceeding—even when accepted as true with all reasonable

2

inferences drawn in Plaintiff's favor—do not give rise to a *plausible* claim that the accuracy or fairness of the hearing should be questioned.

Indeed, under the federal pleading standards, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). This "plausibility standard is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully." *Id.* (emphasis added). In other words, "where the well-pleaded facts do not permit the court to infer more than the *mere possibility* of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added).

The Complaint here fails to meet this plausibility standard with respect to its allegations regarding the fairness and accuracy of the disciplinary proceeding's outcome. In Plaintiff's own words, he relies on mere "possible" procedural errors to support his erroneous outcome claim. But Plaintiff's *legal conclusions* regarding those "possible" errors—i.e., that "[t]here is significant doubt about the accuracy of the disciplinary proceeding's outcome" and that "[c]lear procedural regularities in UC's response to the allegations of sexual misconduct permit a plausible inference of sex discrimination" (Compl. Doc. No. 1 at ¶¶ 122, 123, PageID #54)—are entitled to no weight. *See Iqbal*, 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Rather, the Court must examine whether the facts alleged—stripped of Plaintiff's conclusory legal spin—plausibly cast doubt on the accuracy or fairness of the disciplinary proceeding's outcome. The allegations in Plaintiff's Complaint fail this test.

Boiled down, the Complaint alleges facts establishing only that: (1) Plaintiff received notice of the allegation against him months before the hearing—both in the Formal Notice and in the Preliminary and Final Investigative Reports (Compl., Doc. No. 1 at ¶¶ 64, 94-97, PageID #23, 36-38); (2) UC accorded Plaintiff a live hearing during which he was fully able to participate, offer evidence, and permitted to cross-examine the complainant (*Id*. at ¶ 104, PageID #40); and (3) the panel delivered its reasoning to Plaintiff in an outcome letter that fully explained the panel's decision and its credibility determinations (*Id*. at ¶ 108, PageID #44; Outcome Letter, Doc. No. 1-4). Additionally, Plaintiff has failed to include any allegations of actual bias against him (or his gender) on the part of the panel members, alleging only that the panel members were from a company that provides expert opinions to schools.

These actual facts—when analyzed apart from the legal conclusions that Plaintiff attempts to draw from those facts—fail to establish the existence of any procedural irregularities that could plausibly cast doubt on the accuracy or fairness of the hearing panel's outcome. In fact, Plaintiff has all but acknowledged this by withdrawing his due process claim. And the Sixth Circuit also acknowledged this when it rejected Plaintiff's motion for a preliminary injunction, concluding that "UC provided Noakes a constitutionally adequate hearing" and that the panel's decision was in no way "perplexing." *Noakes v. Univ. of Cincinnati*, No. 24-3388, 2024 U.S. App. LEXIS 27189, at *10, 13 (6th Cir. Oct. 25, 2024).[2]

---

[2] Plaintiff cites *Doe v. Regents of the Univ. of Cal.*, No. 2:15-cv-02478-SVW-JEM, 2017 U.S. Dist. LEXIS 211408, at *49 (C.D. Cal June 8, 2017), for the proposition that it is inappropriate for the Court to consider, at the motion to dismiss phase, whether an erroneous outcome claim may no longer be plausible after evidence is collected and presented. But Defendants' argument here is not based on an analysis of evidence collected during the preliminary injunction phase or the Sixth Circuit's well-reasoned opinion. Rather, Defendants' argument is based on the allegations in the Complaint and the exhibits (i.e., the Outcome Letter) attached thereto. It is well-established that this Court may, in adjudicating a motion to dismiss, consider exhibits attached to the Complaint so long as they are referred to in the complaint and are central to the claims contained therein. *Rondigo*, 641 F.3d at 680. Moreover, "[w]hen a document contradicts allegations in the complaint, rendering them implausible, 'the exhibit trumps the allegations.'" *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021) (quoting *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017)).

On this record, Plaintiff cannot credibly claim that the allegations of "possible" procedural irregularities are enough to allow his Title IX claim to proceed beyond a motion to dismiss. The facts alleged in the Complaint demonstrate that Plaintiff received all the process (and more) that he was due under the law. And at the very most, Plaintiff's allegations of "possible" procedural errors only permit the Court to infer a mere *possibility* of misconduct. Because that is not enough to "nudge" Plaintiff's Title IX claim "across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570), Plaintiff's Title IX claim must be dismissed for failure to allege facts that plausibly cast doubt on the outcome of his disciplinary proceeding.

**II.     The Complaint fails to plead facts that demonstrate a causal connection between the hearing outcome and gender bias.**

Nor has Plaintiff offered in his response an adequate explanation demonstrating that he has pled facts sufficient to satisfy the second element of an erroneous outcome claim. To establish the second element—namely, a particularized causal connection between the allegedly flawed outcome and gender bias—a plaintiff must do more than allege procedural deficiencies and offer a conclusory assertion of discrimination. *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). Instead, Plaintiff must allege facts sufficient to support "an inference of sex bias in his particular proceeding." *Doe v. Oberlin Coll.*, 963 F.3d 580, 586 (6th Cir. 2020).

Plaintiff asserts that *Cummins* "no longer accurately states the law" and that *Oberlin* has now "clarified" the standard for establishing the required "particularized causal connection." (Reply, Doc 63 at 13-14, PageID #2060-61). But Plaintiff's attempt to pit *Oberlin* against *Cummins* is as futile as it is unnecessary. In *Oberlin*, the Sixth Circuit simply pointed out that the defendant had misread precedent, noting that Sixth Circuit precedent has never required that, to be "particularized," the "effects of the causal bias must be limited to the plaintiff's own case." *Id*. at

5

586. This "clarification" does not change the law as articulated in *Cummins*, nor does it invalidate the arguments made by Defendants in the Renewed Motion to Dismiss. Even after *Oberlin*, a plaintiff is still required to allege "facts supporting an inference of sex bias in *his particular proceeding*." *Id*. (emphasis added). In other words, *Oberlin* did not relax the "particularized causal connection" requirement—it merely clarified that the causal nexus can be shown through a broader pattern of gender bias affecting the plaintiff's own proceeding.

Plaintiff's Complaint is unquestionably lacking in this regard. Unlike *Oberlin*, Plaintiff has failed to allege any statistical evidence, patterns of discriminatory findings, or *contemporaneous* facts about UC's handling of sexual misconduct cases during the time of his own hearing that would lead to a plausible inference of a causal connection. Instead, all of Plaintiff's factual allegations either (1) do not specifically identify a gender; (2) involve circumstances that occurred years before Plaintiff's own disciplinary proceeding; or (3) merely describe inconsistent and shifting government policies that fail to establish that UC was subject to pressure that created a bias in favor of one gender over another at the time of his proceeding. These are critical distinctions that underscore why *Oberlin* does not save Plaintiff's Complaint.

After mischaracterizing *Oberlin*, Plaintiff then proceeds to argue that the Complaint presents all three categories of evidence that the Sixth Circuit has identified as supporting a plausible inference of gender bias: procedural irregularities; pressure from the Department of Education and other internal and external sources; and the merits of the decision itself. But in so arguing, Plaintiff merely regurgitates his insufficient allegations and fails to address the critical deficiencies that doom his Title IX claim.

Procedural Irregularities. Plaintiff first suggests that he has alleged "clear procedural irregularities" that are sufficient to establish a causal connection between sex bias and the outcome

of his proceeding. But as discussed above, Plaintiff's allegations do not establish the existence of any procedural irregularity during Plaintiff's disciplinary proceeding, much less an irregularity that could lead to an inference of gender bias. And contrary to Plaintiff's suggestion, his allegations look nothing like the allegations in *Oberlin*, where (1) the plaintiff was not informed of the specific allegations against him during the investigation, (2) the college failed to notify the parties regarding the delay, (3) the Title IX coordinator did not respond to any of plaintiff's concerns, (4) plaintiff's appointed Title IX advisor did not attend the whole hearing, and (5) the hearing panel failed to comment on the complainant's contradictory story. *Id*. at 587. Nothing of the sort happened in this case.

Merits of the Decision. For these same reasons, Plaintiff's arguments regarding his "merits of the decision" allegations—based again on a flawed factual comparison with *Oberlin*—also do not support a conclusion that Plaintiff has pled a reasonable inference of gender bias. None of the procedural issues raised by Plaintiff cast any articulable, much less grave doubt, on the accuracy of the proceeding's outcome. In fact, the Complaint itself includes as an exhibit the Outcome Letter issued by the panel. (Compl., Doc 1-4, PageID #130-144). As the Sixth Circuit correctly concluded, this letter shows that the panel "amply explained its credibility determinations in its post-hearing report" and that its reasoning is not "perplexing." *Noakes*, 2024 U.S. App. LEXIS 27189, at *13. This Court can and should consider this Outcome Letter—which directly contradicts Plaintiff's conclusory allegations—when determining whether Plaintiff has actually pled a plausible claim of gender bias due to his allegations regarding the merits of the panel's decision. *Nolan*, 991 F.3d at 707 ("When a document contradicts allegations in the complaint, rendering them implausible, 'the exhibit trumps the allegations.'") (quoting *Cates*, 874 F.3d at 536).

7

<u>Pressure from the Department of Education and Others</u>. Plaintiff also attempts to rely upon allegations regarding "pressure" on UC from the Department of Education to establish the requisite causal connection. Plaintiff notes that courts have found that such pressure can serve as a "backdrop" to support a plausible claim of gender bias.[3] But Plaintiff's response fails to contend with the problems that Defendants have raised in the Renewed Motion to Dismiss—that the Complaint's allegations regarding pressure are in many cases not gender-specific; not contemporaneous to Plaintiff's hearing; and wholly lacking in consistency.

Plaintiff responds to the argument that many of his "pressure" allegations are not gender-specific by quoting paragraphs 22, 23, and 124 of the Complaint, all of which suggest pressure to be biased in favor of females.[4] But, as discussed in the Renewed Motion to Dismiss, all of these allegations are stale and disconnected temporally from Plaintiff's own proceeding. Indeed, unlike the investigations and criticisms in *Oberlin* and *Miami University*, which were contemporaneous with the disciplinary proceedings in those cases, Plaintiff's allegations here relate to events that took place years prior to Plaintiff's proceedings. Accordingly, they cannot be used to establish a plausible claim of gender bias at the time of his hearing.[5]

---

[3] Plaintiff simply misses the point when he spends pages arguing that courts have acknowledged that pressure from the Department of Education provides a relevant "backdrop" for a claim of gender bias. UC's argument here is not that such allegations are never relevant, only that Plaintiff has failed to make relevant allegations in this regard because he relies on stale information that has no bearing on what was going on at the time of the Plaintiff's hearing in 2023. As discussed below, *Baum*, *Miami University*, and *Oberlin College* all feature allegations of pressure that were contemporaneous with the disciplinary proceedings in those cases. And so too with respect to the other cases Plaintiff cites regarding threats and pressure from the Department of Education. *E.g.*, *Doe v. Univ. of Arkansas-Fayetteville*, 974 F.3d 858, 865 (8th Cir. 2020) (Office of Civil Rights "was conducting an investigation into whether the University failed properly to investigate and adjudicate Title IX complaints by females against males" and that the complainant herself had "orchestrated a campus-wide protest after the Title IX coordinator found that Doe was not responsible for sexual assault against her.").

[4] Plaintiff mistakenly cites paragraph 21 for content found in paragraph 22, and paragraph 22 for content found in paragraph 23.

[5] Plaintiff claims that UC has ignored the allegations in paragraph 23 that relate to 2021 and 2022. Not so. As stated in the Renewed Motion to Dismiss, the allegation from 2022 "does not implicate gender bias—it merely recites a report from a student newspaper claiming that social pressures make it difficult for women to come forward with allegations of assault." (Memorandum in Support of Renewed Motion to Dismiss, Doc. No. 61-1, at 9, PageID #2032).

A quick review of the trinity of cases that Plaintiff relies upon to save his Complaint demonstrates the obvious differences between the allegations in those cases and Plaintiff's allegations here. In *Oberlin*, the incident at issue occurred in February 2016, in the midst of an active and ongoing "systemic investigation" (begun in November 2015) by the Department of Education's Office of Civil Rights of the college's policies, procedures, and practices with respect to its sexual harassment and sexual assault complaint process. 963 F.3d at 582-83.[6] The investigation was the "focus of local media attention" at the time and shortly before the investigation, a leader of the Office of Civil Rights told a national media publication that the rape and sexual assault of college women is not treated as seriously as it should be. *Id*. The complaint in the case also included statistical evidence showing that the college found every male student accused of sexual assault responsible—allegations not present here. *Id*. at 587.

In *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018), the university was not only facing pressure from the government to vigorously combat sexual assault on college campuses in 2014 (the time of the hearing in that matter), but it had also recently been sued for failing to zealously prosecute sexual assault cases. Additionally, the plaintiff presented statistical evidence that showed that the university found almost every male student accused of sexual assault guilty for the following several years—again, allegations not present here. *Id*. at 594.

---

And Plaintiff's allegation from 2021 in paragraph 23 suffers from a similar defect—it recites the opinion of a student with an unspecified gender who had been sexually assaulted (that UC "does not give a f-k"). Even if this statement from two years prior to Plaintiff's hearing could be considered relevant to the circumstances surrounding Plaintiff's hearing, it establishes nothing in the way of bias against Plaintiff's gender.

[6] Plaintiff tries to bend this case into *Oberlin* by pointing to his general allegations that UC has been under five open investigations that date back to 2016. But unlike *Oberlin*, where the plaintiff had alleged that the ongoing investigation pertained directly to the college's policies, procedures, and practices with respect to it sexual harassment and sexual assault complaint process, Plaintiff here makes no allegations connecting any of these open investigations to gender bias.

9

In *Baum*, the court was clear that the public pressure resulting from (1) the federal government's investigation regarding whether the university's process for responding to allegations of sexual misconduct discriminated against women and (2) related negative media reports, "continued for years, *throughout the Board's consideration of Doe's case*." 903 F.3d at 586 (emphasis added). Plus, the court noted that the Board "credited exclusively female testimony … and rejected all male testimony" in rendering its decision, to include remarking that all of the male witnesses were fraternity brothers while not similarly remarking that the female witnesses were sorority sisters. *Id*. This case features none of those facts.

In all of these cases, the "pressure" allegations were contemporaneous with the hearing and specifically alleged pressure that created an alleged bias toward female victims. By contrast, there are no similar allegations here or inferences to be drawn. Not only are all of Plaintiff's allegations regarding "pressure" on the university outdated, stale, and inconsistent, but Plaintiff provides no other factual allegations that constitute circumstantial allegations that gender bias was present in his particular proceeding. Instead, Plaintiff references general OCR investigations and a political climate spanning from 2011 to 2020, well before his hearing occurred in 2023. Plaintiff does not allege any active OCR investigation into UC's Title IX process during his case, nor does he provide statistical evidence of discriminatory outcomes. His reliance on background policy shifts—while dramatic in tone—is unmoored from any allegation that his own proceeding was impacted by them.

Additionally, Plaintiff points to generalized pressure from the Biden administration and media criticism of UC's handling of sexual assault cases in 2021 and 2022. But these allegations fall short of establishing a causal connection between Plaintiff's individual disciplinary proceeding and his gender. Plaintiff offers no contemporaneous or case-specific facts showing that UC was motivated by a desire to appease federal officials or the media in adjudicating his case in 2023.

10

Plaintiff's attempt to rely on political appointments or public discourse in the years prior to his hearing does not transform speculation into plausibility.

Finally, contrary to Plaintiff's suggestion, his allegations regarding any pro-complainant or pro-respondent bias on the part of UC are not sufficient to plead gender bias. As has become typical of Plaintiff in this case, he relies on case law to suggest otherwise, but fails to tell the Court the complete story about those cases. Plaintiff cites *Schwake v. Az. Bd. of Regents*, 967 F.3d 940 (9th Cir. 2020), and *Does 1-2 v. Regents of Univ. of Minn.*, 999 F.3d 571 (8th Cir. 2021), for the proposition that courts now reject the argument that allegations regarding pro-complainant or pro-respondent bias are not sufficient to establish gender bias. But in each of those cases, the courts simply found that the plaintiffs *had* pled facts that could establish gender bias. *Schwake*, 967 F.3d at 948 (noting that the complaint contained allegations regarding "gender-based decisionmaking *against men* in sexual misconduct disciplinary cases.") (emphasis added); *Univ. of Minn.*, 999 F.3d at 578-79 (noting that the amended complaint contained allegations of pressure to charge *male* football players with sexual misconduct). These cases do not stand for the proposition that a complaint sufficiently pleads gender bias when, like Plaintiff's Complaint here, it contains allegations that establish only pro-complainant or pro-respondent bias.

Because Plaintiff's allegations amount to nothing more than dissatisfaction with the outcome of a disciplinary process and speculative claims about political pressure, his Title IX claim is legally and factually deficient. The Complaint should be dismissed in its entirety and with prejudice.

## CONCLUSION

For the reasons set forth above and those in Defendants' Renewed Motion to Dismiss, Defendants respectfully request that the Court dismiss the Complaint.

11

Respectfully submitted,

*/s/ Jada M. Colon*
Dominick S. Gerace (0082823)
Jada M. Colon (0099048)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Telephone: (513) 381-2838
Fax: (513) 381-0205
dgerace@taftlaw.com
jcolon@taftlaw.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on July 25, 2025, I filed the foregoing using the Court's CM/ECF system, which will send electronic notice of such filing to all parties of record.

<i>/s/ Jada M. Colon</i>